```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ---------------------------------------x
    UNITED STATES OF AMERICA,
 3
                                        S3 19 CR 497 (NSR)
 4
         -vs-
 5                                      JURY TRIAL

 6  SHMIEL WEINGARTEN,
    YOIL WEINGARTEN, and
 7  YAKOV WEINGARTEN,

 8                      Defendant(s).
    ---------------------------------------x
 9
                                  United States Courthouse
10                                White Plains, New York
                                  March 27, 2024
11

12  Before:  THE HONORABLE NELSON S. ROMÁN, District Judge

13

14  A P P E A R A N C E S:

15
    DAMIAN WILLIAMS
16       United States Attorney for the
         Southern District of New York
17  SAMUEL S. ADELSBERG,
    JAMIE E. BAGLIEBTER,
18       Assistant United States Attorneys

19  DANIEL A. HOCHHEISER,
         Standby Counsel for Pro Se Defendant Shmiel Weingarten
20
    SEAN MAHER,
21       Standby Counsel for Pro Se Defendant Yoil Weingarten

22  FRANCIS L. O'REILLY,
    DIANE FERRONE,
23       Standby Counsel for Pro Se Defendant Yakov Weingarten

24  Also Present:  RUTH KOHN, Standby Yiddish Interpreter

25
```

Proceedings

```
 1              (Trial resumed; jury not present)

 2              THE COURT:  Good morning, everyone.  Are we ready to

 3  begin?

 4              MR. ADELSBERG:  Yes, Your Honor.

 5              THE COURT:  In a few minutes we will be bringing the

 6  jurors in.

 7              I'm afraid to ask, but any matters that the parties

 8  want to bring to the Court's attention before I give my final

 9  charge?

10              MS. BAGLIEBTER:  Not from the government.

11              DEFENDANT YAKOV WEINGARTEN:  Several things, Your

12  Honor.

13              THE COURT:  Several?

14              DEFENDANT YAKOV WEINGARTEN:  Yes.  Fortunately.

15              First, Mr. Ligtenberg yesterday in his summation he

16  said that --

17              THE COURT:  In rebuttal?

18              DEFENDANT YAKOV WEINGARTEN:  Huh?

19              THE COURT:  Mr. Ligtenberg gave the rebuttal

20  summation.

21              DEFENDANT YAKOV WEINGARTEN:  Yes.  Sorry.  He spoke

22  about a reasonable doubt.

23              THE COURT:  I thought we discussed this.  I think I

24  said that I instructed the jurors during someone's summation

25  that basically to an extent that one of the parties references
```

Proceedings

1  or such to a principle of law or a law, that at the end of the

2  trial that I would be instructing them on the law, and that they

3  must abide by my instruction and not just a part of my charge.

4          DEFENDANT YAKOV WEINGARTEN:  The problem is he said to

5  the jury that while we listened to Your Honor's instruction,

6  should keep in mind something, and he said there is nothing more

7  to it.  You don't need to get caught up in that.  So he is

8  diminishing Your Honor's instructions about reasonable doubt.

9  He should keep in mind his instruction, which is totally your --

10         THE COURT:  Your objection is duly noted, but I will

11  instruct them that they must -- must, M-U-S-T -- must follow my

12  instruction.

13         All right.  Next issue.

14         DEFENDANT YAKOV WEINGARTEN:  I renew my application

15  to -- of the second element of Count Two.

16         THE COURT:  Is what?

17         DEFENDANT YAKOV WEINGARTEN:  It says with intent to

18  engage in illegal sexual activity.  The statute says for the

19  purpose.

20         THE COURT:  Okay.  Your objection is duly noted.

21         Next.

22         DEFENDANT YAKOV WEINGARTEN:  Third thing would be

23  after all evidence at trial, the three predicated offenses to

24  Count One are irrelevant.  The New York law has nothing to do

25  with the charge with the crime.  And then there is no claim that

Proceedings

1    Jacob intend to have any sexual relations in New York, and even

2    if, it has nothing to do with transporting a minor in foreign

3    commerce, because anything done before transport -- before

4    transport actually about this charge, this has nothing to do

5    with the crime.

6           And the Mexican law is irrelevant for several reasons.

7    First is, according to the evidence of the testimony of Jane and

8    Nachman Helbrans, I think more even, but there is no dispute

9    about it that there was no intent to stay in the state of Mexico

10   when they came to Mexico.  State of Mexico is not -- the state

11   of Mexico is not the same as Mexico City.  In Mexico City it's

12   perfectly legal to have sex with a minor of 12 years old.

13   That's a law in Mexico City.

14           THE COURT:  Really?

15           DEFENDANT YAKOV WEINGARTEN:  Yes.

16           THE COURT:  Okay.  So just so that the record is

17   clear, your objection is duly noted.  Next issue.

18           DEFENDANT YAKOV WEINGARTEN:  And then it's family law.

19   Family law cannot come in as a predicate offense for Count One.

20   That's clear.

21           The third thing is that the -- that Mr. Ligtenberg

22   yesterday claims to the jury a totally wrong theory that in all

23   relevant jurisdictions this is illegal while the Mexico City

24   it's legal.  In Guatemala it's legal.  And they know it because

25   there was a lot of discussions about it in the trial of Helbrans

1  that in Guatemala a 14-year-old age -- 14 years of age is

2  consent.

3            THE COURT:  Okay.  Your objection is duly noted.  We

4  have discussed this.  You are just revisiting a lot of the

5  issues we have already discussed, and with all due respect,

6  delaying the trial, it's not helpful.  It really isn't.  You

7  need, we need to get to the end, all right, and then in the

8  event, in the event that you receive an unfavorable decision

9  from the jury, your remedy is to appeal it' very simple and

10 delaying the process is not helpful.  We have gone over this.

11 Okay?

12           DEFENDANT YAKOV WEINGARTEN:  Yes.  And --

13           THE COURT:  I am going to ask a very different

14 question, and please listen to my question.  Do you have

15 anything new --

16           DEFENDANT YAKOV WEINGARTEN:  Yes.

17           THE COURT:  -- to add that you didn't already discuss?

18           DEFENDANT YAKOV WEINGARTEN:  Yes.  Yesterday in the

19 rebuttal -- and this is on page 3005 --

20           THE COURT:  You know what?

21           DEFENDANT YAKOV WEINGARTEN:  On page --

22           THE COURT:  No, no.  What did you say?

23           DEFENDANT YAKOV WEINGARTEN:  Yesterday in rebuttal.

24           THE COURT:  In rebuttal.  So again, we are talking

25 about Mr. Ligtenberg --

1          DEFENDANT YAKOV WEINGARTEN:  Mr. Ligtenberg.

2          THE COURT:  Ligtenberg's -- we discussed -- we went

3    over his rebuttal.

4          DEFENDANT YAKOV WEINGARTEN:  I have something else to

5    say about it.

6          THE COURT:  Be quick.

7          DEFENDANT YAKOV WEINGARTEN:  He said, he claimed that

8    the defendants created a new theory in the middle of trial about

9    Flitchkin, and this is why -- this is on page 3512.

10         THE COURT:  That's argument.  We have gone over that.

11   We talked about that; that the parties are entitled to make

12   arguments.  All right.  And --

13         DEFENDANT YAKOV WEINGARTEN:  I didn't finish my

14   sentence.

15         THE COURT:  -- and that the jury is free to accept

16   those arguments, adopt those arguments.  It's all in the

17   instruction.

18         DEFENDANT YAKOV WEINGARTEN:  There is nothing about in

19   the jury -- only the prosecutor know that.  May I finish my

20   sentence?

21         The government is well aware from previous trials and

22   all exhibits that were denied on the request of the government

23   that the defendants always claimed Mr. Flitchkin.  It's in the

24   recordings that --

25         THE COURT:  But it's not a question of what they said

Proceedings

1  in the past.  It's what was -- how it was presented here at

2  trial, and Mr. Ligtenberg viewed it in a certain way.  The

3  prosecution viewed it in a certain way, and they made argument

4  on it.  So that has already been addressed.

5           Something new?  I am being very patient with you,

6  Mr. Yakov Weingarten.  I am being very patient with you.

7  Something new.  We cannot keep, you know, recycling issues.

8  Something new.

9           DEFENDANT YAKOV WEINGARTEN:  I didn't say it

10  yesterday.

11           THE COURT:  Something new.

12           DEFENDANT YAKOV WEINGARTEN:  Has nothing to do with

13  the jury.

14           THE COURT:  Something new that you want to tell the

15  Court.

16           DEFENDANT YAKOV WEINGARTEN:  He claimed yesterday that

17  Jane and Jacob lived in husband and wife in Mexico, which is a

18  total lie.

19           THE COURT:  The jury will sift through the evidence

20  and make that determination whether or not it's truthful or not,

21  or whether or not there is evidence to support that.  All right?

22           Anything else?  Anything new?

23           DEFENDANT YAKOV WEINGARTEN:  Not in the moment.

24           THE COURT:  Okay.  No, that's it.  All right.  Because

25  right now what we are going to do is we are going to bring out

Jury Charge

1  the jury, and I am going to charge them.  All right?  We are

2  ready to proceed then.

3          THE DEPUTY CLERK:  Right now?

4          THE COURT:  Yes, please.  Before we get something new.

5          THE DEPUTY CLERK:  All rise.  Jurors entering.

6          (In open court; jury present)

7          THE COURT:  Please be seated, everyone.  Welcome back.

8  We are ready to continue with the case on trial.  All right.  So

9  we will begin.  All right.

10         Members of the jury, you have now heard all of the

11  evidence in the case and the closing arguments.  It is my duty

12  at this point to instruct you as to the law.  My instructions to

13  you will be in three parts.  First, I will give you general

14  instructions about, for example, your role as the jury, what you

15  can and cannot consider in your deliberations, and the burden of

16  proof.  Second, I will describe the law to be applied to the

17  facts of this case as you find them to be established by the

18  evidence.  Later, I will give you some instructions with respect

19  to your deliberations.

20         Because my instructions cover many points, I have

21  given you a copy of my instructions to follow along.  In

22  addition, you may take your copy of the instructions with you

23  for reference during your deliberations.  When you retire to

24  deliberate in the jury room, you should not single out any

25  instruction as alone stating the law, rather you should consider

1 my instructions as a whole.

2           You, members of the jury, are the sole and exclusive

3 judges of the facts.  You must weigh and consider the evidence

4 without regard to sympathy, prejudice or passion for or against

5 any party.

6           Let me remind you that no religion or religious

7 community is on trial here.  While there have been allegations

8 that certain members or leaders of a religious community engaged

9 in certain acts, your job is to determine whether the government

10 has proven these allegations, that is, whether the government

11 has proven each and every element of the charges against the

12 three defendants on trial -- Shmiel Weingarten, Yoil Weingarten

13 and Yakov Weingarten -- beyond a reasonable doubt.

14           It is your duty to accept my instructions as to the

15 law and to apply them to the facts as you determine them.  If

16 any party has stated a legal principle different from any that I

17 state to you in these instructions, it is my instructions and my

18 instructions alone that you must follow.

19           Additionally, during the course of the trial, the

20 parties have introduced certain exhibits that referenced certain

21 legal principles or laws, or made characterizations regarding

22 legal principles in their opening or closing statements.  I

23 instruct you that no statement of law contained in an exhibit or

24 in an opening or closing statement provides the elements of any

25 of the charged claims and you should not treat them as such.

Jury Charge

1    Rather, I will provide you with all instructions on the law.

2            In reaching your verdict, you must remember that all

3    parties stand equal before a jury in the courts of the United

4    States.  The fact that the government is a party and the

5    prosecution is brought in the name of the United States does not

6    entitle the government or its witnesses to any greater

7    consideration than that accorded to any other party.  By the

8    same token, you must give it no less deference.  The government

9    and the defendants stand on equal footing before you.

10           It would be improper for you to consider in reaching

11   your decision as to whether the government sustained its burden

12   of proof, any personal feelings you may have about the

13   defendants' race, religion, national origin, sex, or age.  All

14   persons are all entitled to the same presumption of innocence,

15   and the government has the same burden of proof with respect to

16   all persons.

17           It is the duty of a lawyer, or a defendant acting as

18   his own lawyer, to object when the other side offers testimony

19   or other evidence that the party believes is not permissible or

20   admissibility.  Therefore, you should not infer anything from

21   the fact that a party objected to any evidence, nor should you

22   draw any inference from the fact that I sustained or overruled

23   an objection.  Simply because I permitted certain evidence to be

24   introduced does not mean that I have decided on its importance

25   or significance.  That is for you to decide.

1          Finally, the personalities and the conduct of counsel,

2    or a defendant while acting as his own counsel, are not in any

3    way an issue.  If you formed opinions of any kind about any of

4    the parties in the case, favorable or unfavorable, whether you

5    approved or disapproved of their behavior, those opinions should

6    not enter into your deliberations.

7          You may remember that during my preliminary

8    instructions I told you that to hold a defendant guilty, the

9    government must prove each and every element of the crime

10   charged beyond a reasonable doubt.  The words almost define

11   themselves.  It is a doubt that a reasonable person has after

12   carefully weighing all of the evidence.  It is a doubt founded

13   in reason and arising out of the evidence in the case or the

14   lack of evidence.  Reasonable doubt is the doubt that appears to

15   your reason, your judgment, your experience, your common sense.

16   It is a doubt that a reasonable person has after carefully

17   weighing all the evidence in the case.

18         I must emphasize that beyond a reasonable doubt does

19   not mean beyond all possible doubt.  It is practically

20   impossible for a person to absolutely and completely -- for a

21   person to be absolutely and completely convinced of any disputed

22   fact that by its very nature cannot be proven with mathematical

23   certainty.  Under criminal law, guilt must be established beyond

24   a reasonable doubt, not all possible doubt.

25         Further, the government is not required to prove each

1   element of the offense by any particular number of witnesses.

2   The testimony of a single witness may be enough to convince you

3   beyond a reasonable doubt of the existence of the elements of

4   the charged offenses if you believe that the witness has

5   truthfully and accurately related what he or she has told you.

6          If, after fair and impartial consideration of all of

7   the evidence, you can candidly and honestly say that you do have

8   an abiding belief of any defendant's guilt, such as -- such a

9   belief as a prudent person would be willing to act upon in

10  important matters in their personal affairs of his or her own

11  life, then you have no reasonable doubt, and under such

12  circumstances, it is your duty to convict that defendant.

13         On the other hand, if after a fair and impartial

14  consideration of all of the evidence, you can candidly and

15  honestly say that you are not satisfied with the guilt of a

16  defendant, that you do not have an abiding belief of the

17  defendant's guilt -- in other words, if you have such a doubt as

18  would reasonably cause a prudent person to hesitate in acting in

19  matters of importance in his or her own affairs -- then you have

20  a reasonable doubt, and in that circumstance it is your duty to

21  acquit that defendant.

22         As I have told you many times, in reaching your

23  verdict you must consider only the evidence that you have seen

24  and heard in this courtroom.  What, then, is evidence?

25         The evidence in this case is the sworn testimony of

1  witnesses and the exhibits received into evidence.  By contrast,

2  the questions posed to a witness are not to be considered by you

3  as evidence.  It is the witness's answers, along with the posed

4  questions that are evidence, not the question alone.

5          Testimony that has been stricken or excluded by me is

6  not evidence and may not be considered by you in rendering your

7  verdict.  Arguments by the advocates are not evidence.  What you

8  heard during the opening and closing statements is not evidence

9  but merely intended to help you understand the evidence to reach

10  your verdict.  If your recollection of the facts differs from

11  the opening and closing statements, you should rely on your

12  recollection.  If a party made a statement during an opening or

13  closing, and you find that there is no evidence to support the

14  statement, you should disregard the statement.

15          Any statements that I may have made during the trial

16  or during these instructions do not constitute evidence.  The

17  rulings I have made during the trial and these instructions are

18  no indication of my views or of what your decision should be.

19          At times, I may have admonished a witness or directed

20  a witness to be responsive to questions or to keep his or her

21  voice up.  At times, I may have asked a witness a question

22  myself.  Any questions that I asked, instructions that I gave,

23  were intended only to clarify the presentation of evidence and

24  to bring out something that I thought might be unclear.  You

25  should not give a witness's response to my questions any more

1  weight than the answers to a party's questions merely because I

2  asked the question.  You should draw no inference or conclusion

3  of any kind, favorable or unfavorable, with respect to any

4  witness or any party in the case by reason of any comment,

5  question, or instruction of mine.  Nor should you infer that I

6  have any views as to the credibility of any witness, as to the

7  weight of the evidence, or as to how you should decide any issue

8  that is before you.  That is entirely your role.

9         To constitute evidence, exhibits must be received in

10  evidence.  Exhibits marked for identification but not admitted

11  are not evidence.  Nor are the materials brought forth only to

12  refresh a witness's recollection.

13         It is for you and you alone to decide the weight, if

14  any, to be given to the testimony you have heard and the

15  exhibits you have seen.

16         There are two types of evidence that you may properly

17  use in deciding whether a defendant is guilty or not guilty of

18  the crimes with which he is charged.

19         One type of evidence is direct evidence.  Direct

20  evidence of a fact in issue is presented when a witness

21  testifies to that fact based on what he or she personally saw,

22  heard or observed.  In other words, when a witness testifies

23  about a fact in issue on the basis of that witness's own

24  knowledge by virtue of what he or she sees, feels, touches or

25  hears, that is direct evidence of that fact.

1           The second type of evidence is circumstantial

2    evidence.  Circumstantial evidence is evidence that tends to

3    prove a disputed fact indirectly by proof of other facts.

4           There is a simple example of circumstantial evidence

5    that is often used in this courthouse.  Assume that when you

6    came into the courthouse this morning, the sun was shining, and

7    it was a nice day outdoors.  Assume that the courtroom shades

8    were drawn and you could not look outside.  Assume further that

9    as you were sitting here, someone walked in with an umbrella

10   that was dripping wet, and then a few moments later someone else

11   walked in with a raincoat that was also dripping wet.

12          Now, because you cannot look outside the courtroom,

13   and you could not see whether it was raining, you would have no

14   direct evidence of that fact.  But, on the combination of facts

15   that I have asked you to assume, it would be reasonable and

16   logical for you to conclude that it was raining.

17          That is all there is to circumstantial evidence.  You

18   infer on the basis of your reason, experience and common sense

19   from one established fact the existence or nonexistence of some

20   other fact.

21          The matter of drawing inferences from the facts in

22   evidence is not a matter of guesswork or speculation.  An

23   inference is a logical, factual conclusion that you might

24   reasonably draw from other facts that have been proven.

25          Many material facts, such as state of mind, are not

1  easily proven by direct evidence.  Usually such facts are

2  established by circumstantial evidence and the reasonable

3  inferences you draw.  Circumstantial evidence may be given as

4  much weight as direct evidence.  The law makes no distinction

5  between direct and circumstantial evidence, but simply requires

6  that before convicting a defendant, the jury must be satisfied

7  of that defendant's guilt beyond a reasonable doubt based on all

8  of the evidence in the case.

9          Of the exhibits received in evidence, some documents

10 have been redacted.  "Redacted" means that a part of the

11 document was omitted, deleted or blacked out.  You are to

12 concern yourself only with the part of the item that has been

13 admitted into evidence.  You should not consider any possible

14 reason why the other part of it has been redacted.

15         During the course of the trial, there were charts

16 shown to you in order to make the other evidence more meaningful

17 and to aid you in considering that evidence, for example, I

18 believe it was Government Exhibit 10 and the poster with the

19 photographs and nameplates contained in Government Exhibit 10.

20 These summaries, along with the corresponding exhibits, are

21 evidence.  The charts were presented solely for illustrative

22 purposes as aids to help you understand the underlying evidence.

23 You are to give no greater consideration to these summaries than

24 you would give to the evidence upon which they are based.  It is

25 for you, the jury, to determine whether the summary charts

1  fairly and accurately summarize the underlying evidence.  You

2  are entitled to consider them if you find that they are of

3  assistance to you in analyzing and understanding the evidence,

4  or you may choose to totally disregard them if you find them of

5  no assistance or deem them inconsistent with the evidence.

6      You heard some recordings in Yiddish.  For that

7  reason, it was necessary for the parties to obtain translations

8  of those portions of the conversations, communications, and

9  documents into English.  The translations of the conversations,

10  communications, and documents embody the testimony of

11  interpreters called by the parties to testify.  As such, those

12  portions of the transcripts reflecting the foreign language to

13  English translation have been admitted into evidence.

14      Further, whether you approve or disapprove of the

15  recording of those conversations may not enter into your

16  deliberations.  I instruct you that these recordings were made

17  in a lawful manner; that no one's rights were violated; that the

18  parties' use of this evidence is entirely lawful, and that it

19  was properly admitted into evidence at trial.

20      You must, therefore, regardless of any personal

21  opinions, give this evidence full consideration along with all

22  of the other evidence in the case in determining whether the

23  government has proved beyond a reasonable doubt the guilt of a

24  defendant.  Of course, it is for you to decide what weight, if

25  any, to give this evidence.

1          If you wish to hear any of the recordings again, see

2     any of the transcripts of the foreign language recordings, or

3     review the documents which have been translated into English,

4     they will be made available to you during your deliberations.

5          Either way, you should not substitute your own

6     understanding of any of the foreign languages for that of any

7     translation that was admitted into evidence; you must accept the

8     translations without regard to your own understanding of those

9     foreign languages.

10          How do you evaluate the credibility or believability

11     of the witnesses?  The answer is that you use your common sense.

12     You should ask yourselves:  Did the witness impress you as

13     honest, open and candid?  How responsive was the witness to the

14     questions asked on direct examination and on cross-examination?

15          If you find that a witness is intentionally telling a

16     falsehood on a matter of importance, you may consider that fact

17     when weighing the witness's credibility.  Yet, a witness may be

18     inaccurate, contradictory, or even untruthful in some respects

19     and entirely believable and truthful in other respects.  It is

20     for you to determine whether such inconsistencies are

21     significant or inconsequential, and whether to accept or reject

22     all or to accept and reject a portion of the testimony of any

23     witness.  You are not required to accept testimony even though

24     the testimony is not contradicted and the witness's testimony is

25     not challenged.  You may decide because of the witness's bearing

1  or demeanor, or because of the inherent improbability of the

2  testimony, or for other reasons sufficient to yourselves that

3  the testimony is not worthy of belief.

4          There is no magical formula by which you can evaluate

5  testimony.  You determine for yourselves in many circumstances

6  the reliability of statements that are made by others to you and

7  upon which you are asked to rely and act.  You may use the same

8  tests here that you use in your everyday life.

9          The fact that one party called more witnesses and

10 introduced more evidence than the other does not mean that you

11 should necessarily find the facts in favor of the side offering

12 the most witnesses.  It is for you to decide which witnesses to

13 believe and which facts are true.  To do this, you must look at

14 all the evidence, drawing upon your own common sense and

15 personal experience.  After examining all of the evidence, you

16 may decide that the party calling the most witnesses has not

17 persuaded you because you do not believe its witnesses, or

18 because you do believe the fewer witnesses called by the other

19 side.  Or you may decide that the party calling the most

20 witnesses has persuaded you as to whether one, two, or all three

21 of the defendants is guilty or not guilty of some or all of the

22 crimes with which he is charged.

23         You have heard testimony from what we call expert

24 witnesses, including David Braun and Shaye Wachsman, who were

25 qualified as experts in Yiddish to English and English to

1   Yiddish translation, and David Wurtz, who was qualified as an

2   expert in substance identification.

3         An expert is a witness who by education or experience

4   has acquired learning or experience in a specialized area of

5   knowledge.  Such witnesses are permitted to give their opinions

6   as to relevant matters in which they profess to be an expert and

7   give their reasons for their opinions.  Expert testimony is

8   presented to you on the theory that someone who is experienced

9   in a specialized field can assist you in understanding the

10  evidence or in reaching an independent decision on the facts.

11        Your role in judging credibility applies to experts as

12  well as to other witnesses.  You should consider the expert's

13  opinions which were received in evidence in this case and give

14  them as much or as little weight as you think they deserve.  If

15  you decide that the opinion of an expert was not based on

16  sufficient education or experience or on other sufficient data,

17  or if you should conclude that the trustworthiness or

18  credibility of an expert is questionable for any reason, or if

19  the opinion of the expert was outweighed, in your judgment, by

20  other evidence in the case, then you might disregard the opinion

21  of the expert entirely or in part.

22        On the other hand, if you find the opinion of an

23  expert is based on sufficient data, education and experience,

24  and the other evidence does not give you reason to doubt the

25  expert's conclusions, you would be justified in placing reliance

1   on that expert's testimony.

2           On some occasions interpreters were used to aid

3   testifying witnesses.  Those interpreters were provided by the

4   Court or retained by the government and translated words or

5   phrases of the witness's testimony into English for the benefit

6   of the jury or from English to Yiddish or Spanish for the

7   benefit of the witnesses.  You are to draw no inferences from

8   the fact that interpreters were used in this manner.

9           With respect to the testimony of witnesses who said

10  any words in a language other than English, I instruct you that

11  you must rely on and accept the interpreter's English language

12  interpretation of that testimony, even if you understand the

13  foreign language in which the witness testified.  You must

14  consider the translated testimony as you would any other

15  evidence in the case and give it the weight you deem

16  appropriate.

17          In evaluating the credibility of the witnesses, you

18  should take into account any evidence that a witness may benefit

19  in some way from the outcome of the case.  If you find that any

20  witness whose testimony you are considering may have an interest

21  in the outcome of this trial, then you should bear that factor

22  in mind when evaluating the credibility of his or her testimony

23  and when determining how much weight to give it.

24          Keep in mind, though, that it does not automatically

25  follow that testimony given by an interested witness is to be

1  disbelieved.  It is for you to decide based on your own

2  perceptions and common sense, and to what extent, if any -- if

3  at all, the witness's interest has affected the credibility or

4  importance of his or her testimony.

5          You have heard from witness Shimon Malka who testified

6  that he was actually involved in carrying out the kidnapping of

7  Jane and John Doe.

8          The law allows the use of accomplice testimony, and

9  such testimony is properly considered by the jury.  Indeed, it

10  is the law in federal courts that the testimony of an accomplice

11  may be enough in itself for a conviction if the jury finds that

12  the testimony establishes guilt beyond a reasonable doubt.

13  However, it is also the case that accomplice testimony is of

14  such a nature that it must be scrutinized with great care and

15  viewed with special caution.  Like the testimony of any other

16  witness, an accomplice's testimony should be given such weight

17  as it deserves in light of all the facts and circumstances.

18          I have given you some general considerations on

19  credibility, and I am not going to repeat those here, nor will I

20  repeat the arguments that have been made by both sides.

21  However, let me just say a few things that you may want to

22  consider during your deliberations on the subject of

23  accomplices.

24          The fact that a witness is an accomplice should be

25  considered by you as bearing on his credibility.  However, it

1  does not follow that simply because a person has admitted

2  participation in a crime that he is incapable of giving a

3  truthful version of what happened.  You should, of course,

4  consider whether the testimony was motivated by reward or

5  self-interest or hostility toward a defendant.  You should ask

6  yourself whether the so-called accomplice would benefit by lying

7  or telling the truth.  Was his testimony made up in any way

8  because he believed that he would somehow receive favorable

9  treatment by testifying falsely or that he believed that his

10  interests would be best served by testifying truthfully?

11       If you believe a witness was motivated by personal

12  gain, was the motivation one that would cause them to lie, or

13  was it one that would cause him to tell the truth?  And did this

14  motivation color his testimony?

15       Obviously, you should reject the testimony if you find

16  it was false.  However, if after a cautious and careful

17  examination of the testimony and the witness's demeanor, you are

18  satisfied that the testimony is true, you should accept it as

19  credible and act on it accordingly.  You may also accept parts

20  and reject parts of an accomplice's, or any of this witness's

21  testimony.

22       You have heard testimony and arguments regarding a

23  non-prosecution agreement between the government and Shimon

24  Malka.  It is of no concern of yours why the government has made

25  an agreement not to prosecute a witness.  Your sole concern is

1  to decide whether the witness has given truthful testimony in

2  this court before you.  In sum, you should look at all the

3  evidence in deciding what credence and what weight, if any, you

4  will give to the testimony of the accomplice witness Shimon

5  Malka.

6        You have heard testimony from Jacob Rosner who pled

7  guilty to charges arising out of the same facts as this case.

8  You are instructed that you are not to draw any conclusions or

9  inferences of any kind about the guilt of Shmiel Weingarten,

10 Yakov Weingarten, or Yoil Weingarten from the fact that a

11 witness pled guilty to similar charges.  That witness's decision

12 to plead guilty was a personal decision about his own guilt.  It

13 may not be used by you in any way as evidence against or

14 unfavorable to the defendants on trial here.

15       You also heard testimony from Nachman Helbrans, Mayer

16 Rosner, Mordechay Malka, Matityau Malka, who were convicted on

17 similar charges.  You are instructed that you are to draw no

18 conclusions or inferences of any kind about the guilt of Shmiel

19 Weingarten, Yakov Weingarten, or Yoil Weingarten from the fact

20 that defense witnesses have been convicted of similar charges to

21 the defendants.  The prior trial verdicts are the resolution of

22 only those charges brought against those defendants and such

23 prior convictions are binding only upon those particular

24 co-defendants.

25       You have heard evidence during the trial that

1  witnesses have discussed the facts of the case and their

2  testimony with the lawyers or with the defendants before the

3  witnesses appeared in court.

4          Although you may consider that fact when you are

5  evaluating the credibility of a witness, there is nothing either

6  unusual or improper about a witness meeting with lawyers, or a

7  defendant acting as his own lawyer, before testifying.  Such

8  discussions can notify a witness of the subjects he or she will

9  be questioned about, help the witness to focus on those

10 subjects, and give the witness the opportunity to review

11 relevant exhibits before being questioned about them.  Such

12 consultation helps conserve your time and the Court's time.

13 Indeed, it would be unusual and surprising for a party to call a

14 witness without such preparation.

15         Again, the weight you give to the fact or the nature

16 of the preparation by a witness for his or her testimony and

17 what inferences you draw from such preparation are matters

18 completely within your discretion.

19         There are several people whose names you've heard

20 during the course of the trial but did not appear to testify.

21 In a federal criminal trial, both the government and the

22 defendants are entitled to receive from the clerk of the court a

23 subpoena calling for the attendance of a witness, and no matter

24 where the witness lives in the United States, that witness is

25 required to appear when served with such a subpoena.  It is the

1  parties, not the Court, who subpoenas and calls witnesses.  I
2  instruct you that each party has an equal opportunity, or lack
3  of opportunity, to call any of these witnesses.  Therefore, you
4  may not draw any inferences or reach any conclusions as to what
5  they would have testified to had they been called.  Their
6  absence may not affect your judgment in any way.

7          Recall, however, that the law does not impose on any
8  defendant in a criminal case the burden or duty of testifying,
9  calling any witnesses, or producing any evidence.

10         You have heard the testimony of law enforcement
11  officials or other witnesses employed by a federal or state or
12  local government.  The fact that these witnesses work for a
13  government entity does not mean that their testimony is
14  necessarily deserving of more or less consideration or greater
15  or lesser weight than that of any other witness.  At the same
16  time, in considering the credibility of such a witness, you are
17  entitled to consider whether the testimony may be colored by a
18  personal or a professional interest in the outcome of the case.

19         It is your decision, after reviewing all of the
20  evidence, whether to accept the testimony of the law enforcement
21  or government employee witnesses and to give that testimony
22  whatever weight you find it deserves.

23         You may not draw any inference, favorable or
24  unfavorable, towards the government or the defendants, from the
25  fact that any person was not named as a defendant in this case,

1  and you may not speculate as to the reasons why other persons

2  are not on trial before you -- are not on trial before you now.

3  You are also not to speculate as to why the government did or

4  did not charge any non-defendant with any specific crimes.  Put

5  simply, the government's charging decisions should have no

6  bearing on your deliberations.  Those matters are wholly outside

7  your concern and have no bearing on your function as jurors in

8  deciding the case before you.

9           You have heard references to certain investigative

10 techniques that were used or not used by the government in this

11 case.  There is no legal requirement that the government prove

12 its case through any particular means.  While you are to

13 carefully consider the evidence adduced by the government, you

14 are not to speculate as to why the government used the

15 techniques it did or why it did not use other techniques.  The

16 government is not on trial.  Law enforcement's techniques are

17 not your concern.

18          Your concern is to determine whether or not, based on

19 the evidence or lack of evidence presented, a defendant's guilt

20 has been proven beyond a reasonable doubt as to some or all of

21 the crimes charged.

22          The defendants have pled not guilty to the charges

23 against them.  In so doing, the defendants have denied every

24 allegation charged.  As a result of that plea of not guilty, the

25 burden is on the government to prove guilt beyond a reasonable

1   doubt.  This burden never shifts to the defendant for the simple

2   reason that the law never imposes upon a defendant in a criminal

3   case the burden or duty to testify or calling any witnesses, or

4   locating or producing any evidence.

5           As judges of fact, you are presuming the defendants to

6   be innocent, so they have nothing to prove.  The presumption of

7   innocence was in their favor when the trial began, continued in

8   their favor throughout the trial, remains with them even as I

9   speak to you now, and persists in their favor during the course

10  of your deliberations in the jury room.

11          This presumption of innocence alone is sufficient to

12  acquit the defendants unless you as jurors are unanimously

13  convinced beyond a reasonable doubt of a defendant's guilt after

14  a careful and impartial consideration of all the evidence in the

15  case.  If the government fails to sustain its burden as to a

16  defendant, then you must find that defendant not guilty.

17          A defendant in a criminal case never has any duty to

18  testify or come forward with any evidence.  This is because, as

19  I have told you, the burden of proof beyond a reasonable doubt

20  remains on the government at all times, and a defendant is

21  presumed innocent.  In this case, Yoil Weingarten did not

22  testify.  You may not draw any inference against Yoil Weingarten

23  because he did not take the stand, the witness stand, and you

24  may not attach any significance to the fact that he did not

25  testify.  Defendants Shmiel Weingarten and Yakov Weingarten did

1  testify, and each was subject to cross-examination like any

2  other witness.  You must examine and evaluate Shmiel

3  Weingarten's and Yoil Weingarten's testimony just as you would

4  the testimony of any other witness.

5       The indictment names Shmiel Weingarten, Yoil

6  Weingarten, and Yakov Weingarten as defendants, and they are

7  being tried together.  In reaching a verdict, however, you must

8  bear in mind that guilt is individual.  Your verdict as to each

9  defendant must be determined separately with respect to each

10 defendant, solely on the evidence, or lack of evidence,

11 presented against them without regard to the guilt or innocence

12 of anyone else.

13      In addition, some of the evidence in this case may be

14 limited to one defendant.  Let me emphasize that any evidence

15 admitted solely against one defendant may be considered only as

16 against that particular defendant and may not in any respect

17 enter into your deliberations on any other defendant.

18      You have heard evidence that the defendants and others

19 engaged in conduct other than that charged in the indictment.

20 For example, the government introduced testimony and evidence

21 regarding circumstances and actions by the defendants and others

22 in the Lev Tahor community in Canada, Guatemala and Mexico.

23 This evidence was introduced for the limited purpose of

24 establishing the defendants' intent and control with respect to

25 the crimes charged and may only be considered for those

1  purposes.  The defendants on trial -- the defendants are on

2  trial only for the acts charged in the indictment.  Accordingly,

3  you may not consider evidence regarding circumstances or

4  conditions in the Lev Tahor community generally as a substitute

5  for proof that the defendants committed the crimes charged.  Nor

6  may you consider this evidence as proof that a defendant has a

7  criminal personality or bad character.

8          The defendants are formally charged in an indictment.

9  As I instructed you at the beginning of this case, the

10 indictment is a charge or accusation.  It is not evidence.  It

11 creates no presumption that a crime was committed, and no

12 inference of any kind may be drawn from the indictment.  Under

13 our law, a person who has been accused of a crime is presumed to

14 be innocent.  Therefore, you may not consider the fact that the

15 defendants were indicted as evidence of their guilt.

16         The indictment in this case contains six counts.  Each

17 count is a separate offense or crime.  Each count must therefore

18 be considered separately by you, and you must return a separate

19 verdict on each count as to each defendant.

20         Count One charges that, in or about December 2018,

21 Mr. Shmiel Weingarten, Mr. Yoil Weingarten, and Mr. Yakov

22 Weingarten conspired -- that is, agreed -- with each other and

23 others to transport a minor, Jane Doe, with the intent that she

24 engage in sexual activity for which any person can be charged

25 with a crime.

1          Count Two charges that Mr. Shmiel Weingarten, and Yoil

2     Weingarten, and Yakov Weingarten conspired -- that is, agreed --

3     with each other and others, to travel with the intent that the

4     minor Jane Doe engage in illicit sexual conduct in or about

5     December 2018.

6          Count Three charges that from on or about

7     December 2018 to on or about March 2021, Mr. Shmiel Weingarten,

8     Mr. Yoil Weingarten, and Mr. Yakov Weingarten conspired -- that

9     is, agreed -- with each other and others, to commit

10    international parental kidnapping, unlawful transfer,

11    possession, and use of a means of identification; and entry by

12    false pretenses to any secure area of any airport.

13         Count Four -- Counts Four and Five charge that

14    Mr. Shmiel Weingarten, Mr. Yoil Weingarten, and Mr. Yakov

15    Weingarten committed international parental kidnapping in

16    December 2018.

17         Count Six charges that Mr. Yakov Weingarten attempted

18    to commit international parental kidnapping in March 2019.

19         I will start with Count One of the indictment, which

20    charges the defendants with conspiring -- that is, agreeing

21    to -- transport a minor, Jane Doe, with the intent that she

22    engage in sexual activity for which any person can be charged

23    with a crime, and it reads as follows:  From at least on or

24    about December 5th, 2018, up to and including at least on or

25    about December 27, 2018, in the Southern District of New York

```
1  and elsewhere, Yakov Weingarten, Shmiel Weingarten, and Yoil
2  Weingarten, and others known and unknown, would and did
3  knowingly transport an individual who had not attained the age
4  of 18 years in interstate and foreign commerce with the intent
5  that the individual engage in sexual activity for which any
6  person can be charged with a criminal offense, and conspired to
7  do so, to wit, Yakov Weingarten, Shmiel Weingarten, and Yoil
8  Weingarten and others devised and executed a plan to transport
9  Jane Doe from New York to Pennsylvania and other states en route
10 to Mexico and Guatemala with a dominant motive of reuniting her
11 with Jacob Rosner so that they would engage in criminal sexual
12 activity, namely, sexual activity for which a person can be
13 charged with a criminal offense under New York Law -- Penal Law
14 130.30, the Penal Code of the State of Mexico Article 273, and
15 Title 18 United States Code Section 2423(c).
16           (Continued on following page)
17
18
19
20
21
22
23
24
25
```

1          THE COURT:  To find the Defendant you are considering

2     guilty of this count, the Government must prove each of the

3     following elements beyond a reasonable doubt:

4          First, the Government must prove that the conspiracy

5     charged in the indictment existed, that is, that there was an

6     agreement or understanding among at least two people to

7     transport a minor with the intent that she engage in sexual

8     activity for which any person can be charged with a crime;

9          Second, the Government must prove that the Defendant

10    you are considering willfully and knowingly became a member of

11    the conspiracy with the intent to further its illegal purpose,

12    that is, with the intent that the object of the charged

13    conspiracy be committed.

14          Starting with the first element, a conspiracy is an

15    agreement or understanding, explicit or implicit, of two or more

16    people to accomplish by concerted or collective action a

17    criminal or unlawful purpose.  In these instances, the unlawful

18    purpose alleged to have been the object of the conspiracy

19    charged in Count One is the transportation of a minor with the

20    intent that she engage in sexual activity for which any person

21    can be charged with a crime.  In other words, the Government

22    alleges that there was an agreement or understanding and that

23    its objective was to transport a minor with the intent that she

24    engage in sexual activity for which any person can be charged

25    with a crime.

1          The gist, or the essence, of the crime of conspiracy

2    is the unlawful understanding or agreement to violate the law.

3    The success of the conspiracy or the actual commission of the

4    criminal act which is the object of the conspiracy is not an

5    element of the crime of conspiracy.  The conspiracy alleged

6    here, therefore, is the agreement to commit the crime.  That is

7    an entirely separate and distinct offense from the underlying

8    offense which the law calls a substantive crime.

9          The crime of conspiracy is complete once the unlawful

10   agreement is made and the Defendant enters into it.

11   Accordingly, you may find a defendant guilty of the crime of

12   conspiracy to transport a minor with intent that she engage in

13   sexual activity for which any person can be charged with a crime

14   even though the object of the conspiracy, that is, the

15   transportation of the minor for the criminal sexual activity,

16   might not actually have been committed.  The ultimate success of

17   the conspiracy is not required.

18         To prove a conspiracy, the Government is not required

19   to show that the individuals sat around a table and entered into

20   a solemn pact, orally or in writing, stating that they've formed

21   the conspiracy to violate the law and setting forth details of

22   the plans and the means by which the unlawful project is to be

23   carried out or the part to be played by each of the

24   conspirators.  Indeed, it would be extraordinary if there was

25   such a formal document or specific oral agreement.

1          Your common sense will tell you that when people, in

2   fact, undertake to enter a criminal conspiracy, a great deal is

3   left to unexpressed understanding.  From its very nature, a

4   conspiracy is almost invariably secret in its origin and

5   execution.  Conspirators do not usually reduce their agreements

6   to writing or acknowledge them in front of a notary public, nor

7   do they normally publicly broadcast their plans.  Thus, you may

8   infer the existence of a conspiracy from the circumstances of

9   the case and the conduct of the parties involved.

10         To show that a conspiracy existed, then, it is

11  sufficient if the evidence shows that two or more persons in

12  some way or manner, through any contrivance, explicitly or

13  implicitly, came to an understanding to violate the law and to

14  establish an unlawful plan.  Expressed language or specific

15  words are not required to indicate assent or attachment to a

16  conspiracy.  You need only find that two or more persons joined

17  in the conspiracy in order to find that a conspiracy in fact

18  existed to commit the crime alleged in Count One of the

19  Indictment.

20         In determining whether there has been unlawful

21  agreement, you may consider the acts and the conduct of the

22  alleged co-conspirators which were done to carry out the

23  apparent criminal purpose.  The adage "actions speak louder than

24  words" is applicable here.  In deciding whether the alleged

25  conspiracy in fact existed, you may consider all of the evidence

Jury Charge

1  of the acts, conduct, and the declarations of the alleged

2  co-conspirators and the reasonable inferences to be drawn from

3  such evidence.

4          As for the time frame of the alleged conspiracy,

5  although it is charged that the conspiracy in Count One occurred

6  between on or about December 5th, 2018, and at least on or about

7  December 27th, 2018, it is not essential that the Government

8  prove that the conspiracy started and ended on those specific

9  dates.  Rather, it is sufficient to satisfy the first element

10 that you find that, in fact, a conspiracy was formed and that it

11 existed for any time within the charged period.

12         Second element.  If you conclude that the Government

13 has proven beyond a reasonable doubt that the charged conspiracy

14 existed, you must then consider the second essential element,

15 which is that the particular defendant you are considering was a

16 member of the conspiracy.  To prove this second element, the

17 Government must prove beyond a reasonable doubt that the

18 defendant you are considering participated in the charged

19 conspiracy and that he did so knowingly and willfully.

20         'Knowingly' means to act consciously and voluntarily

21 rather than by mistake or accident or mere inadvertence.

22         'Willfully' means to act knowingly and purposely with

23 an intent to do something that the law forbids, that is to say,

24 with bad purpose either to disobey or disregard the law.

25         However, to show that the defendant you are

1  considering acted willfully, the Government does not need to

2  prove that the defendant you are considering knew he was

3  breaking any particular law.  Rather, it is sufficient in this

4  context for the Government to prove that the defendant you are

5  considering was aware of the generally illegal nature of his

6  acts.

7       If you find beyond a reasonable doubt that the

8  defendant you are considering participated in the charged

9  conspiracy and did so knowingly and willfully, then the second

10 element is satisfied.

11      In this regard, it is not necessary that the defendant

12 you are considering be fully informed of all the details of the

13 conspiracy in order to justify an inference of membership on his

14 part, nor does the defendant you are considering need to know

15 the full extent of the conspiracy or all of its participants.

16 Indeed, it is not necessary that the defendant know more than

17 one other member of the conspiracy.  All that is necessary is

18 proof beyond a reasonable doubt that the defendant intentionally

19 joined in the conspiracy for the purpose of furthering its

20 unlawful objective.

21      The defendant you are considering also need not have

22 joined the conspiracy at the outset.  The defendant may have

23 joined it at any time in its progress and he will still be held

24 responsible for all that was done before he joined, as well as

25 all that was done during the conspiracy's existence while he was

1  a member.

2          The law does not require that each conspirator have a

3  role in the conspiracy.  Even a single act may be sufficient to

4  draw a defendant within the ambit of a conspiracy if it meets

5  the essential requirements that I have described.

6          It is not a defense to a conspiracy charge that the

7  object of the conspiracy could not be achieved because of

8  circumstances that the conspirators did not know about.  Thus,

9  you may find the defendant you are considering guilty of the

10 conspiracy even though it was impossible for him to carry out

11 the plan successfully.

12         The law does not require that each conspirator agree

13 to commit the subsequent crime himself.  Instead, each

14 conspirator must agree that the substantive crime be committed

15 by some member of the conspiracy.  However, I wanted to caution

16 you that the mere association by defendant with a conspirator

17 does not make that defendant a member of the conspiracy even

18 when coupled with knowledge that a conspiracy is taking place.

19 In other words, knowledge without participation is not

20 sufficient to be found guilty.  A defendant must have

21 participated in the conspiracy, with knowledge of its unlawful

22 purpose and with the intent to aid in the accomplishment of its

23 unlawful objective.

24         In short, in order to satisfy the second essential

25 element of the charged offense, you must find beyond a

1  reasonable doubt that the defendant you are considering, with an
2  understanding of the unlawful character of the conspiracy
3  charged in Count One, intentionally joined the conspiracy for
4  the purpose of furthering the unlawful object of transporting a
5  minor with the intent that she engage in sexual activity for
6  which any person can be charged with a crime.

7          When people enter into a conspiracy to accomplish an
8  unlawful end, they become agents or partners of one another in
9  carrying out the conspiracy.  Accordingly, the reasonably
10 foreseeable acts or statements of any member of the conspiracy
11 committed in furtherance of the common purpose of the conspiracy
12 are deemed under the law to be acts or statements of all of the
13 members of the conspiracy, and all of the members of the
14 conspiracy are responsible for such acts or statements.  This
15 rule applies even though such acts or statements were not made
16 or committed in that defendant's presence or were made or
17 committed without his knowledge.

18         However, before you can consider the acts or
19 statements of a co-conspirator in deciding the guilt of the
20 defendant, you must first determine that the acts were committed
21 or statements were made during the existence and in furtherance
22 of the unlawful scheme.  If the acts were done or the statements
23 were made by someone whom you do not find to have been a member
24 of the conspiracy or if they were not in furtherance of the
25 conspiracy, they may not be considered by you in deciding

1   whether the defendant is guilty or not guilty.

2          I will now instruct you on the law concerning

3   transporting a minor with intent that she engage in sexual

4   activity for which any person can be charged with a crime, which

5   was the object of the unlawful conspiracy charged in Count One.

6          The relevant language of Title 18 U.S.C. § 2423(a)

7   provides:

8          Transportation with intent to engage in criminal

9   sexual activity.  A person who knowingly transports an

10  individual who has not attained the age of eighteen years in

11  interstate or foreign commerce or in any commonwealth,

12  territory, or possession of the United States, with intent that

13  the individual engage in...any sexual activity for which any

14  person can be charged with a criminal offense is guilty [of0 a

15  crime].

16         Title 18 U.S.C. § 2423(a) contains the following

17  elements:

18         First, that a person knowingly transported a minor in

19  interstate or foreign commerce;

20         Second, that the person transported the minor with the

21  intent that she would engage in sexual activity for which any

22  person can be charged with a crime; and

23         Third, that the minor was less than eighteen years of

24  age at the time of the acts alleged.

25         As I previously noted, the Government need not prove

1    the elements of the substantive crime of transporting the minor

2    with the intent that she engage in sexual activity for which any

3    person can be charged with a crime.  Rather, for Count One, the

4    Government must only prove beyond a reasonable doubt the

5    defendants you are considering conspired, that is, agreed with

6    others, that a member of the conspiracy would violate this

7    substantive statute.  Here, the Government alleges that the

8    Defendants conspired that Nachman Helbrans would transport Jane

9    with the intent that she engage in sexual activity for which

10   Jacob Rosner can be charged with a crime.  Notably, the law does

11   not require that each conspirator agreed to personally commit

12   the substantive crime himself.

13         I will now explain each of the elements of the

14   substantive crime in detail.

15         The first element of the substantive crime of

16   transporting a minor with the intent that she engage in sexual

17   activity for which any person can be charged with a crime is

18   that a person knowingly transported the minor in interstate or

19   foreign commerce.

20         'Interstate or foreign commerce' means simply movement

21   between one state and another or between the United States and a

22   foreign country.

23         'Transport' means to transfer or convey from one place

24   to another.  A person is transported in interstate commerce,

25   whenever she is moved or carried from one state or country into

1  another.

2       The Government does not have to prove that a person

3  personally transported Jane Doe across the state line or country

4  border.  In other words, it is sufficient to satisfy this

5  element that the person was actively engaged in the making of

6  the travel arrangements.

7       Further, because a violation of the statute occurs

8  when a person or his agent -- here, the Government alleges that

9  it was Nachman Helbrans -- transports a minor across state or

10 country lines with the requisite intent, the Government need not

11 prove that any underlying criminal sexual act ever occurred.  In

12 other words, it is not necessary for the Government to prove

13 that anyone, in fact, engaged in any illegal sexual activity.

14      Whether or not the minor consented to being

15 transported or to traveling in interstate commerce for the

16 purpose of engaging in criminal sexual activity or otherwise

17 voluntarily participated is irrelevant.  Likewise, the minor's

18 consent to sexual activity is irrelevant.  The consent or

19 voluntary participation of the minor is not a defense.  Quite

20 simply, the minor's consent is irrelevant.

21      As I noted above, the first element of the substantive

22 crime of transporting a minor with the intent that she engage in

23 sexual activity for which any person can be charged with a crime

24 requires that a person must have knowingly transported the minor

25 in interstate commerce.  This means that the Government must

1 prove that a person knew both that he was transporting the minor

2 as I just defined that term and that he was transporting the

3 individual in interstate commerce.  I previously instructed you

4 regarding what it means to act knowingly and you must follow my

5 previous instructions on that term.

6          With respect to the second element of the substantive

7 offense, that a person intended that the minor engage in any

8 sexual activity for which any person can be charged with a

9 criminal offense, it is not enough for the Government to prove

10 that the minor was transported in interstate or foreign

11 commerce.  The Government must also prove beyond a reasonable

12 doubt that a person embarked on this interstate or foreign

13 transportation with the intent that the minor would engage in

14 sexual activity for which any person can be charged with a

15 crime.

16          A person's intent or purpose at any given time cannot

17 ordinarily be proven directly because there's no way of directly

18 scrutinizing the workings of the human mind.  Such direct proof

19 is not required.

20          The purpose which the Government must prove is the

21 intent that the minor engage in sexual activity for which any

22 person can be charged with a criminal offense.  However, it is

23 not necessary for the Government to prove that the criminal

24 sexual activity was the sole purpose, or even the primary

25 purpose, for any transportation from one state or country to

1  another.  A person may have several different purposes or

2  motives for such transportation and each may prompt, in varying

3  degrees, the act of making the journey.

4         The Government need not prove that sexual activity was

5  the most important purpose for the transportation.  Even if a

6  defendant also had other purposes in transporting the minor,

7  that does not preclude a finding of criminal intent.  The

8  Government must prove beyond a reasonable doubt that one of the

9  significant or motivating purposes of the transportation from

10 one state or country to another was to have the minor engage in

11 sexual activity for which any person can be charged with a

12 crime.  In other words, the Government must prove that the

13 criminal sexual activity was more than merely incidental to the

14 transportation.

15        Further, in order to satisfy the second element of the

16 substantive offense, the Government must prove beyond a

17 reasonable doubt that a person formed the intent to have the

18 minor engage in sexual activity for which any person can be

19 charged with a crime before that person transported or moved the

20 minor in interstate or foreign commerce.  If you find that

21 having Jane Doe engage in sexual activity for which any person

22 can be charged with a crime was not a significant or motivating

23 factor for any agreement to transport her from one state or

24 country to another, then you must acquit the defendant in Count

25 One.

1           As I previously explained to you, the substantive

2    statute that is the object of the conspiracy charged in Count

3    One requires that a person intended that the minor engage in

4    sexual activity for which any person could be charged with a

5    crime.  Count One alleges intended sexual activity between Jane

6    Doe and Jacob Rosner for which Jacob Rosner could be charged

7    with a crime under the Penal Law of New York State, the Penal

8    Code of the State of Mexico, and federal criminal law.

9           I instruct you as a matter of law that the following

10   offenses, set forth in Count One of the Indictment, for

11   violations of New York State Penal law, Mexican law, and federal

12   criminal law in 2018, at the time the acts are alleged to have

13   been committed: New York Penal Law § 130.30, Penal Code of the

14   State of Mexico Article 273, and Title 18 U.S.C. § 2423(c).

15          The Government does not have to prove that a person

16   knew of these specific laws.  The Government need only prove

17   beyond a reasonable doubt that the person was generally aware of

18   the unlawfulness of the intended sexual activity.

19          I will now provide you with instructions regarding

20   each of these offenses.

21          To find a person guilty of the substantive offense of

22   transporting a minor with the intent that she engage in sexual

23   activity for which any person can be charged with a crime, the

24   conduct a person intended the victim to engage in must violate

25   at least one of these offenses.  It is not necessary to find

1 that this conduct violated more than one of these laws.

2          Before I do that, let me also instruct you as a matter

3 of law that under Article 83 of the Guatemalan Civil Code, any

4 marriage involving minors under the age of eighteen is

5 prohibited if it occurred after September 21, 2017.

6 Furthermore, there are no exceptions to the child marriage ban

7 for religious marriages.  I further instruct you that Jane Doe

8 and Jacob Rosner were not legally married and that Jane Doe's

9 and Jacob Rosner's religious marriage is not a defense to any of

10 the charges.

11          It is a violation of New York State Penal Law 130.30,

12 Rape in the Second Degree, when a person, being eighteen years

13 old or older, engages in sexual intercourse with another person

14 less than fifteen years old.  It is no defense to this law that

15 the offender was religiously married to the victim.

16          The element of Rape in the Second Degree are: first,

17 that a person was eighteen years old or older; second, that the

18 person engaged in sexual intercourse with an individual; and

19 third, that at the time the person engaged in sexual intercourse

20 with the individual, the individual was less than fifteen years

21 old.

22          It is a violation of Article 273 of the Criminal Code

23 of the State of Mexico to have sexual intercourse with an

24 individual under the age of fifteen.  It is, therefore, a crime

25 to have sex with a fourteen-year-old.  It is no defense to this

1  law that the offender was religiously married to the victim.

2         I just instructed you on the New York law and the

3  Mexican law relevant to Count One.  Now I will instruct you on

4  the federal criminal statute: Title 18 U.S.C. § 2423(c).

5         As I have told you, Count One alleges intended sexual

6  activity between Jane Doe and Jacob Rosner for which Jacob

7  Rosner can be charged with a crime under Criminal law or Penal

8  law of New York State, Mexico, and federal criminal law.

9         Section 2423(c) of Title 18 of the United States Code

10  provides in relevant part: any United States citizens...who

11  travels in foreign commerce or who reside, either temporarily or

12  permanently, in a foreign country and engages in any illicit

13  sexual conduct with another person shall be [guilty of a crime].

14         In order to prove a person guilty of engaging in

15  illicit sexual conduct in foreign places, the Government must

16  prove each of the following elements beyond a reasonable doubt:

17         First, that a person is a United States citizen;

18         Second, that the person traveled in foreign commerce

19  or resided, either temporarily or permanently, in a foreign

20  country; and

21         Third, that while in a foreign country, that person

22  engaged in illicit sexual conduct with another person.

23         I will now explain each of the elements of the

24  substantive statute in greater detail.

25         The first element that the Government must prove

1  beyond a reasonable doubt is that a person -- here, the

2  Government alleges that this person is Jacob Rosner -- is a

3  United States citizen.

4       The second element that the Government must prove

5  beyond a reasonable doubt is that the person traveled in foreign

6  commerce or resided, either temporarily or permanently, in a

7  foreign country.  'Travel in foreign commerce' means simply

8  movement between the United States and another country.

9       The third element that the Government must prove

10  beyond a reasonable doubt is that while in a foreign country,

11  that person engaged in illicit sexual conduct with another

12  person.

13       A person engages in 'illicit sexual conduct' when he

14  knowingly engages in a sexual contact with a person who has

15  reached the age of twelve years old, but has not reached the age

16  of sixteen years old, and who is at least four years younger

17  than that person.

18       The term 'sexual act' means (1) penetration, however

19  slight, of the vulva or anus by the penis; (2) contact between

20  the mouth and the penis, the mouth and the vulva, or the mouth

21  and the anus; (3) penetration, however slight, of the anus or

22  genital opening of another by a hand, a finger, or by any object

23  with intent to abuse, humiliate, harass, degrade, arouse, or

24  gratify the sexual desire of any person; or (4) the intentional

25  touching, not through the clothing, of the genitalia of another

1  person who has not attained the age of sixteen years with an

2  intent to abuse, humiliate, harass, degrade, arouse, or gratify

3  the sexual desire of any person.

4          It is of no defense to this law that the defendant was

5  religiously married to the victim.

6          With respect to the third element of the substantive

7  crime, that the victim was under the age of eighteen when the

8  transportation took place, I instruct you that the Government is

9  required to prove that the person knew that the victim was under

10  eighteen years of age at the time of travel.

11          You have been provided with a verdict form that

12  includes a space for you to indicate whether the Government has

13  proven beyond a reasonable doubt that the conduct intended by

14  the conspirators was a violation of any of the offenses that I

15  previously described -- namely, New York Penal Law § 130.30,

16  Penal Code of the State of Mexico Article 273, or Title 18

17  U.S.C.

18  § 2423(c).  If you find the defendant you are considering guilty

19  of Count One, you must indicate on the space provided on the

20  verdict form which law or combination of laws would be violated

21  by the acts intended by the conspirators.  As with all questions

22  on the verdict form, you must be unanimously agreed on this

23  fact.

24          Count Two of the Indictment charges the Defendants

25  with a conspiracy to travel with intent to engage in illicit

1  sexual conduct reads as follows:

2         From at least on or about December 5th, 2018, up to

3  and including at least on or about December 27, 2018, in the

4  Southern District of New York and elsewhere...Yakov

5  Weingarten...Shmiel Weingarten, and Yoil Weingarten...[and

6  others] known and unknown, would and did knowingly and travel in

7  interstate commerce with the motivating purpose of engaging in

8  illicit sexual conduct and conspired to do so, to wit...Yakov

9  Weingarten, Shmiel Weingarten, and Yoil Weingarten, [and

10 others], devised and executed a plan to travel and transport

11 [Jane Doe], then fourteen years old, from New York to

12 Pennsylvania and other states en route to Mexico in Guatemala

13 with the motivating purpose of reuniting her with Jacob Rosner,

14 then twenty years old, so that they would engage in illicit

15 sexual conduct, namely, a sexual act with a person under

16 eighteen years of age that would be in violation of Title 18

17 U.S.C. § 2243(a)(which prohibits knowingly engaging in a sexual

18 act with a person under sixteen who is at least four years

19 younger than the person so engaging) if the sexual act occurred

20 in the special maritime and territorial jurisdiction of the

21 United States.

22        To find the defendant you are considering guilty of

23 this count, the Government must prove each of the following

24 elements beyond a reasonable doubt:

25        First, the Government must prove that the conspiracy

1  charged in the indictment existed; that is, that there was an
2  agreement or understanding among at least two people that one of
3  them would travel with intent to engage in illicit sexual
4  conduct.

5          Second, the Government must prove that the defendant
6  you are considering knowingly became a member of the conspiracy
7  to travel with intent to engage in illicit sexual conduct.

8          I've already instructed you on the law regarding the
9  existence of a criminal conspiracy and the requirements for
10  membership in a criminal conspiracy in Count One.  You must
11  follow those instructions here as well.  The object of the
12  conspiracy charged in Count Two is for one of the
13  co-conspirators to travel with the intent to engage in illicit
14  sexual conduct.

15          I will now instruct you on the law concerning the
16  substantive violation of traveling with intent to engage in
17  illicit sexual conduct, the object of the unlawful conspiracy
18  charged in Count Two.

19          The relevant language of Title 18 U.S.C. § 2423(b)
20  provides:

21          A person who travels in interstate commerce or travels
22  into the United States or a United States citizen or an alien
23  admitted for permanent residence in the United States who
24  travels in foreign commerce for the purpose of engaging in any
25  illicit sexual conduct with another person shall be guilty [of a

1   crime].

2         Title 18 U.S.C. § 2423(b) contains the following:

3         First, that a person travel in interstate or foreign

4   commerce; and

5         Second, that the person acted with the intent to

6   engage in illicit sexual conduct.

7         The first element that the Government must prove

8   beyond a reasonable doubt for this substantive crime is that a

9   person traveled in interstate commerce or traveled into the

10  United States or being a United States citizen traveled in

11  foreign commerce.

12        'Travel in interstate commerce' simply means movement

13  between one state or another.

14        The second element that the Government must prove

15  beyond a reasonable doubt is that the person traveled in

16  interstate commerce with the intent to engage in illicit sexual

17  conduct.

18        As I have previously told you in connection with the

19  elements of Title 18 § 2423(c) in Count One, a person engages in

20  'illicit sexual conduct' when he knowingly engages in a sexual

21  act, which I defined previously in Count One, with an individual

22  who has reached the age of twelve years old, but has not reached

23  the age of sixteen years old, and who is at least four years

24  younger than that person.

25        As I noted above, direct proof of a person's intent is

1  almost never available.  It would be a rare case where it could

2  be shown that a person wrote or stated as of a given time he

3  committed an act with a particular intent.  Such direct proof is

4  not required.  The ultimate fact of intent, though subjective,

5  may be established by circumstantial evidence based upon the

6  defendant's outward manifestations, his words, his conduct, his

7  acts, and all of the surrounding circumstances disclosed by the

8  evidence and the rational or logical inferences that may be

9  drawn from them.

10         In order to establish this element, it is not

11  necessary for the Government to prove that engaging in illicit

12  sexual conduct was the sole purpose, or even the primary

13  purpose, for crossing the state line or country border.  A

14  person may have several different purposes or motives for such

15  travel, and each may prompt in varying degrees the act of making

16  the journey.

17         The Government need not prove that the illicit sexual

18  conduct was the most important purpose for the travel.  Even if

19  a defendant had other purposes in traveling, that does not

20  preclude a finding of criminal intent.  The Government must

21  prove beyond a reasonable doubt, however, that one of the

22  significant or motivating purposes of the travel across the

23  state line or country border was that the minor would engage in

24  illicit sexual conduct.  In other words, the Government must

25  prove that illegal sexual activity was more than merely

1  incidental to the trip.

2          If you find that having Jane Doe engage in illicit

3  sexual conduct was not a significant or motivating purpose for

4  any agreement to travel from one state or country to another,

5  then you must acquit the Defendants on Count Two.

6          The Government does not have to prove that the person

7  actually engaged in illicit sexual conduct, but must only prove

8  that the person traveled with the intent to engage in such

9  conduct, as I previously defined.  In other words, it is not

10 necessary for the Government to prove that Jane Doe, in fact,

11 engaged in any illegal sexual activity.

12         Count Three of the Indictment charges the defendant

13 with conspiring to (1) commit international parental kidnapping;

14 (2) unlawful use of a means of identification; and (3) enter by

15 false pretenses the secure area of an airport, in violation of

16 Title 18 U.S.C. § 371.

17         That section provides in relevant part: "if two or

18 more persons conspire...to commit any offense against the United

19 States...and one or more such persons do any act to effect the

20 object of the conspiracy, each" is guilty of a crime.

21         Count Three of the Indictment reads as follows:

22         From at least on or about December 5th, 2018, up to

23 and including at least on or about March 16, 2021, in the

24 Southern District of New York and elsewhere,...Yakov

25 Weingarten...Shmiel Weingarten, Yoil Weingarten,...[and others]

1  known and unknown, willfully and knowingly did combine,

2  conspire, confederate, and agree together and with each other to

3  commit offenses against the United States, to wit, international

4  parental kidnapping, in violation of Title 18 U.S.C. § 1204; the

5  unlawful transfer, possession, and use of a means of

6  identification, in violation of Title 18 U.S.C. § 1028(a)(7);

7  and entry by false pretenses to any secure area of any airport,

8  in violation of Title 18 U.S.C. § 1036.

9          It was a part and object of the conspiracy

10  that...Yakov Weingarten, Shmiel Weingarten, Yoil

11  Weingarten...[and others] known and unknown, would and did

12  remove and retain two children, [Jane Doe and John Doe], who had

13  been in the United States, outside the United States, with

14  intent to obstruct the lawful exercise of parental rights, in

15  violation of Title 18 U.S.C.

16  § 1204.

17          It was a part and object of the conspiracy that

18  Nachman Helbrans, the defendant, and others known and unknown,

19  would and did knowingly transfer, possess, and use, in and

20  affecting interstate and foreign commerce, without lawful

21  authority, a means of identification of another person, knowing

22  that the means of identification belonged to another actual

23  person, with the intent to commit, and to aid and abet, and in

24  connection with any unlawful activity that constitutes a

25  violation of Federal law or that constitutes a felony under any

1  applicable state or local law; to wit, on or about December 8th,

2  2018, Helbrans used his own children's identities to unlawfully

3  evade airport security by pretending that [Jane and John Doe]

4  were his children, in order to unlawfully remove [Jane Doe and

5  John Doe] from the United States, with intent to obstruct the

6  lawful exercise of parental rights, all in violation of Title

7  18, U.S.C. § 1028(a)(7).

8          It was a part and object of the conspiracy that

9  Nachman Helbrans, the Defendants, and others known and unknown,

10  would and did, by fraud and false pretense, enter and attempt to

11  enter any secure area of any airport, with intent to commit a

12  felony; to wit, on or about December 8th, 2018, Helbrans

13  fraudulently portrayed [Jane Doe and John Doe] as his own

14  children in order to enter the secure area of Wilkes-Barre

15  Scranton International Airport, in order to unlawfully remove

16  [Jane Doe and John Doe] from the United States, with intent to

17  obstruct the lawful exercise of parental rights, all in

18  violation of Title 18 U.S.C. § 1036.

19          In furtherance of the conspiracy and to effect the

20  illegal objects thereof, the following overt acts, among others,

21  were committed in the Southern District of New York and

22  elsewhere:

23          a. On or about December 5th, 2018, Mordechay

24  Malka...rented a car for the purpose of transporting the minors.

25          b. On or about December 5th, 2018, Jacob

1  Rosner,...Shmiel Weingarten, and Mordechay Malka,...drove to a

2  retail store to purchase clothing that [Jane and John Doe] could

3  wear during the kidnapping to hide that they were ultra-orthodox

4  Jews.

5         c. On or about December 8th, 2018, Nachman Helbrans,

6  Mayer Rosner, Shmiel Weingarten, Mordechay Malka, and Jacob

7  Rosner...kidnapped [Jane and John Doe] from a residence in the

8  Village of Woodridge, Sullivan County, New York, where they were

9  staying with their mother.

10        d. On or about December 8th, 2018, Nachman

11 Helbrans,...used his own children's identities to allow the

12 Minors to enter the secure area of an airport, board an

13 aircraft, and ultimately to leave the United States.

14        e. On or about December 7th, 8th, 9th, and 19th, 2018,

15 Aron Rosner...sent money to co-conspirators via Google Pay in

16 order to facilitate the removal and retention of [Jane Doe and

17 John Doe].

18        f. On or about December 16, 2018, Mayer

19 Rosner...called [Shimon Malka] to convince him to come to Mexico

20 to evade law enforcement.

21        g. In or about the March 2019, Matityau Moshe

22 Malka...provided [Jane Doe] with a cellular telephone in order

23 to facilitate her removal and retention.

24        h. In or about March 2021, a [co-conspirator]

25 approached [Jane Doe and John Doe] and attempted to take them

1    back to Guatemala.

2            To sustain its burden of proof with respect to the

3    allegations of conspiracy in Count Three, the Government must

4    separately prove beyond a reasonable doubt the following three

5    elements:

6            First, that the conspiracy charge existed, that is,

7    the existence of an agreement or understanding to commit at

8    least one of the object crimes charged in the Indictment;

9            Second, that the defendant you are considering

10   willfully and knowingly became a member of the conspiracy; and

11           Third, that any one of the conspirators, not

12   necessarily the defendant you are considering, but any one of

13   the parties involved in the conspiracy, knowingly committed one

14   overt act in furtherance of the conspiracy during the life of

15   the conspiracy.

16           I have previously instructed you on the concept of

17   criminal conspiracy, and you must follow those instructions

18   here.

19           (Continued on the following page)

20

21

22

23

24

25

1         THE COURT:  The first two elements of Count Three are

2    the same as the first two elements of the conspiracy charged in

3    Count One, and you must follow my previous instructions.  This

4    conspiracy, however, also includes the requirement of at least

5    one overt act.

6         The third element of Count Three that the government

7    must prove beyond a reasonable doubt is the commission of an

8    overt act.  In particular, the government must show beyond a

9    reasonable doubt that at least one overt act was committed in

10   furtherance of the conspiracy charged in Count Three by at least

11   one of the co-conspirators.  The government need not show beyond

12   a reasonable doubt that the defendant you are considering took

13   an overt act.

14         The purpose of the overt act requirement is clear.

15   There must have been something more than mere agreement; some

16   overt step or action must have been taken by at least one of the

17   conspirators in furtherance of the conspiracy.

18         Let me put it colloquially.  The overt act element is

19   a requirement that the agreement went beyond the mere talking

20   stage, the mere agreement stage.  The requirement of an overt

21   act is a requirement that some action be taken during the life

22   of the conspiracy by one of the co-conspirators to further the

23   conspiracy.

24         For the government to satisfy the overt act

25   requirement, it is not necessary for the government to prove all

1  of the overt acts alleged in the indictment or even any of the

2  overt acts contained in the indictment.  Indeed, you may find

3  that the overt acts were committed -- I am sorry -- indeed, you

4  may find that overt acts that were committed that were not

5  alleged in the indictment.  In short, it is sufficient for the

6  government to show that the defendants -- that the defendant you

7  are considering, or one of his alleged co-conspirators,

8  knowingly committed an overt act, whether specifically charged

9  in the indictment or not, in furtherance of the conspiracy.  You

10  must be unanimous on at least one such overt act.

11        You are further instructed that the overt act need not

12  have been committed at precisely the time alleged in the

13  indictment.  It is sufficient if you are convinced beyond a

14  reasonable doubt that an overt act occurred while the conspiracy

15  was in existence.

16        In considering the element, you must bear in mind that

17  an overt act, standing alone, may be an innocent lawful act.

18  Frequently, however, an apparent innocent act sheds its harmless

19  character if it is a step in carrying out, promoting, aiding or

20  assisting the conspiratorial scheme.  You are therefore

21  instructed that the overt act does not have to be an act that in

22  and of itself is criminal or constitutes an object of the

23  conspiracy.

24        Here, the objects of the conspiracy are:  One,

25  international parental kidnapping; two, unlawful use of a means

1  of identification; and three, entry by false pretenses into the

2  secure area of an airport.

3        Keep in mind that you need not find that the

4  conspirators agreed to accomplish each and every one of these

5  three objects.  An agreement to accomplish any one of these

6  three objects is sufficient.  Although the finding of one

7  unlawful objective is sufficient to satisfy the illegal purpose

8  element, I instruct you that you, the jury, must unanimously

9  agree on which object, if any, was the specific object or

10 objects of the alleged conspiracy.

11       If the government fails to prove beyond a reasonable

12 doubt that at least one of the unlawful objectives alleged in

13 Count Three was in fact an objective of the conspiracy, or if

14 you cannot unanimously agree as to which of the unlawful objects

15 alleged in the indictment have been proven beyond a reasonable

16 doubt, then you must find the defendant you are considering not

17 guilty as to the conspiracy charge.

18       I will now provide further instructions with respect

19 to each of the three objects of the conspiracies charged in

20 Count Three.

21       The first object of the conspiracy charged in Count

22 Three is substantive international parental kidnapping.

23       Wholly apart from its inclusion as part of the

24 conspiracy charged in Count Three, the objective of the

25 December 2018 international parental kidnapping is charged as a

1  separate substantive offense -- substantive offenses in Counts

2  Four and Five.  I instruct you that this is permissible.  As

3  noted previously, a crime may be punished for its own sake and

4  it also may be the object of a conspiracy, which requires proof

5  of additional elements and which Congress has elected to make a

6  separate and distinct crime.  Because the first object of the

7  conspiracy -- international parental kidnapping -- is charged as

8  a separate substantive -- as separate substantive offenses in

9  Counts Four and Five, I will instruct you in a moment with

10  regard to those counts on the law that applies to international

11  parental kidnapping, and I will ask you to apply the same law to

12  the object of the conspiracy as charged in Count Three of the

13  indictment.

14        The second object of the conspiracy charged in Count

15  Three of the indictment is unlawful possession or use or means

16  of identification.

17        Section 1028(a)(7) of Title 18 of the United States

18  Code provides in relevant part as follows:  Whoever knowingly

19  transfers, possesses or uses, without lawful authority, a means

20  of identification of another person with the intent to commit,

21  or to aid or abet, or in connection with, any unlawful activity

22  that constitutes a violation of federal law, or that constitutes

23  a felony under any applicable state or local law shall be guilty

24  of a crime.

25        In order to prove a person guilty of possessing or

1  using false identification with the intent to commit another

2  crime under federal law or state law, the government must prove

3  each of the following elements beyond a reasonable doubt:

4          First, that the offense involved a means of

5  identification of another person, as I will define that term for

6  you; second, that a person possessed or used that means of

7  identification; third, that the person acted knowingly and

8  without lawful authority; fourth, that the person acted with the

9  intent to commit, or to aid and abet or in connection with an

10 unlawful activity in violation of federal law; and fifth, that

11 the person's conduct was in or affecting interstate commerce.

12         I will now explain each of the elements of the

13 substantive statute in greater detail.

14         The first element that the government must prove

15 beyond a reasonable doubt is that the offense involved a means

16 of identification of another person.

17         The term "means of identification" means any name or

18 number that may be used, alone or in conjunction with any other

19 information, to identify a specific individual, including, among

20 other things, any name or date of birth.  A name means the name

21 of a person.  In addition, the government must prove both that

22 the means of identification was that of an actual person, living

23 or dead, and that the person knew that the means of

24 identification was that of an actual person.  You must be

25 unanimous on at least one of the means of identification that

1   was possessed or used.

2           The second element that the government must prove

3   beyond a reasonable doubt is that the person used or possessed

4   that means of identification.

5           To use a means of identification is to present,

6   display, certify or otherwise employ the means of identification

7   in a manner so that it would be accepted as identification.

8           To possess something means to have it within a

9   person's control.  This does not necessarily mean that the

10  person must hold it physically, that is, have actual possession

11  of it.  As long as the means of identification was within the

12  person's control, he possessed it.  If you find that the person

13  either had actual possession of a means of identification, or

14  that he had the power and intention to exercise control over it,

15  even though it was not in his physical possession, you may find

16  that the government has proven possession.  The law also

17  recognizes that possession may be sole or joint.  If one person

18  alone possesses something, that is sole possession.  However, it

19  is possible that more than one person may have the power and

20  intention to exercise control over a means of identification.

21  That is called joint possession.  If you find that the person

22  had such power and intention, then he possessed means of

23  identification even if he possessed it jointly with another

24  person.

25          The third element that the government must prove

1  beyond a reasonable doubt is that the person acted knowingly and

2  without lawful authority.

3        A person acts without lawful authority either when he

4  uses a means of identification without the consent or knowledge

5  of a person or when he uses the identification in furtherance of

6  a crime even with the person's consent.

7        The government must prove -- I'm sorry -- the

8  government must also prove that the person used or possessed the

9  means of identification knowingly.  As I instructed you

10 previously, an act is done knowingly when it is done voluntarily

11 and intentionally and not because of accident, mistake, or some

12 other innocent reason.

13       The fourth element that the government must prove

14 beyond a reasonable doubt is that the person used or possessed a

15 means of identification of another person with the intent to

16 commit or to aid and abet in connection with an unlawful

17 activity that violates federal law.

18       In this case, the government has alleged that the

19 defendants acted with the intent to commit international

20 parental kidnapping.  To establish this element, the government

21 must prove that the person used the means of identification with

22 the intent to commit international parental kidnapping.  As I

23 noted previously, direct proof of a person's intent is almost

24 never available, and such direct proof is not required.

25       The fifth element that the government must prove

1 beyond a reasonable doubt is that the person's use or possession

2 of a means of identification of another person was in or

3 affecting interstate commerce.

4         Interstate commerce simply means the movement of goods

5 and services, money and individuals between any two or more

6 states or between one state and the District of Columbia or

7 between a state and a United States territory or possession or

8 between the United States and a foreign country.

9         To satisfy this element, the government must prove

10 that the person's conduct affected interstate commerce in any

11 way, no matter how minimal.  Finally, the government is not

12 required to prove that the person knew that he was affecting

13 interstate commerce.

14         The third object of the conspiracy charged in Count

15 Three of the indictment is entry by false pretenses into the

16 secured area of any -- of an airport.

17         Section 1036 of Title 18 United States Code provides,

18 in relevant part, as follows:  Whoever by any fraud or false

19 pretense enters or attempts to enter any secure area of any

20 airport shall be guilty of a crime.

21         In order to prove a person guilty of entry by false

22 pretenses into the secure area of an airport, the government

23 must prove each of the following elements beyond a reasonable

24 doubt:

25         First, that a person obtained or attempted to obtain;

1  second, by fraud or false pretenses; third, entry into the

2  secure area of an airport.

3        A "secure area" of an airport means an area access to

4  which is restricted by the airport authority or a public agency.

5        All right.  We have been at this for a while.  I

6  just -- I am going to take a recess at this time before I

7  continue with Counts Four and Five.  We will take a seven- to

8  eight-minute recess.

9        I also want to give an opportunity for the court

10  stenographers to rest their fingers, and it will give me an

11  opportunity to drink a little bit more water.  So we will take a

12  recess for seven or eight minutes, and we will continue with

13  the -- my final charge to you.  Let's dismiss the jurors.  The

14  same admonitions apply.

15        THE DEPUTY CLERK:  You can leave your binders here.

16        (Jury excused)

17        (In open court; jury not present)

18        THE COURT:  Please be seated.  We are in recess.

19        (Recess)

20        (In open court; jury present)

21        THE DEPUTY CLERK:  All rise.  Jurors entering.

22        THE COURT:  Please be seated, everyone.  All right.

23  Sorry about that.  We are ready to continue.

24        All right.  I will now instruct you on Counts Four and

25  Five of the indictment, which charge international parental

1    kidnapping in violation of Title 18 United States Code 1204.

2              The relevant language of Title 18 United States Code

3    Section 1204 provides:  "Whoever removes a child from the United

4    States, or attempts to do so, or retains a child who has been in

5    the United States outside the United States with the intent to

6    obstruct the lawful exercise of parental rights shall be guilty

7    of a crime."

8              Count Four charges that from on or about December 8,

9    2018, up to and including at least on or about December 27,

10   2018, Shmiel Weingarten, Yoil Weingarten, and Yakov Weingarten

11   committed international parental kidnapping with respect to Jane

12   Doe or aided and abetted the same.

13             Count Four reads as follows:  "From at least on or

14   about December 8, 2018, up to and including at least on or about

15   December 27, 2018, in the Southern District of New York and

16   elsewhere, Yakov Weingarten, Shmiel Weingarten, and Yoil

17   Weingarten, and others, did remove and retain a child who had

18   been in the United States outside the United States with the

19   intent to obstruct the lawful exercise of parental rights, to

20   wit, Yakov Weingarten, Shmiel Weingarten, and Yoil Weingarten,

21   and others, removed and retained Jane Doe outside the United

22   States and away from her mother, who was lawfully in custody of

23   Jane Doe and aided and abetted the same."

24             Count Five charges that from on or about December 8,

25   2018, up to and including at least on or about December 27,

1  2018, Shmiel Weingarten, Yoil Weingarten, and Yakov Weingarten

2  committed international parental kidnapping with respect to John

3  Doe, or aided and abetted the same.

4         Count Five reads as follows:  "From at least on or

5  about December 8, 2018, up to and including at least on or about

6  December 27, 2018, in the Southern District of New York and

7  elsewhere, Yakov Weingarten, Shmiel Weingarten, and Yoil

8  Weingarten, and others, did remove and retain a child who had

9  been in the United States outside the United States, with intent

10 to obstruct the lawful exercise of parental rights, to wit,

11 Yakov Weingarten, Shmiel Weingarten, and Yoil Weingarten, and

12 others, removed and retained John Doe outside the United States

13 and away from his mother, who was lawfully in custody of John

14 Doe, and aided and abetted the same."

15        To find the defendant you are considering guilty of

16 Counts Four and Five, the government must prove each of the

17 following elements beyond a reasonable doubt:

18        First, that the minor in the count you are considering

19 was previously in the United States; second, that the defendant

20 you are considering took the minor in that count from the United

21 States to another country or kept that minor from returning to

22 the United States from another country or aided and betted the

23 same; and third, that the defendant you are considering acted

24 with intent to obstruct the lawful exercise of parental rights

25 of Sara Helbrans, the mother of the minor.

1        I will now instruct you on the law concerning

2 international parental kidnapping, which is charged in Counts

3 Four and Five.

4        As noted above, the first element that the government

5 must prove beyond a reasonable doubt is that the child -- Jane

6 Doe for Count Four and John Doe for Count Five -- were

7 previously in the United States.

8        The second element that the government must prove

9 beyond a reasonable doubt is that the defendant you are

10 considering took the child from the United States to another

11 country or kept the child from returning to the United States

12 from another country or aided and abetted the same.  The

13 movement of the child from the United States or the retaining of

14 the child outside the United States had to occur before the

15 child reached the age of 16.

16        The third element that the government must prove

17 beyond a reasonable doubt is that the defendant you are

18 considering acted with the intent to obstruct the lawful

19 exercise of parental rights of Sara Helbrans.

20        The term "parental rights" means the right to physical

21 custody of the child.  This includes the right to sole custody

22 of the child and visitation rights to the child.  It does not

23 matter whether these parental rights arose by court order or by

24 the operation of law.  To find that the defendant you are

25 considering acted with the intent to obstruct the lawful

1  exercise of parental rights, you must find that this defendant
2  acted deliberately with the purpose of interfering with the
3  parental rights of Sara Helbrans.  You may consider all of the
4  evidence of the defendants' acts in determining whether the
5  government has proven beyond a reasonable doubt whether each
6  defendant acted with this intent.

7          I instruct you that, provided that the three elements
8  of international parental kidnapping described above are met, a
9  defendant's motive is not a defense to international parental
10  kidnapping.  In other words, it is not a defense to
11  international parental kidnapping that a defendant sincerely
12  believed that he had a compelling reason for removing or
13  retaining the child, or that a defendant sincerely believed his
14  actions were necessary.  If the government proves beyond a
15  reasonable doubt all three elements of international parental
16  kidnapping, including that the defendant you are considering
17  acted with intent to obstruct the lawful exercise of parental
18  rights, then that defendant is guilty of international parental
19  kidnapping, regardless of his motivations or his belief that his
20  actions were justified.

21          I get emotional when I read these instructions.

22          I further instruct you as a matter of law that Sara
23  Helbrans, as the biological mother of both Jane and John Doe,
24  had the right to physical custody of her children at all
25  relevant times.

Jury Charge

1          I further instruct you that the custody order that

2  Sara Helbrans obtained from the family court in Brooklyn, New

3  York is a valid, legitimate custody order.  I instruct you that

4  custody order provided Sara Helbrans with sole custody of all

5  six of her children, including Jane and John Doe, from

6  November 14, 2018, to January 3rd, 2019.  You may not question

7  the legitimacy of the custody order.

8          Whether or not a minor consented to being removed from

9  the United States or retained outside the United States or

10 otherwise voluntarily participated is irrelevant.  The consent

11 or voluntary participation of the minor is not a defense.  Put

12 simply, the minor's consent is irrelevant.

13         With respect to Counts Four, Five and Six, the

14 indictment also charges the defendants with what is called

15 aiding and betting.  Aiding and abetting is -- aiding and

16 abetting liability is its own theory of criminal liability.  In

17 effect, it is a theory of liability that permits a defendant to

18 be convicted of a specified crime if the defendant, while not

19 himself committing the crime, assisted another person or persons

20 in committing the crime.

21         The aiding and abetting statute, Section 2(a) of

22 Title 18 United States Code provides that:  "Whoever commits an

23 offense against the United States or aids, abets, counsels,

24 commands, induces or procures its commission, is punishable as a

25 principle" under the law.

Jury Charge

1          Under the law -- I am sorry -- under the aiding and
2    abetting statute, it is not necessary for the government to show
3    that the defendant you are considering himself physically
4    committed the crime with which he is charged in order for you to
5    find that defendant guilty.  Thus, if you do not find beyond a
6    reasonable doubt that the defendant himself committed the crime
7    charged, you may, under certain circumstances, still find him
8    guilty of that crime as an aider or abettor.

9          A person who aids or abets another to commit an
10   offense is just as guilty of that offense as if he committed it
11   himself.  Accordingly, you may find a particular defendant
12   guilty of the substantive crime if you find beyond a reasonable
13   doubt that the government has proven that another person
14   physically committed the crime, and that the defendant you are
15   considering aided and abetted that other person in the
16   commission of the offense.

17         As you can see, the first requirement is that another
18   person has committed the crime charged.  Obviously, no one can
19   be convicted of aiding and abetting the criminal acts of another
20   if no crime is committed by the other person in the first place.
21   But if you do find that a crime was committed, then you must
22   consider whether a defendant aided or abetted the commission of
23   the crime.

24         In order to aid or abet another to commit a crime, it
25   is necessary that a defendant willfully and knowingly associate

1  himself in some way with the crime, and that he willfully and

2  knowingly participate in the crime by doing some act to help the

3  crime succeed.  An act is done knowingly and willfully if it is

4  done deliberately and purposely -- that is, the defendant's

5  action must have been his conscious objective rather than a

6  product of a mistake or accident, mere negligence, or some other

7  innocent reason.

8          To establish that a defendant participated in the

9  commission of a crime, the government must prove that a

10 defendant engaged in some affirmative conduct or overt act for

11 the specific purpose of bringing about that crime.

12         The mere presence of a defendant where a crime is

13 being committed, even if coupled with knowledge by that

14 defendant that a crime is being committed, or merely associating

15 with others who were committing a crime is not sufficient to

16 establish aiding and abetting.  One who has no knowledge that a

17 crime is being committed or is about to be committed but

18 inadvertently does something that aids in the commission of that

19 crime is not an aider and abettor.  An aider and abettor must

20 know that the crime is being committed and act in a way which is

21 intended to bring about success of the criminal venture.

22         To determine whether the defendant you are considering

23 aided or abetted the commission of the crime with which he is

24 charged, ask yourself these questions:  Did he participate in

25 the crime charged as something he wished to bring about?  Did he

1  associate himself with the criminal venture knowingly and

2  willfully?  Did he seek by his actions to make the criminal

3  venture succeed?

4          If he did, then that defendant is an aider and

5  abettor, and therefore guilty of the offense.  If he did not,

6  then that defendant is not an aider and abettor, and is not

7  guilty of aiding and abetting that offense.

8          I will now charge you with respect to Count Six, which

9  charges from on or about March 15, 2019, up to and including at

10 least on or about March 25, 2019, Yakov Weingarten attempted to

11 commit international parental kidnapping with respect to Jane

12 Doe or aided and abetted the same.

13         Count Six reads as follows:  "From at least on or

14 about March 15, 2019, up to and including at least on or about

15 March 25, 2019, in the Southern District of New York and

16 elsewhere, Yakov Weingarten and others did attempt to remove and

17 retain a child who had been in the United States outside the

18 United States with intent to obstruct the lawful exercise of

19 parental rights, to wit, Yakov Weingarten and others attempted

20 to remove and retain Jane Doe outside the United States and away

21 from her mother, who was lawfully in custody of Jane Doe, and

22 aided and abetted the same.

23         In order to prove the charge of attempting to commit

24 the crime of international parental kidnapping, the government

25 must prove the following two elements beyond a reasonable doubt:

1              First, that the defendant intended to commit the crime

2    of international parental kidnapping; and second, that the

3    defendant did some act that was a substantial step in an effort

4    to bring about or accomplish the crime.

5              I have already instructed you on the elements of

6    international parental kidnapping with respect to Counts Four

7    and Five.  The same elements apply in determining whether the

8    defendant, Yakov Weingarten, attempted to commit international

9    parental kidnapping in or about March 2019 as charged in Count

10   Six.  I also instruct you on aiding and abetting -- well, I also

11   instructed you on aiding and abetting with respect to Counts

12   Four and Five, and the same rule applies to Count Six.

13   Accordingly, for Count Six, to find the defendant guilty on an

14   aiding and abetting theory of liability, the substantial steps

15   that could be taken by that defendant -- by the defendant that

16   the -- by the person -- let me start this again.

17             Accordingly, for Count Six, to find the defendant

18   guilty on an aiding and abetting theory of liability, the

19   substantial step could be taken by the person that the defendant

20   aided and abetted in committing the attempted parental

21   kidnapping.

22             Mere intention to commit a specific crime does not

23   amount to an attempt.  In order to convict the defendant of an

24   attempt, you must find beyond a reasonable doubt that the

25   defendant intended to commit the crime charged, and that he took

1    some action which was a substantial step towards the commission

2    of that crime.

3              In determining whether the defendants' actions

4    amounted to a substantial step towards the commission of the

5    crime, it is necessary to distinguish between mere preparation

6    on the one hand, and the actual doing of the criminal deed on

7    the other.  Mere preparation may consist of the planning of the

8    offense, or of devising, obtaining, or arranging a means for its

9    commission, is not an attempt, although some preparation may

10   amount to an attempt.  The acts of a person who intends to

11   commit a crime will constitute an attempt when the acts

12   themselves clearly indicate an intent to commit the crime, and

13   the acts are a substantial step in the course of conduct planned

14   to culminate in the commission of the crime.

15             (Continued on the following page)

16

17

18

19

20

21

22

23

24

25

Jury Charge

```
 1              THE COURT:  In addition to all the elements of each of
 2   the charges that I have described for you, you must decide
 3   separately with respect to each of these counts whether any acts
 4   in furtherance of the crime occurred within the Southern
 5   District of New York.  The Southern District of New York
 6   includes, among other places, Sullivan County and Westchester
 7   County.
 8              I should note that on this issue, and this issue
 9   alone, the Government's standard of proof is preponderance of
10   the evidence, not reasonable doubt.  A preponderance of the
11   evidence means that the Government must prove that it is more
12   likely than not that any act in furtherance of the charge you
13   are considering occurred in the Southern District of New York.
14   In other words, the Government has satisfied its venue
15   obligations if you conclude that it is more likely than not that
16   an act in furtherance of the crime charged occurred within this
17   District.
18              If you find that the Government has failed to prove
19   this venue requirement by a preponderance of the evidence, then
20   you must acquit the Defendants of the relevant charge.
21              I'm going to give you some additional charges.  Legal
22   principles, rather.
23              Proof of motive is not a necessary element of the
24   crime with which the Defendants are charged.  Proof of motive
25   does not establish guilt, nor does the lack of proof of motive
```

1  establish that a defendant is not guilty.  If the guilt of a

2  defendant is shown beyond a reasonable doubt, it is immaterial

3  what that defendant's motive for the crime may be or whether his

4  motive was shown at all.  The presence or the absence of motive

5  is, however, a circumstance which you may consider as bearing on

6  the intent of a defendant.

7          Religious motivation is not a defense to otherwise

8  criminal conduct.  The fact that a practice or action is

9  purportedly supported by religious creed affords no defense in a

10  prosecution for that conduct.  It is no defense to any of the

11  charges in the indictment that the Defendants believed their

12  actions were sanctioned by their religious beliefs, provided

13  that you find that the Government has satisfied its burden to

14  prove all of the elements of the offense beyond a reasonable

15  doubt.

16          All right, in a few minutes, you're going to go into

17  the jury room and begin your deliberations.  Your first task

18  will be to select a foreperson.  The foreperson has no greater

19  voice or authority than any other juror, but is the person who

20  will communicate with the Court when questions arise or when

21  you've reached a verdict, and you will be asked in open court to

22  state what your verdict is.  Notes should be signed by the

23  foreperson and should include the date and time they were sent.

24  They should also be as clear as possible.  Any notes from the

25  jury will be become part of the record in this case, so please

 1  be as clear and specific as you can be in any notes that you

 2  send.  Do not tell me or anyone else how the jury stands on any

 3  issue until after a unanimous verdict is reached.

 4          You are not to discuss this case until all jurors are

 5  present.  You only constitute a jury when all twelve jurors are

 6  present.  Therefore, you must all be present to deliberate.

 7          You are entitled to examine evidence.  This includes

 8  exhibits and testimony.  You will be able to access all exhibits

 9  and evidence in the jury room.  If you want any testimony read,

10  you may request that.  Keep in mind that if you ask for

11  testimony, however, you should try to be as specific as you

12  possibly can in requesting portions of the testimony.  For

13  example, you should provide the name of the witness, whether you

14  want to see direct or cross-examination, and the subject of the

15  testimony.

16          All right, if it becomes necessary during your

17  deliberations to communicate with the Court, you may send a note

18  to me, signed by your foreperson.  No member of the jury should

19  attempt to communicate with the Court by any means other than a

20  signed writing, and the Court will never communicate with any

21  member of the jury on any subject touching on the merits of the

22  case other than in writing, or orally here in open court.

23          All right, you will know from the oath that will be

24  taken by the court security officer that he, too, and sometimes

25  it's a female, all right, like all other persons, is forbidden

1  to communicate in any way or manner with any member of the jury

2  on any subject touching on the merits of the case, all right, so

3  we'll get to that in a few minutes.

4          Bear in mind also that you are never to reveal to any

5  person, not even the Court, how the jury stands, numerically or

6  otherwise, on the questions before you until after you have

7  reached a unanimous verdict.  In other words, do not tell me in

8  any note what your vote is on any count.

9          You may take copies of these instructions back into

10 the jury room in case you want to review them during your

11 deliberations.  If you find that you do not understand any of my

12 instructions or you want me to go over them again to clarify

13 some matters for you or just to reinforce what I said, send in a

14 note asking for re-instructions and I will be happy to go over

15 them.  Again, please provide as much detail as you can regarding

16 which instructions you seek clarification of.

17         Under your oath as jurors, you are not to be swayed by

18 sympathy.  You are to be guided solely by the evidence in the

19 case, and as you sift through the evidence, the crucial question

20 that you must ask yourself for each count is, has the Government

21 proved each element beyond a reasonable doubt.  It is for you

22 and you alone to decide whether the Government has proven the

23 Defendants guilty of the crimes charged solely on the basis of

24 the evidence and subject to the law as I have instructed you.

25         It must be clear to you that once you let prejudice,

1  bias, or sympathy interfere with your thinking, there is a risk

2  that you will not arrive at a true and just verdict.

3         If you have a reasonable doubt as to the Defendant's

4  guilt with respect to a particular element of a count, then you

5  must render a verdict of acquittal on that particular count, but

6  if -- on the other hand, if you find that the Government has met

7  its burden of proving the guilt of the Defendant you are

8  considering beyond a reasonable doubt with respect to each

9  element of a particular count, then you should not hesitate

10 because of sympathy or any other reason to render a verdict of

11 guilty on that particular count.

12        I also caution you that, under your oath as jurors,

13 you cannot allow any consideration of the punishment that may be

14 imposed upon a defendant if they are convicted to enter into

15 your deliberations.  The duty of imposing a sentence in the

16 event of a conviction rests exclusively with the Court, and the

17 issue of punishment may not affect your deliberations as to

18 whether the Government has proven the Defendants' guilt beyond a

19 reasonable doubt.

20        The most important part of this case, members of the

21 jury, is the part that you as jurors are shortly about to play

22 as you deliberate on the issues of fact.  I know you will try

23 the issues that have been presented to you according to the oath

24 that you have taken as jurors.  In that oath, you promised that

25 you would "well and truly try the issues joined in this case and

1  a true verdict render," and in doing so, you swore to give this

2  case your full, detailed attention and provide to the Court a

3  verdict that reflects the unanimous consensus of the entire

4  jury.

5          If you find that the Government has failed to prove

6  each element of the offenses charged beyond a reasonable doubt,

7  then you must return a verdict of not guilty.  If you find that

8  the Government has proven each element of the offenses as

9  charged beyond a reasonable doubt, then you must return a

10  verdict of guilty.

11          As you deliberate, please listen to the opinions of

12  your fellow jurors and ask for an opportunity to express your

13  own views.  Each juror should be heard.  No one juror should

14  hold center stage in the jury room and no one juror should

15  control or monopolize the deliberations.  If, after listening to

16  your fellow jurors, and if, after stating your own view, you

17  become convinced that your view is wrong, do not hesitate

18  because of stubbornness or pride to change your view.  On the

19  other hand, do not surrender your honest convictions and beliefs

20  solely because of the opinions of your fellow jurors or because

21  you are outnumbered.

22          Your verdict, guilty or not guilty, must be unanimous.

23  If at any time you are not in agreement, you are instructed that

24  you are not to reveal the standing of the jurors, that is, the

25  split of the vote, to anyone, including me, at any time during

1  your deliberations.

2          Remember at all times, you are not partisans, you are

3  judges, judges of the facts.  Your sole interest is to seek the

4  truth from the evidence in the case.

5          All right, we've prepared a Verdict Form for you to

6  use in recording your decision, a copy of which is attached to

7  these instructions.  You should draw no inference from the

8  questions on the Verdict Form as to what your verdict should be.

9  The questions are not to be taken as any indication that I have

10 any opinion as to how they should be answered, and let me just

11 go over or take a moment to explain the Verdict Form.

12          My understanding is that the Verdict Form is on the

13 back of the instructions, and Gina was nice enough to attach a

14 copy of the Verdict Form to the back of my instructions as well

15 so that I have it, which I reviewed, all right.  I'm just going

16 to go over the first count, all right.

17          Count One, conspiracy to transport a minor with intent

18 to engage in criminal sexual activity, and it cites the statute.

19 As you can see, we begin with one defendant, all right,

20 Defendant Shmiel Weingarten, "how do you find the Defendant

21 Shmiel Weingarten with respect to Count One," and it has a

22 section for guilty or not guilty, all right.

23          Once you've deliberated and you come to a unanimous

24 decision, you must indicate what your decision is by putting a

25 check mark or an X, all right?  Then you must read the

1  instruction that follows.  All right?

2          The instruction that follows here is, "proceed to

3  Count One, Question 2, only if you answered guilty to Count

4  One."  Question 1, "if you answered not guilty to Count One,

5  Question 1, proceed to Count One, Question 3."

6          It's very important that you follow the instructions,

7  all right?  And then it proceeds thereafter, all right?  There

8  are instructions after each section, but you must do it

9  methodically, all right?  Count One, Question 1, and then answer

10  that question, and then follow the instruction that follows, all

11  right?

12          And then at the end of the Verdict Form, which

13  consists of five pages, all right, assuming that the jurors are

14  unanimous on each and every count, it will be signed by the

15  foreperson, all right?  That means that it should bear your

16  actual name, not your juror number, okay?  I just say that

17  because in the past, we've had the foreperson sign as -- you

18  know, by their juror number, all right.  And then you will place

19  -- once you have -- assuming you have a verdict, a unanimous

20  verdict, you will place the Verdict Form in an envelope, which

21  will be sealed, and you will present that to the Court.

22          Likewise, to the extent you have notes that you want,

23  requesting certain read-backs or you want something --

24  instructions read back to you, all right, or if you want

25  portions of testimony read back to you, your notes should bear

Proceedings

 1  what you're requesting, be as specific as possible, and also

 2  have the time, the date and the time, of your request, and it

 3  should be signed by the foreperson.  All right?

 4          Just give me a moment.

 5          (Discussion off the record)

 6          THE COURT:  I have to take care of a couple just

 7  preliminary matters, so rather than just have you sitting here

 8  and being ignored, I'm going to excuse you for seven to eight

 9  minutes, all right, and then -- all right, Gina says five

10  minutes.  All right, we're going to recess for five minutes so

11  that I can just take care of those preliminary matters, and then

12  I'm going to bring you back and we'll proceed at that time, all

13  right?

14          All right, let's excuse the jurors.

15          THE DEPUTY CLERK:  All rise.

16          Jurors in the first row, you may exit.  Leave your

17  books here.  And jurors in the second row, you may exit.

18          (In open court; Jury not present)

19          THE COURT:  All right, please be seated.

20          All right, so I just want to put on the record that

21  we've received a thumb drive with all the exhibits.  I want to

22  make sure that it's been reviewed by everyone.

23          DEFENDANT SHMIEL WEINGARTEN:  Yes, your Honor.

24          THE COURT:  Okay.  So that's a thumb drive of all the

25  exhibits that will be given to the jurors.  I'll let them know

 1  that, all right, along with the exhibit list, all right.

 2          The other thing is, since basically it's one o'clock,

 3  we have lunch.  What I'm going to tell them is that, given the

 4  hour, that we're going to recess for lunch so that they can have

 5  lunch, that lunch has been brought to them, okay, and that once

 6  they've completed lunch, all right, only then can they -- well,

 7  we will need to excuse the alternates, and then once all twelve

 8  of them are gathered, only then can they begin their

 9  deliberations, all right?

10          (Discussion off the record)

11          THE COURT:  So just so the record is clear, Shmiel

12  Weingarten, you have no objection to the thumb drive?

13          DEFENDANT SHMIEL WEINGARTEN:  No.

14          THE COURT:  All right.

15          Yakov Weingarten, you have no objection?

16          DEFENDANT YAKOV WEINGARTEN:  No, your Honor.

17          THE COURT:  All right, Yoil Weingarten, you have no

18  objection?

19          DEFENDANT YOIL WEINGARTEN:  No.

20          THE COURT:  Okay.

21          (Discussion off the record)

22          THE COURT:  Also, I just -- so that we have a complete

23  record, any objections to the charge?

24          MS. BAGLIEBTER:  Your Honor, we have no objection to

25  the charge, just one note for the record just to make clear.

Proceedings

1              While your Honor was reading the charge, at one point,
2    you became hoarse and you coughed and you made a comment, which
3    was "I get emotional when reading these instructions."  And you
4    were -- said it in a laughing manner and there was laughter in
5    the courtroom.  We just want that to be reflected in the record
6    that that wasn't a statement that was made seriously, but rather
7    in jest.

8              THE COURT:  Yeah, there was -- it was just made in
9    jest.  I was coughing and I just made the comment in jest.

10             DEFENDANT SHMIEL WEINGARTEN:  We believe that the
11   Court should instruct the jury this was only a joke, not because
12   the Court has any personal opinion about Counts Four and Five.

13             THE COURT:  All right, I will let them know that I
14   said it in jest, okay?

15             Anything else?

16             DEFENDANT SHMIEL WEINGARTEN:  Thank you.  Just we
17   maintain the same objections like we said before.

18             THE COURT:  No, that's in the record already.

19             DEFENDANT SHMIEL WEINGARTEN:  Okay.

20             THE COURT:  Okay?

21             MS. BAGLIEBTER:  And, your Honor, just in terms of the
22   lunch and the alternates, is there a reason why the alternates
23   shouldn't be excused now so that they can go on have their --

24             THE COURT:  Well, I'll give them the option of
25   leaving.

Proceedings

```
 1              MS. BAGLIEBTER:  And will the jury deliberate during
 2   the lunch if the alternates leave?
 3              THE COURT:  No.  Absolutely not.
 4              MS. BAGLIEBTER:  Okay.
 5              THE COURT:  Absolutely not.
 6              Anything else?
 7              MS. BAGLIEBTER:  Not from the Government.
 8              THE COURT:  Okay.
 9              So are we ready, Gina?  Let's bring out the jurors.
10              THE DEPUTY CLERK:  All rise.  Jury entering.
11              (In open court; Jury present)
12              THE COURT:  All right, please be seated, everyone.
13              Just a couple, couple of matters that I need to
14   address.
15              During the time that I gave my instructions to you, I
16   coughed several times, and on one occasion, I said that I get
17   emotional when I, when I give these instructions.  That was said
18   in jest.  You are to take nothing from that.
19              Again, to the extent that I may have given you some
20   impression about the case, all right, you're to totally
21   disregard it, all right?  My impressions of this case is of no
22   moment, no relevance.  That's why we have you, to decide these
23   issues of fact, right, but it was basically said in jest because
24   I was coughing repeatedly.
25              The other thing is, with respect to the exhibits, we
```

1  have a thumb drive which will be provided to you, all right.

2  Once you begin your deliberations, it will be provided to you so

3  that you have access to all the exhibits, and there's also a

4  list, for lack of a better term, with all the exhibits so that

5  in the event you want to search the thumb drive, you can do so

6  with much more ease.

7          The other thing is, we have lunch -- has it already

8  been brought to them?  So it's available.  So we're going to

9  take this opportunity to recess so that you can have lunch, all

10  right.  We have alternates.  To the extent -- so I'm going to

11  ask the alternates whether they want to remain for lunch or

12  whether or not you'd rather -- you can take the lunch with you,

13  rather than stay, but you have to decide as a group.

14          Because if you're -- it's permissible for you to

15  remain, but your deliberations cannot begin until such time as

16  only the twelve of you have gathered, the twelve first jurors,

17  all right.  It is only at that time when your deliberations can

18  begin, all right, and not before.

19          So as a group, you can decide, the three alternates,

20  whether or not you want to remain or you can choose to take your

21  lunch with you.  However, if you're excused, all right, I must

22  instruct you that you cannot discuss this case with anyone until

23  such time as the case is over.

24          The reason for that is that in the event, you know, we

25  need you to come back, all right, you know, we don't want you to

1    -- you know, we want you to have -- to participate from an

2    unbiased perspective, okay?  So you cannot discuss the case

3    amongst yourselves or with anyone else, you cannot read any

4    literature, you must ignore it, all right?  You remain as a

5    juror, you know, in every sense, until such time as you're told

6    otherwise.  All right?

7            Do you want a moment to just let me know whether or

8    not you're going to remain or...

9            ALL:  We'll go.

10           THE COURT:  All right.  So you'll be allowed to enter

11   the jury room, gather your belongings, take your lunch and be

12   excused, but I must -- I want to make the record clear, I'm

13   instructing you that you cannot discuss this case amongst

14   yourself or with anyone else, all right?  You remain a juror

15   until such time as you're excused from your duty, all right?  We

16   will notify you should your services be further required or not,

17   all right?

18           So can they, can they start that process now, then?

19           Yes, let's excuse the jurors at this time with those

20   instructions.

21           THE DEPUTY CLERK:  Are we excusing everyone or just

22   the alternates?

23           THE COURT:  Just alternates.

24           Okay, let's excuse the alternates at this time.

25           (Alternate Jurors excused)

Proceedings

```
 1              THE COURT:  All right, please be seated and just bear
 2    with us a moment, because the other thing that has to take place
 3    is we're going to have the court security officers basically be
 4    outside the door during your deliberations, so I must swear them
 5    in and it has to be done in public.
 6              Who will be serving as the court security officer?
 7    The good-looking guy, okay.
 8              (Discussion off the record)
 9              THE COURT:  So Gina, can we swear in the -- Charlie?
10              THE DEPUTY CLERK:  Yes, your Honor.
11              Please raise your right hand.
12              You do solemnly swear that you shall keep these jurors
13    empaneled and sworn in this cause together in some private and
14    convenient place, you shall suffer no one to speak to them, and
15    you shall not speak to them yourself without direction of the
16    Court unless it be to ask them if they have agreed upon a
17    verdict, so help you God?
18              COURT SECURITY OFFICER:  I do.
19              THE COURT:  Thank you, Gina.  Thank you, Charlie.
20              All right, so we're going to excuse the jurors now.
21    You're entitled to have lunch.  I'm going to ask you to have
22    your lunch first, whether it's half an hour, forty minutes,
23    however long it takes, right, it shouldn't take longer than an
24    hour, but have your lunch first, all right, and then once you've
25    completed your meal, begin your deliberations, okay?
```

Proceedings

1          And, again, you must follow my instructions as
2  provided to you, okay?  And we're going to give you the thumb
3  drive, all right?
4          THE DEPUTY CLERK:  Well, not right now.
5          THE COURT:  Oh, that's right.  We have to arrange --
6  because I think we have to arrange with the IT person?  To...
7          THE DEPUTY CLERK:  It has to be reviewed for...
8          THE COURT:  All right.  So you can't begin your
9  deliberations until we give you the thumb drive in any event,
10 okay?
11         All right, let's excuse the jurors.
12         THE DEPUTY CLERK:  Jurors in the first row, you may
13 take your binders with you, you're excused.  And jurors in the
14 second row, you are excused.
15         (In open court; Jury not present)
16         THE COURT:  All right, please be seated.
17         All right, anything further from any of the parties?
18         MS. BAGLIEBTER:  Not from the Government.
19         THE COURT:  And I take it there's nothing further from
20 the Defendants.
21         DEFENDANT SHMIEL WEINGARTEN:  We will go deliberate in
22 the back, in the cell.
23         THE COURT:  All right.  All right, there being nothing
24 further, we're in recess.
25         Just, please -- I take it that they're probably going

1  to have lunch, it's probably going to take them half an hour to

2  forty minutes, and they'll probably start to deliberate

3  thereafter.  Please stay as close as possible to the courthouse,

4  all right, so you can -- in the event we have to communicate

5  with you, if we have information.

6           Just so that you're aware, there's some type of water

7  break or something in the community and it's affecting water in

8  the building, so my understanding is that they may be bringing

9  some bottled water and providing it to the jurors.  There's low

10 water pressure in the building, so just an FYI.

11          (Discussion off the record)

12          MS. BAGLIEBTER:  Your Honor, this is just one thing we

13 wanted to make the Court aware of.

14          It appears that at 12:32, a motion was filed by the

15 Defendants on the docket.  It looks, at first glance, like it's

16 a mistrial motion based on the preclusion of defense trial

17 exhibits of things that have already been discussed in court, so

18 I, I don't know whether the Defendants are seeking a ruling from

19 the Court on that.

20          Obviously, the jury's about to start deliberating, but

21 we just wanted to make sure that it was clear that that had been

22 filed while the jury charge was read.

23          THE COURT:  Michael, can you print that out.

24          Before you print it out, how many pages is it?

25          MS. BAGLIEBTER:  It's a one-page motion, and then it's

1    the attachment of, I think, 71 pages of exhibits.

2              THE COURT:  That's why I asked the question.

3              (Discussion off the record)

4              THE COURT:  So there was a document filed on ECF.  The

5    document number to me is somewhat shocking, but I'm going to put

6    it on the record anyway.  The document number is 1,003.  1,003,

7    that's the number on the docket.  And it purports to be some --

8    and I use the word loosely, purports to be a document that was

9    signed by Shmiel Weingarten, Yoil Weingarten, and Yakov

10   Weingarten.  And basically it says, "I respectfully move for a

11   mistrial based on the preclusion of our exhibits attached here.

12   While the Government argued that they were provided untimely,

13   it's not true and their preclusion was" -- these were issues

14   that were previously discussed and addressed, and to the extent

15   that the Defendants don't agree with the Court, there's -- you

16   have, you have an objection on the record, all right?

17             So the motion's previously been addressed; I'm not

18   going to renew it -- or, or reconsider it.  All right?  Fair

19   enough?

20             MS. BAGLIEBTER:  Thank you, your Honor.

21             THE COURT:  All right, good luck to you all.

22             DEFENDANT YAKOV WEINGARTEN:  Your Honor, may we ask,

23   because the deliberation could take some time, so we could be

24   able to have our religious books with us in the cell?

25             THE COURT:  I -- you know, I don't know how to answer

Proceedings

1   that.  I will say this.

2           They're not unreasonable, the marshals are not

3   unreasonable.  I think if you asked them, you know, that you

4   want to hold on to your religious books while you're in the

5   cells so that you can pray or something like that, you know,

6   they may have to review them or, or inspect them, you know, but

7   -- they're not unreasonable, but that's something you have to

8   take up with the marshals, okay?

9           I can't order them to do things that may be -- you

10  know, may impose on their ability to secure you and, you know,

11  the area where you're going to be retained, all right.  I have

12  no power.  All right?  But you should ask them, all right?

13          DEFENDANT YAKOV WEINGARTEN:  Okay.

14          THE COURT:  I don't think they're unreasonable.

15          DEFENDANT YAKOV WEINGARTEN:  Thank you, your Honor.

16          THE COURT:  All right.  Good luck to you all.

17          DEFENDANT YAKOV WEINGARTEN:  Thank you.

18          MR. ADELSBERG:  Thank you, Judge.

19          (Luncheon recess)

20          (Jury deliberates)

21          (Continued on the following page)

22

23

24

25

Proceedings

1          (Trial resumed; jury not present)

2          (At 3:05 p.m., a note was received from the jury)

3          THE COURT:  Okay.  So let's go on the record.  So we

4    are on the record.  The Court received a note.  It's marked as

5    Court Exhibit.  It bears today's date, and the time is 3:05.  It

6    appears to be signed by Juror Number 8, the foreperson.  And the

7    note is as follows:  "For Count One, question 2, does the third

8    element" -- I'm sorry.  Let me go back.

9          "For Count One, question 2" -- and in it references

10   page 31 and 32 of the jury charge -- "does the third element

11   have to have occurred or is intent sufficient to prove the

12   count?"

13         So Count One is the conspiracy count, all right, and

14   it deals with the unlawful agreement.  And I believe that they

15   are asking with respect that -- the question is posed with

16   respect to the third -- where is my verdict form?  The third

17   substantive crime of federal law 18 U.S.C. Section 2423(c).  All

18   right.

19         My inclination is just to read -- read the

20   instructions I provided once again, beginning on page 20 through

21   25.

22         MS. BAGLIEBTER:  Your Honor?

23         THE COURT:  And -- hold on just a second.

24         MS. BAGLIEBTER:  Sorry.

25         THE COURT:  And then jumping to the third substantive

1   crime, which begins on page 31 through 32. They are basically

2   asking: Does the actual crime have to have occurred? That's my

3   understanding of the question.

4           I will hear from the government.

5           MS. BAGLIEBTER: So, Your Honor, I think the

6   government agrees that they seem to be asking about whether the

7   third element of 2423(c) has to be proven as a substantive

8   matter, whether the illicit sexual conduct had to occur, and the

9   answer to that of is, of course, no because it's just the

10  conspiracy.

11          So I think, given that they have the full jury

12  instructions with them, what we think the relevant language is

13  on page 21, the third full paragraph is what answers their

14  question more specifically, particularly, if you start with the

15  third sentence of the paragraph: "The crime of conspiracy is

16  complete once the unlawful agreement is made and the defendant

17  enters into it. Accordingly, you may find a defendant guilty of

18  the crime of conspiracy to transport a minor with intent that

19  she engage in sexual activity for which any person can be

20  charged with a crime even though the object of the conspiracy,

21  that is, the transportation of the minor or the criminal sexual

22  activity, might not have actually been committed. The ultimate

23  success of the conspiracy is not required."

24          The government thinks that providing that paragraph

25  with an instruction to them would answer their question fully,

1  and, you know, be responsive to the specific question that they

2  have included here.

3         DEFENDANT YAKOV WEINGARTEN:  Your Honor, I think the

4  government is completely wrong.  The question of the -- the

5  question sounds like they ask about the predicate offense, the

6  federal law incorporated in Count --

7         THE COURT:  It's not a predicate offense.  It's a

8  substantive crime.  There is a difference.

9         So the conspiracy is the unlawful agreement.  All

10 right.  And the question is what -- what substantive crime was

11 it that was part of the agreement?  All right.  And here, they

12 are asking whether or not -- my understanding of the question is

13 whether or not the actual third element, the substantive crime

14 had to have occurred on whether or not it's sufficient for the

15 government to prove the intent was to -- the intent was proven.

16        DEFENDANT YAKOV WEINGARTEN:  It doesn't seem like the

17 question goes to the conspiracy.  The question goes to the --

18        THE COURT:  It does.  Count One is the conspiracy

19 question, it's the conspiracy count.

20        DEFENDANT YAKOV WEINGARTEN:  Okay.  But their question

21 specifically in regards to the predicate offense of 2423(c),

22 which is incorporated in the Count One.  And they asked whether

23 an intent, to have an intent is a crime or just an attempt to

24 violate actually on 2423(c).

25        THE COURT:  No, that's not -- that's not what they are

Proceedings

1  charged with.  They are charged with the unlawful agreement to

2  commit a crime.

3       MS. BAGLIEBTER:  Your Honor, I actually -- 2423(c)

4  isn't even the object.  They need the intent to commit to do the

5  travel for which a person can be convicted of a crime, and then

6  you need a crime for them to be convicted of, and that's where

7  the Mexican law, the New York law, and the 2423 come in.  So

8  it's actually -- it's like a predicate of a predicate.

9       THE COURT:  Right.

10      MS. BAGLIEBTER:  And so to the extent their question

11 is:  Does the predicate of the predicate have to have occurred

12 or just the intent to?  The correct legal answer to that is:

13 It's just the intent to.

14      THE COURT:  Right.

15      MS. BAGLIEBTER:  It certainly doesn't have to occur

16 and --

17      THE COURT:  I am in agreement with you.  I am just

18 wondering.  I was -- I guess my question was more of, should I

19 read the -- just reread the conspiracy count along with the --

20 with the substantive crime, so to speak, but I think --

21      MS. BAGLIEBTER:  Your Honor, I think -- if I may, I am

22 sorry to interrupt.  I think where some of the confusion may

23 lie -- and this is maybe something that we should have flagged

24 earlier -- but on this, the discussion of this particular

25 predicate, this 2423, on page 32, in the discussion of each

Proceedings

1    element when we are listing each element, the instructions say

2    the government must prove beyond a reasonable doubt, and that

3    probably is superfluous language because if you were charging

4    that specific crime, you would be saying the government must

5    prove beyond a reasonable doubt that the sex occurred.  But in

6    this case, we don't have to prove that.

7              DEFENDANT YAKOV WEINGARTEN:  Your Honor, the question

8    is -- their question is, as I understand it, if the language of

9    Count One, and which is 2423(a), of any offense which a person

10   could be charged with a crime, if a person could be charged with

11   a crime for just an intent or only when he is doing it.  That's

12   the question.  That's why they asked specifically only on this

13   predicate offense of 2423(c) and not about other predicate

14   offenses.

15             THE COURT:  My inclination is to just give them the

16   charge, the basic conspiracy charge.

17             DEFENDANT YOIL WEINGARTEN:  Your Honor, if it's

18   possible to read as well page number 31 and 32 because that's

19   what they are asking about.  They asked at page 31 and 32.

20             THE COURT:  But my understanding is the question -- of

21   the question is whether or not the actual substantive crime has

22   to have occurred, and that's not the case for conspiracy, and I

23   think a read-back of the charge regarding the conspiracy charge,

24   the basic charge, is sufficient to address --

25             DEFENDANT YAKOV WEINGARTEN:  Your Honor --

Proceedings

1          THE COURT:  -- their request.  So over your objection,

2   I am just going to read.

3          DEFENDANT YAKOV WEINGARTEN:  Your Honor, I think the

4   conspiracy part is very clear.  They don't have any question

5   about it.  It was made clear enough in Your Honor's charge that

6   a conspiracy could be even without an act.  Could be just an

7   intent, just an agreement.

8          The question is not about an agreement.  The question

9   is about a third element of the predicate offense.  It's a

10  specific question on this particular predicate offense on this

11  element.  So it could be clarified that an intent to violate

12  2423(c) doesn't have to occur; just a intent to violate, but in

13  case -- in case it's used only as a measure whether a person

14  could be charged with a crime, it must be only if it occurred.

15         So in this case it's just a conspiracy, of course.

16  But it cannot be a conspiracy to have an intent.  That's the

17  major question here, if it could be a conspiracy to have an

18  intent or only a conspiracy to do it.

19         MS. BAGLIEBTER:  Your Honor, the only purpose of

20  including the law for 2423(c) is just to give the jury what the

21  crime that that person could have been committed would have

22  been.  It's not anything that the government has to

23  independently prove.  I don't think that there is anything in

24  this question that reflects a misunderstanding of the elements

25  of the third element.  They can read the instruction that they

DARBY GINSBERG, RPR, RCR and TABITHA DENTE, RPR, RMR, CRR
- OFFICIAL COURT REPORTER -

Proceedings

1 have on that.  The question that they need clarification on is

2 the conspiracy point.

3         DEFENDANT YAKOV WEINGARTEN:  Your Honor, I think the

4 question is clear.  It says does the third element have to have

5 occurred or is intent sufficient to prove the count?  So the

6 question is specific about the third element.  That's why they

7 asked.  They didn't ask anything about the conspiracy.

8         THE COURT:  Okay.

9         DEFENDANT YOIL WEINGARTEN:  Your Honor, the plain

10 language of the question said page 31 and page 32.  It's

11 impossible to give another interpretation provided of the plain

12 language where they are asking about.

13         THE COURT:  If I had to answer that question that's

14 written in the verdict -- in the note, does the third element

15 have to occur or is intent sufficient?  The answer, does it have

16 to have occurred?  The answer is no.

17         DEFENDANT YAKOV WEINGARTEN:  Your Honor, of course

18 2423 must occur.  Intent is not enough.

19         THE COURT:  So what I am going to do is I am going to

20 read the charge starting on page 20 and proceeding almost to the

21 end of 21, as to what constitutes a conspiracy.

22         MS. BAGLIEBTER:  Thank you, Your Honor.

23         THE COURT:  Over the defendants' objection.  All

24 right?  Let's bring out the jurors.

25         (In open court; jury present)

DARBY GINSBERG, RPR, RCR and TABITHA DENTE, RPR, RMR, CRR
- OFFICIAL COURT REPORTER -

Proceedings

```
 1              THE COURT:  I just want the record to reflect that the
 2  jurors have been brought out to the courtroom.
 3              I want the jurors to know that I received your note.
 4  It has been deemed marked a Court Exhibit, Court Exhibit
 5  Number 1.
 6              The note reads as follows, and it should be on the
 7  record that it appears to have been signed by Juror No. 8, who
 8  is the foreperson.  "For Count One, question 2 (jury charge
 9  page 31 and 32).  Does the third element have to have occurred
10  or is intent sufficient to prove the count?"
11              Okay.  First, what I am going to do, based on your
12  question on your note, I am going to read to you my instruction
13  with respect to Count One, which is what you appear to be
14  addressing.  Count One, question two.  And Count One deals with
15  the conspiracy charge.
16              Count One reads as follows, my instructions to you,
17  which is captioned as:  Conspiracy to transport a minor with
18  intent to engage in criminal sexual activity.  18 U.S.C.
19  Section 2423(a) and (e).
20              I will start with Count One of the indictment, which
21  charges the defendants with conspiring -- that is, agreeing --
22  to transport a minor -- Jane Doe -- with the intent that she
23  engage in sexual activity for which any person can be charged
24  with a crime.  And reads as follows:
25              "From at least on or about December 5th, 2018, up to
```

Proceedings

1  and including at least on or about December 27, 2018, in the

2  Southern District of New York and elsewhere, Yakov Weingarten,

3  Shmiel Weingarten, and Yoil Weingarten, and others known and

4  unknown, would and did knowingly transport an individual who had

5  not attained the age of 18 years in interstate and foreign

6  commerce with the intent that the individual engage in sexual

7  activity for which any person can be charged with a criminal

8  offense, and conspired to do so, to wit, Yakov Weingarten,

9  Shmiel Weingarten, and Yoil Weingarten, and others, devised and

10 executed a plan to transport Jane Doe from New York to

11 Pennsylvania and other states en route to Mexico and Guatemala

12 with a dominant motive of reuniting her with Jacob Rosner so

13 that they would engage in criminal sexual activity, namely,

14 sexual activity for which a person can be charged with a

15 criminal offense under Penal Law 130.30 and the Penal Code of

16 the State of Mexico, Article 273, and Title 18 U.S.C.

17 Section 2423(c)."

18        To find the defendant you are considering guilty of

19 this count, the government must prove each of the following

20 elements beyond a reasonable doubt:

21        This is the conspiracy count of Count One.  First, the

22 government must prove that the conspiracy charged in the

23 indictment existed.  That is, that there was an agreement or an

24 understanding among at least two people to transport a minor

25 with intent that she engage in sexual activity for which any

1  person can be charged with a crime.

2        Second, the government must prove that the defendant

3  you are considering willfully and knowingly became a member of

4  the conspiracy with the intent to further its illegal purpose.

5  That is, with the intent that the object of the charged

6  conspiracy be committed.

7        Starting with the first element, a conspiracy is an

8  agreement or an understanding, explicit or implicit, of two or

9  more people to accomplish by concerted or collective action a

10  criminal or unlawful purpose.  In these instructions, the

11  unlawful purpose alleged to have been the object of the

12  conspiracy charged in Count One is the transportation of a minor

13  with intent that she engage in sexual activity for which any

14  person can be charged with a crime.  In other words, the

15  government alleges that there was an agreement or understanding

16  and that its objective was to transport a minor with intent that

17  she engage in sexual activity for which any person can be

18  charged with a crime.

19        The gist, or the essence, of a crime of conspiracy is

20  the unlawful understanding or agreement to violate the law.  The

21  success of the conspiracy or the actual commission of the

22  criminal act, which is the object of a conspiracy, is not an

23  element of the crime of conspiracy.

24        The conspiracy alleged here, therefore, is the

25  agreement to commit the crime.  That is an entirely separate and

Proceedings

 1   distinct offense from the underlying offense, which the law

 2   calls a substantive crime.  The crime of conspiracy is complete

 3   once the unlawful agreement is made and the defendant enters

 4   into it.  Accordingly, you may find a defendant guilty of the

 5   crime of conspiracy to transport a minor with the intent that

 6   she engage in sexual activity for which any person can be

 7   charged with a crime even though the object of the conspiracy,

 8   that is, the transportation of the minor or the criminal sexual

 9   activity, might not actually have been committed.  The ultimate

10   success of the conspiracy is not required.

11          All right.  So with that in mind, I have given you the

12   charge that I believe was applicable in response to your

13   question.  I am going to ask you to return to the jury room to

14   deliberate.  Of course, if you have any further questions or any

15   further information that you would like to get from the Court,

16   you are entitled to send me a note.

17          All right.  Let's excuse the jurors.

18          THE DEPUTY CLERK:  All rise.  Jurors in the first row,

19   you may exit.

20          (Jury excused to deliberate)

21          (In open court; jury not present)

22          THE COURT:  All right.  You may be seated, and just to

23   make -- to ensure that we get to the gist of the matter, I

24   understand that the defendants have an objection to the

25   instruction that I just gave to the jurors, correct?

Proceedings

1           DEFENDANT YAKOV WEINGARTEN:  Yes, Your Honor.

2           THE COURT:  Okay.

3           DEFENDANT YOIL WEINGARTEN:  Yes, Your Honor.

4           THE COURT:  It's duly noted.  All right.  Good luck.

5           MR. ADELSBERG:  Thank you, Judge.

6           MS. BAGLIEBTER:  Thank you, Judge.

7           (Recess pending verdict)

8           (In open court; jury not present)

9           THE COURT:  Please be seated, everyone.  All right.

10     We received a note from the jury.  It's marked as

11     Court Exhibit Number 2.  It bears today's date, and the time is

12     3:57 p.m.

13          All right.  We have a verdict.  I am going to hand the

14     verdict to my very abled courtroom deputy, and with her

15     assistance we are going to have the jurors brought out, and then

16     I will read the verdict into the record.  Bring out the jurors.

17          THE DEPUTY CLERK:  I will, Judge.

18          All rise.  Jurors entering.

19          (In open court; jury present)

20          THE COURT:  Please be seated, everyone.  All right.

21          The record should reflect that the jurors are now

22     present in the courtroom.  All right.  I received a verdict from

23     the jurors, and with the assistance of my courtroom deputy, I am

24     going to ask the foreperson to rise.  That's Juror No. 8.  And

25     with Gina's help, we are going to read the verdict into the

Proceedings

 1  record.  Once we have the verdict recorded, I am then going to

 2  poll each and every one of you thereafter.  All right?

 3            Let's begin, Gina.

 4            THE DEPUTY CLERK:  Yes, Your Honor.

 5            The verdict sheet reads as follows:  Your answer to

 6  each question must be unanimous.  Please indicate each of your

 7  verdicts with an X.

 8            Count One, conspiracy to transport a minor with intent

 9  to engage in criminal sexual activity.  Cite 18 U.S.C.

10  Section 2423(a) and (e).

11            Question one:  How do you find the Defendant Shmiel

12  Weingarten with respect to Count One?  Your answer?

13            THE FOREPERSON:  Guilty.

14            THE DEPUTY CLERK:  If you found Defendant Shmiel

15  Weingarten guilty with respect to Count One, under which law did

16  you find that an individual could be charged with a crime?

17            And you are to check all that apply.  As to New York

18  law?

19            THE FOREPERSON:  Guilty.

20            THE DEPUTY CLERK:  As to Mexican law?

21            THE FOREPERSON:  Guilty.

22            THE DEPUTY CLERK:  As to federal law?

23            THE FOREPERSON:  Guilty.

24            THE COURT:  So just to be clear, you have checked off

25  each one of those provisions, correct?

Proceedings

1           THE FOREPERSON:  Yes, Your Honor.

2           THE COURT:  Okay.

3           THE DEPUTY CLERK:  Question number three:  How do you

4   find Defendant Yoil Weingarten with respect to Count One?  Your

5   answer?

6           THE FOREPERSON:  Guilty.

7           THE DEPUTY CLERK:  Question four:  If you found the

8   Defendant Yoil Weingarten guilty with respect to Count One,

9   under which law did you find that an individual could be charged

10  with a crime?  Actually, please give the answer.

11          THE FOREPERSON:  All three:  New York, Mexican and

12  federal.

13          THE DEPUTY CLERK:  Question five:  How do you find the

14  Defendant Yakov Weingarten with respect to Count One?  Your

15  answer?

16          THE FOREPERSON:  Guilty.

17          THE DEPUTY CLERK:  If you found the Defendant Yakov

18  Weingarten guilty with respect to Count One, under which law did

19  you find that an individual could be charged with a crime?

20  Which apply?

21          THE FOREPERSON:  New York, Mexican and federal.

22          THE DEPUTY CLERK:  Count Two, conspiracy to travel

23  with intent to engage in illicit sexual conduct.  Cite 18 U.S.C.

24  Sections 2423(b) and (e).

25          Question one:  How do you find the Defendant Shmiel

Proceedings

1   Weingarten with respect to Count Two?

2           THE FOREPERSON:  Guilty.

3           THE DEPUTY CLERK:  Question two:  How do you find the

4   Defendant Yoil Weingarten with respect to Count Two?  Your

5   answer?

6           THE FOREPERSON:  Guilty.

7           THE DEPUTY CLERK:  Question three:  How do you find

8   the Defendant Yakov Weingarten with respect to Count Two?  Your

9   answer?

10          THE FOREPERSON:  Guilty.

11          THE DEPUTY CLERK:  Count Three, conspiracy to commit

12  international parental kidnapping, unlawfully use a means of

13  identification and enter by false pretenses the secure area of

14  an airport.  Cite 18 U.S.C. Section 371.

15          Question one:  How do you find the Defendant Shmiel

16  Weingarten with respect to Count Three?

17          THE FOREPERSON:  Guilty.

18          THE DEPUTY CLERK:  Question two:  How do you find the

19  Defendant Yoil Weingarten with respect to Count Three?  Your

20  answer?

21          THE FOREPERSON:  Guilty.

22          THE DEPUTY CLERK:  Question three:  How do you find

23  the Defendant Yakov Weingarten with respect to Count Three?

24  Your answer?

25          THE FOREPERSON:  Guilty.

Proceedings

1             THE DEPUTY CLERK:  Count Four, international parental

2    kidnapping, December 2018, Jane Doe.  Cite 18 U.S.C. Sections

3    1204(a) and 2.

4             Question one:  How do you find the Defendant Shmiel

5    Weingarten with respect to Count Four?  Your answer?

6             THE FOREPERSON:  Guilty.

7             THE DEPUTY CLERK:  Question two:  How do you find

8    Defendant Yoil Weingarten with respect to Count Four?  Your

9    answer?

10            THE FOREPERSON:  Guilty.

11            THE DEPUTY CLERK:  Question three:  How do you find

12   the Defendant Yakov Weingarten with respect to Count Four?  Your

13   answer?

14            THE FOREPERSON:  Guilty.

15            THE DEPUTY CLERK:  Count Five, international parental

16   kidnapping, December 2018, John Doe.  Cite 18 U.S.C. Sections

17   1204(a) and 2.

18            Question one:  How do you find the Defendant Shmiel

19   Weingarten with respect to Count Three?  Your answer?

20            THE FOREPERSON:  Guilty.

21            THE DEPUTY CLERK:  Question two:  How do you find the

22   Defendant Yoil Weingarten with respect to Count Three?  Your

23   answer?

24            THE FOREPERSON:  Guilty.

25            THE DEPUTY CLERK:  Question three:  How do you find

Proceedings

1  the Defendant Yakov Weingarten with respect to Count Three?

2  Your answer?

3              THE FOREPERSON:  Guilty.

4              THE DEPUTY CLERK:  Count Six, attempted international

5  parental kidnapping, March 2019, attempted kidnapping.  Cite 18

6  U.S.C. Sections 1204(a) and 2.

7              How do you find Defendant Yakov Weingarten with

8  respect to Count Six?  Your answer?

9              THE FOREPERSON:  Guilty.

10             THE DEPUTY CLERK:  Your Honor, that's the jury's

11 verdict.

12             THE COURT:  All right.

13             THE DEPUTY CLERK:  Shall I poll?

14             THE COURT:  Let's excuse the jurors for a second.

15             THE DEPUTY CLERK:  All rise.  Jurors in the first row

16 you may exit.

17             (Jury excused)

18             (In open court; jury not present)

19             THE COURT:  Please be seated.  All right.  I saw that

20 the government wanted to address the Court.

21             MS. BAGLIEBTER:  Yes, Your Honor.  It appears that

22 there is just a typo that we may have all missed.

23             For Count Five, the questions say "with respect to

24 Count Three" as opposed to saying "with respect to Count Five."

25 And so if we can just confirm with the jury that they intend

Proceedings

 1  to -- they are intending to make a finding of guilty with

 2  respect to Count Five.  Yes.  The heading says Count Five.  It's

 3  just the questions.

 4              THE DEPUTY CLERK:  I can reread that section.

 5              THE COURT:  Okay.  All right.  Let's bring out the

 6  jury.

 7              THE DEPUTY CLERK:  All rise.  Jurors entering.

 8              (In open court; jury present)

 9              THE COURT:  All right.  Please be seated.

10              We are going to go over one of the counts with respect

11  to Count Five, international parental kidnapping, December 2018,

12  with respect to John Doe, under 18 U.S.C. Section 1204(a) and 2.

13              All right.  The verdict sheet has a typo.  It should

14  be read:  How do you find the Defendant Shmiel Weingarten with

15  respect to Count -- it reads Three, but it's actually with

16  respect to Count Five.

17              So the question is -- if the foreperson would please

18  rise.

19              One, did you consider -- were you considering Count

20  Five in this section with respect to each and every defendant?

21              THE FOREPERSON:  Yes, Your Honor.

22              THE COURT:  All right.  And is your verdict guilty as

23  to Defendant Shmiel Weingarten?

24              THE FOREPERSON:  Yes, Your Honor.

25              THE COURT:  As to Defendant Yoil Weingarten?

Proceedings

```
 1              THE FOREPERSON:  Yes, Your Honor.

 2              THE COURT:  And as to Yakov Weingarten?

 3              THE FOREPERSON:  Yes, Your Honor.

 4              THE COURT:  Okay.  All right.  So at this time I am

 5   going to poll each and every juror with the assistance of my

 6   very capable and nice and pleasant courtroom deputy, who likes

 7   to tell me what to do a lot of times.  We are going to read the

 8   verdict.  We are going to poll the jurors, beginning with juror

 9   number one.  Gina?

10              THE DEPUTY CLERK:  Juror No. 1, is that your verdict?

11              THE JUROR:  Yes.

12              THE DEPUTY CLERK:  Juror No. 2, is that your verdict?

13              THE JUROR:  Yes.

14              THE DEPUTY CLERK:  Juror No. 3, is that your verdict?

15              THE JUROR:  Yes.

16              THE DEPUTY CLERK:  Juror No. 4, is that your verdict?

17              THE JUROR:  Yes.

18              THE DEPUTY CLERK:  You need to speak into the flat

19   part of the mic.  Okay.  Juror No. 5, is that your verdict?

20              THE JUROR:  Yes.

21              THE DEPUTY CLERK:  Juror No. 6, is that your verdict?

22              THE JUROR:  Yes.

23              THE DEPUTY CLERK:  And please pass the mic all the way

24   down.  Thank you.

25              Juror No. 7, is that your verdict?
```

Proceedings

```
 1              THE JUROR:  Yes.

 2              THE DEPUTY CLERK:  Juror No. 8, is that your verdict?

 3              THE JUROR:  Yes.

 4              THE DEPUTY CLERK:  Juror No. 9, is that your verdict?

 5              THE JUROR:  Yes.

 6              THE DEPUTY CLERK:  Juror No. 10, is that your verdict?

 7              THE JUROR:  Yes.

 8              THE DEPUTY CLERK:  Juror No. 11, is that your verdict?

 9              THE JUROR:  Yes.

10              THE DEPUTY CLERK:  And Juror No. 12, is that your

11  verdict?

12              THE JUROR:  Yes.

13              THE COURT:  All right.  The record should reflect that

14  the jurors have been polled.

15              All right.  Ladies and gentlemen of the jury, I want

16  to first commend you for showing up on time every day and for

17  being here, for participating in this trial.  I know that it was

18  a difficult trial, and it occupied a great deal of your time,

19  but I noticed that you were all very attentive.  Your

20  participation is greatly appreciated, not by just the Court, but

21  also by the attorneys and the parties.  All right.

22              We cannot function in our current justice system

23  without the participation of jurors.  So your role is very vital

24  to our very function, which is to serve justice.

25              All of those instructions that I previously gave you
```

1  about not discussing the case no longer apply.  You are free to

2  discuss the case among yourselves or with anyone else that you

3  want to.  As a matter of fact, there may be individuals who may

4  want to speak to you after you leave the court.  All right.  You

5  don't have to speak to anyone if you don't want to.  It's

6  entirely your choice.

7         We have made attempts to make it as comfortable as

8  possible.  We don't always succeed, but we do try.  I hope it

9  was an interesting experience.  I hope you learned something

10 new.  I certainly did.  And I hope that you will encourage

11 others to participate.

12         All right.  Thank you once again on behalf of the

13 court system, the attorneys and the parties.  All right.  I wish

14 you a safe trip home, and again, to the extent that we may have

15 done something to inconvenience you or annoy you, all I can do

16 is apologize.  It wasn't our intention, but we greatly

17 appreciate your assistance.  All right.  Be well and take care.

18         THE DEPUTY CLERK:  All rise.

19         (Jury discharged)

20         THE COURT:  All right.  Please be seated.

21         All right.  I know that we have to come up with a

22 sentencing date.  We are going to do that.  It has to be a

23 minimum 90 days out, so we are going to look.

24         Anything from the government?

25         MS. BAGLIEBTER:  No, Your Honor.

Proceedings

```
 1                THE COURT:  Okay.  Anything from Mr. Shmiel
 2   Weingarten?
 3                DEFENDANT SHMIEL WEINGARTEN:  No, Your Honor.
 4                THE COURT:  Anything from Mr. Yakov Weingarten?
 5                DEFENDANT YAKOV WEINGARTEN:  No, Your Honor.
 6                THE COURT:  Anything from Mr. Yoil Weingarten?
 7                DEFENDANT YOIL WEINGARTEN:  No, Your Honor.
 8                THE COURT:  Okay.  Let's come up with a sentencing
 9   date.
10                While Gina is looking for a date, it may be somewhat
11   helpful.  I am speaking to the defendants.  All right.  You
12   still have the right to represent yourself at sentencing.
13   That's your right.  However, in the event you want standby
14   counsel to represent you, all right, it would be advisable that
15   you let them know well in advance so that they can prepare
16   accordingly and submit to the Court a sentencing memo.  All
17   right.
18                Typically what happens at sentencing is that the
19   government will provide a statement to the Court with respect to
20   what they think an appropriate sentence is.  Likewise, defense
21   attorneys typically provide something very similar on behalf of
22   their clients where they outline what they believe an
23   appropriate sentence would be under the circumstances.  And they
24   attempt to do a little bit of research.  They include background
25   on their clients.  All right.  And it may be helpful.  But
```

1  again, I just say this in the event you want -- you may choose

2  to ask standby counsel to represent you at sentencing, but I do

3  want to make clear you do have a the right to represent

4  yourself.  All right.  And as it stands, you are *pro se*.  All

5  right?  But in the event you want standby counsel to be the

6  actual person who comes into court and advocates on your behalf,

7  if that's the case, you need to notify standby counsel.  Let

8  them know in advance so that they can prepare appropriately.

9  All right.  And it would also be helpful, in the event that that

10 happens, that standby counsel at least let the Court know in

11 advance.  File something on the docket.  Okay?

12             DEFENDANT SHMIEL WEINGARTEN:  Understood, Your Honor.

13             DEFENDANT YAKOV WEINGARTEN:  I understand, Your Honor,

14 too.

15             DEFENDANT YOIL WEINGARTEN:  Okay, Your Honor.

16             THE DEPUTY CLERK:  Okay.  Sentencing is scheduled for

17 July 9, 2024, that is a Tuesday, at 10:00 a.m.

18             THE COURT:  Does that kind of work for all parties,

19 including government and standby counsel?

20             MS. BAGLIEBTER:  Yes, Your Honor.

21             MR. O'REILLY:  Your Honor, I have a trial scheduled

22 for that week, but it probably will not go.  So I think it

23 should be fine, but I just wanted to alert the Court that I may

24 have an issue.

25             THE COURT:  You have an assistant with you.

Proceedings

1           MR. O'REILLY:  She is better than I am.

2           THE COURT:  Okay.

3           MR. HOCHHEISER:  It's okay for me, Judge.

4           MR. MAHER:  Very good.  Thank you.

5           THE DEPUTY CLERK:  The government?

6           MS. BAGLIEBTER:  That's fine, Your Honor.

7           THE COURT:  Ms. Ferrone, that schedule works for you?

8           MS. FERRONE:  Yes, Your Honor.  It's my birthday,

9  but --

10          THE COURT:  You turn 21, 22?

11          DEFENDANT SHMIEL WEINGARTEN:  Your Honor, it's my

12  birthday, too.  July 29.

13          THE COURT:  July 29th?

14          THE DEPUTY CLERK:  July 9.

15          DEFENDANT SHMIEL WEINGARTEN:  I thought it was

16  July 29th.

17          THE COURT:  Okay.  So we have a date, July 9th, okay,

18  at 10:00 a.m.  All right.  I will see everyone then.

19          THE DEPUTY CLERK:  Court in recess.

20          DEFENDANT SHMIEL WEINGARTEN:  Discussion for post

21  trial motions?

22          THE DEPUTY CLERK:  Oh, post trial motions?

23          THE COURT:  What you mean are Rule 29 motions.  You

24  intend -- that's why I asked you whether or not there was

25  anything the parties want to the bring to the Court's attention.

```
 1   How much time do you need for post trial motions?

 2              It needs to be done well in advance of sentencing.

 3   And you also have to factor in that the government will, in all

 4   likelihood, oppose whatever motion you make or submit to me

 5   opposition, and it also should be -- it should be done in such a

 6   fashion that the Court can issue a decision no later than the

 7   day of sentencing.

 8              DEFENDANT SHMIEL WEINGARTEN:  We will ask for 60 days.

 9              THE COURT:  Can you do it in 45 days?

10              DEFENDANT SHMIEL WEINGARTEN:  We'll try.

11              THE COURT:  All right.  You are going to do it in

12   45 days.  All right.

13              How much time will the government need?

14              THE DEPUTY CLERK:  That would be May 13th for moving

15   papers.

16              DEFENDANT SHMIEL WEINGARTEN:  Can we get May 20th?

17              THE COURT:  I need -- Mr. Weingarten, the issue is

18   this.  I need to be able to review it.  I also need to review

19   the government's papers, right?  And they need -- they are going

20   to ask for at a minimum 21 days, probably closer to 30, and then

21   I need some time to issue a decision.

22              MR. HOCHHEISER:  What was that?  May 13th was that

23   date?

24              THE DEPUTY CLERK:  May 13th.  Three weeks for the

25   government or 30 days?
```

Proceedings

 1              MS. BAGLIEBTER:  We will take 30 days if we can.

 2              THE DEPUTY CLERK:  That was my own fault.  I shouldn't

 3   have asked.  June 13th for opposition.

 4              THE COURT:  All right.  And that's it.  All right.  So

 5   we have post trial motions due May 13th.  Opposition is due

 6   June 13th.  All right?  There being nothing further, we are in

 7   recess.

 8              MS. BAGLIEBTER:  Thank you, Your Honor.

 9              THE COURT:  I want to thank the marshals and the court

10   security officers for being helpful throughout this process.  I

11   know it wasn't easy, but it was much appreciated.  I know it was

12   very difficult, and you guys worked really hard.  So I

13   appreciate your assistance.

14              I also want to acknowledge the Yiddish interpreter.

15   We have had two throughout the trial, Ruth -- and Steven is not

16   here, but tell him I said thank you.  All right.  Much

17   appreciated.  All right.

18              And the court stenographers who were working hard to

19   provide daily copies to all the parties, thank you very much.

20   We are in recess.

21              (Trial concluded)

22                             -o0o-

23

24

25