```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------------x
    UNITED STATES OF AMERICA,
 3
 4                           Case No.  S3 19-cr-497-05 (NSR)
       -vs-                            S3 19-cr-497-09 (NSR)
 5
                                       JURY TRIAL
 6  MATITYAU MOSHE MALKA and
    MORDECHAY MALKA,
 7
                             Defendants.
 8  ------------------------------------x
 9                                United States Courthouse
                                  White Plains, New York
10
                                  May 20, 2022
11                                2:18 p.m.
                                  VOLUME II
12  B e f o r e:
                                  HONORABLE NELSON S. ROMÁN
13                                United States District Judge
                                  and a Jury
14
    A P P E A R A N C E S:
15
    DAMIAN WILLIAMS
16       United States Attorney for the
         Southern District of New York
17  SAMUEL ADELSBERG
    JAMES LIGTENBERG
18  JAMIE BAGLIEBTER
    DANIEL TRACER
19       Assistant United States Attorneys
20  MATITYAU MOSHE MALKA, Pro Se Defendant
21  JOSEPH A. VITA
    HOWARD E. TANNER
22       Standby Attorney for Defendant, Matityau Moshe Malka
23  MORDECHAY MALKA, Pro Se Defendant
24  SUSAN C. WOLFE
    EZRA SPILKE
25       Standby Attorneys for Defendant, Mordechay Malka
```

```
1  A P P E A R A N C E S:  (Cont.)

2  ALSO PRESENT:

3  Ruth Kohn - Court interpreter (Yiddish)
   Steven Zager - Court interpreter (Yiddish)
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              (In open court; jury not present)

2          THE COURT:  All right.  So in a few minutes we are

3  going to bring out the jury.  We are going to swear in the jury.

4  I will be giving my preliminary instructions, and then we will

5  take opening statements.

6              Before that happens, I want to just put something on

7  the record.  As I have mentioned before we broke for lunch, I am

8  going to now provide each of the rulings provided in the Court's

9  May 11, 2022, opinion dealing with the parties' motions *in*

10  *limine*, which is docketed as ECF number 625.  By way of

11  reminder, the purpose of a motion *in limine* is to allow the

12  Court to rule in advance of trial on the admissibility and

13  relevancy of certain forecasted evidence, that is the evidence

14  and arguments the parties have proffered in their briefings and

15  throughout the litigation.

16              However, the Court's rulings on motions *in limine*

17  constitutes preliminary determinations subject to change as the

18  case unfolds.  Simply put, depending on the evidence actually

19  presented over the course of the trial, the Court may revise

20  some of its rulings on the parties' motions *in limine*.  But just

21  to be extra clear, the fact that these rulings are subject to

22  change doesn't mean that the parties can challenge every single

23  ruling that I return regardless of the circumstances.

24              Moreover, if a party believes that sufficient basis

25  has formed during the course of trial for the Court to revise

1    one of its rulings, that party must request a side bar outside

2    of the presence of the jury before any ruling is to be

3    reconsidered.

4           That said, the Court issued the following rulings

5    after thoroughly reviewing each of the parties' filings relating

6    to their motions *in limine* and considering the arguments

7    contained therein.

8           First, the Court ruled that evidence of the Malkas and

9    their co-conspirators bad acts and Federal Rule of Evidence

10   404(b) acts, namely evidence of Lev Tahor's practices of

11   underage marriages for the purpose of procreation are

12   admissible.

13          However, the Court also precludes the government from

14   presenting any evidence that relates to Lev Tahor's sexual

15   practices, such as, for example, as the government alleged in

16   the S3 Superseding Indictment, providing new brides and grooms

17   with tutorials before marriage instructing them on when and how

18   to have sex with their spouses, among others.

19          Next, the Court ruled that statements from the Malka's

20   co-conspirators are admissible so long the government fulfills

21   the necessary prerequisites to present such statements.

22          The Court next ruled that the government may seek the

23   admission of business records through written certifications

24   under Federal Rules of Evidence 803(6) and 902(11), as long as

25   the government established the relevancy of these business

1    records and lays the proper foundation for doing it.

2              Next, the Court precluded the Malkas -- I want to be

3    clear when I refer to the Malkas, that's defendant Mordechay

4    Malka and Matityau Moshe Malka -- from raising any arguments

5    challenging the validity of the family court order granting the

6    mother sole custody of the minors or the propriety of how such

7    order was issued.  This is because this is a legal, not a

8    factual question that the family court has already ruled on, and

9    this Court cannot review.

10             The Court also precluded the Malkas from arguing that

11   the mother lacked parental rights of the minors.  This is

12   because as a matter of law:  One, the family court order is

13   valid; and two, it is undisputable that the mother is the

14   minor's biological mother, who as a matter of law enjoys the

15   right to physical custody of her children unless and until such

16   right is terminated by law.

17             The Court also precluded the Malkas from raising any

18   alleged misconduct from the mother and the Kasho community with

19   how they allegedly abducted the minors to bring them to the U.S.

20   and fraudulently procured the family court order.

21             However, the Court noted that the Malkas may raise

22   such misconduct as long as they can show there is evidence in

23   the case that they physically abused the minors relevant to some

24   issue, rather for some issue for which it is not otherwise

25   precluded in the written opinion.

1           The Court also precluded the Malkas from arguing that

2    they were rescuing the minors because such argument is

3    irrelevant.   The statute at issue is Title 18 United States Code

4    Section 1204 does not expressly provide for a statutory

5    affirmative defense for rescuing the alleged kidnapped minors or

6    for a necessity defense.   Nor has the United States Supreme

7    Court, nor the United States Court of Appeals for the Second

8    Circuit recognized the same.

9           As the Court noted in its opinion, the plain statutory

10   language of the second affirmative defense in Section 1204

11   provides it shall be an affirmative defense under the section

12   that, "the defendant was fleeing an incidence or pattern of

13   domestic violence.   Nowhere does the statute provide that the

14   alleged kidnapped minor must be the one fleeing in the incident

15   or pattern of domestic violence."   The Court further noted that

16   the United States Court of Appeals of the Seventh Circuit

17   appeared to have construed an explanation or reasoning that this

18   second affirmative defense also extended to cases in which the

19   alleged kidnapped minors were the ones fleeing the incidence or

20   pattern of domestic violence.

21           However, since the Court is not bound by -- and none

22   of the parties presented any binding legal authority concurring

23   with the Seventh Circuit's reading of the statute, this Court

24   agrees to enforce the plain statutory language according to its

25   terms.

1        And the Court also precluded the Malkas from arguing

2   that they and their co-conspirators were being persecuted for

3   their religious views because they've failed to produce any

4   evidence of discriminatory intent for effect.

5        The Court has also precluded the Malkas from arguing

6   that declaring the marriage between Jacob Rosner and Minor-1, or

7   Jane Doe as she is sometimes referred to, was predicated on

8   religious beliefs, and that the same constitutes a defense to

9   the charges against them.

10       Similarly, the Court also precluded the Malkas from

11  raising any argument challenging the legal validity of the

12  marriage between Jacob Rosner and Minor-1 or Jane Doe.

13       The Court also precluded the Malkas from arguing that

14  the minors' consent to travel out of the country excused their

15  offense conduct, meaning you can't argue that you had the

16  consent of the minors to travel.

17       All right.  Next the Court ruled that the use of the

18  term "kidnapping," "abduction" and "victims" by the government

19  at trial is admissible and not prejudicial.

20       And finally, the Court precluded the government from

21  describing and labeling arranged marriage and Lev Tahor as

22  forced because describing them in such a way may imply that the

23  marriages were celebrated against someone's will under some kind

24  of threat when there has been no evidence of the same in this

25  case.

1              All right?  So I just wanted to put that on the

2    record.  We are ready to proceed?

3              MR. MORDECHAY MALKA:  Your Honor, I didn't understood

4    two points if the Court can clarify it?  I didn't understood

5    regarding the -- specifically regarding the affirmative defense

6    and regarding the necessity defense.  So is the Court is saying

7    the defendants -- I mean, from the Court's ruling the Court

8    indicates that the defendants can raise the affirmative defense

9    if we can prove was a physical or a sexual abuse for the minors

10   as well the Court indicated in the Court's ruling.  Is the Court

11   changing that ruling?  Did the Court now reconsidered it?  Did

12   the Court exclude it?  I didn't -- what the Court just said now

13   my understanding was the Court said just the defendants has to

14   be the ones who was fleeing an incident pattern of domestic

15   violence.  In the ruling it indicate that the Court is allowing

16   raise this issue with regard to children as well, as long as we

17   can prove physical and sexual abuse.

18              Is this determined what the Court just said now?  I am

19   confused, Your Honor.  The one issue the other accomplish is the

20   regarding the necessity defense the Court did indicate in the

21   Court's ruling that defendants, the defendants one raised a

22   defense they can raise it only.

23              THE COURT:  What I indicated and for purposes of the

24   motion that you have proffered nothing to support a basis for

25   raising the necessity defense.

```
 1              MR. MORDECHAY MALKA:  Your Honor, that's the fact the
 2    defendants --
 3              THE COURT:  As I indicated, the statute does not
 4    expressly provide for a statutory defense for rescuing the
 5    alleged kidnapped minors or for a necessity defense.  The
 6    statute does not provide it.  It's not an affirmative defense.
 7              MR. MORDECHAY MALKA:  But any statute not provide the
 8    necessity.  It's a general defense.  It has nothing to do with
 9    it.
10              THE COURT:  With all due respect, I am not sure what
11    you are arguing.  You are precluded from arguing that you are
12    rescuing the minors because such an argument is irrelevant.
13              The statute, 18 U.S.C. Section 1204, does not
14    expressly provide for an affirmative defense for rescuing the
15    alleged kidnapped minors or for a necessity defense.
16              MR. MORDECHAY MALKA:  Your Honor, again, I am not
17    clear.  Any parent who fled from another parent with the
18    children and attempt for a flight after an incident of domestic
19    violence is in a sense rescuing the children from the domestic
20    violence.  So it's otherwise -- it's really not clear.  Can we
21    raise affirmative defense?  Can we not raise affirmative
22    defense?  What is the difference if you call it rescue or if you
23    call it -- I don't understand.
24              THE COURT:  Are you asking me to give you legal
25    advice?
```

Proceedings

```
 1             MR. MORDECHAY MALKA:  No.  Just clarification.
 2             THE COURT:  No.  I think you are asking for legal
 3    advice.  I don't give legal advice.
 4             MR. MORDECHAY MALKA:  It's not legal advice.
 5             THE COURT:  You have two standby counsels.  All right.
 6    You have my rulings, and you must abide by my rulings.  All
 7    right.
 8             MR. MORDECHAY MALKA:  Your Honor, the defendants
 9    want to argue that --
10             THE COURT:  Sir, we have a jury outside, and the jury
11    is in the jury room waiting to come in.  You keep going over
12    this time and time again.  I understand that you disagree with
13    my ruling.  All right.
14             MR. MORDECHAY MALKA:  Your Honor, I am not
15    disagreeing.  The Court -- the Court is disagreeing.  This is
16    much more worse.  The Court just contradict itself.  The
17    Court -- you said something here in the ruling, and now the
18    Court said totally different thing.  No one can know what I have
19    to do now.  I have to give an opening statement.  You cannot
20    simply tell me yes or no for my questions.  I am not allowed to
21    say I rescued the children from a domestic violence physical
22    abuse?  I am allowed to say the defendants --
23             THE COURT:  No, you cannot.
24             MR. MORDECHAY MALKA:  I cannot.
25             THE COURT:  You cannot.
```

1              MR. MORDECHAY MALKA:  I cannot say only word "rescue"

2  or I cannot at all raise --

3              THE COURT:  You can't say "rescue."  There is no

4  statutory defense for rescuing, and you didn't proffer any --

5              MR. MORDECHAY MALKA:  Your Honor --

6              (Cross-talk)

7              THE COURT:  You are asking me a question, and I try to

8  answer, and you want to -- you want it answered your way.  Okay.

9              MR. MORDECHAY MALKA:  I am very proffer now I can

10 put --

11             THE COURT:  Sir, the time for you to proffer has

12 already passed.

13             MR. MORDECHAY MALKA:  The Court never asked me to

14 proffer.

15             THE COURT:  Be quiet.  The time for you to proffer has

16 come and passed.  That was the basis for a motion *in limine*.

17 With all due respect, I don't know what other way to say it.

18 There are certain procedures that you have to abide by.  I

19 indicated to you at the very beginning that I was going to treat

20 you as I would treat any other attorney; and by the way, I have

21 told other attorneys to be quiet.  I think I have said it to the

22 government on one trial where I told them to be quiet.  I have

23 said it to defense attorneys.  I have said it in a civil case.

24 I have said it in a criminal case.  So just to be clear, I am

25 treating you just like you were an attorney because you

1   indicated that you were prepared to serve in that position, and

2   you were making an intelligent decision to do so.

3          So you asked the question plainly.  I answered it

4   plainly.

5          MR. MORDECHAY MALKA:  Your Honor, one second.  Let me

6   confer with counsel.

7          THE COURT:  For what?  You can confer with him as much

8   as you want throughout the trial.  We are moving forward.  I

9   have jurors in the jury room.  I need to get them in.  We are

10  going to start.  We are going to swear them in, and then we are

11  going to begin with my preliminary instructions, and then we

12  will begin with opening statements.

13          You are -- I want to make this clear.  You are showing

14  a pattern of delay and attempting to delay the proceedings, and

15  you are demonstrating to the Court that you have no intentions

16  to follow the Court's rulings -- I want to make that clear -- or

17  that you are incapable of following the Court's ruling.  All

18  right.

19          I am going to bring the jury in.  We will swear them

20  in, and we will begin.

21          THE DEPUTY CLERK:  Yes, Your Honor.

22          MR. MATITYAU MOSHE MALKA:  Just one small thing?  If

23  -- if -- I just want to share the time after -- the opening time

24  between me and my co-defendant so he will be able to take some

25  of the time from my opening to --

```
 1              THE COURT:  Sir, what I indicated was that each
 2   defendant has half an hour.  If you want to use less than half
 3   an hour, that's up to you.  You are both separate defendants.
 4   Mr. Mordechay Malka has 30 minutes.  You have 30 minutes.
 5              I didn't say anything about sharing minutes.  Did you
 6   hear me say that the defendants collectively have an hour to
 7   provide opening statements?  I never said that.  I asked each
 8   and every one of you how much time you need.  You each indicated
 9   to me how much time you needed.  I gave you 30 minutes each.  If
10   you want to use less than 30 minutes, that's on you.  Okay?  Is
11   that clear enough?
12              MR. MATITYAU MOSHE MALKA:  Yes, sir.
13              THE COURT:  Is it in plain language so that you
14   understand?
15              MR. MATITYAU MOSHE MALKA:  Yes.
16              THE COURT:  All right.
17              MR. MORDECHAY MALKA:  Your Honor, just one thing for
18   the record, and I want the record to be clear that I did, in
19   fact, provide in my first motion *in limine* hundreds of pieces of
20   evidence proving --
21              THE COURT:  Sir, are you attempting to reargue the
22   issues that we have already gone over time and time again?  Is
23   this another attempt to delay the proceedings?
24              MR. MORDECHAY MALKA:  No, Your Honor.
25              THE COURT:  Are you indicating to the Court that you
```

```
 1   unable to abide by my rulings?
 2              MR. MORDECHAY MALKA:  I didn't, Your Honor.
 3              THE COURT:  Then be quiet.  I indicated to you that we
 4   are going to have -- that we have jurors in the jury room; that
 5   I need to bring them out.  You keep rehashing things.  It's
 6   another pattern of your efforts to delay and obstruct the fair
 7   administration of justice, and I am making another record of it;
 8   that you have continually indicated to the Court that you have
 9   difficulties with my rulings; that you are unhappy with my
10   rulings, and yet you seem to be indicating that you are not
11   prepared to abide by my rulings.
12              Let's bring in the jury.
13              THE DEPUTY CLERK:  Yes, Your Honor.
14              Jury entering.
15              (In open court; jury present)
16              THE COURT:  Please be seated.  Everybody be seated.
17              Good afternoon.  Welcome back.  I hope you had a
18   pleasant lunch break.  We are ready to begin.  The first thing
19   that we are going to do is I am going to have my courtroom
20   deputy swear you in as jurors.
21              (Jury empaneled)
22              THE COURT:  All right.  Good afternoon.  Ladies and
23   gentlemen of the jury, you are now officially a jury.  There is
24   no higher function in our legal system, and in fact, other than
25   service in the military, there is no more important public
```

1  service that you can perform.  If we were not still in a

2  pandemic, whenever enter or leave the courtroom as a jury, the

3  parties and the audience would rise, the same as they do for me

4  because you are every bit as important as any judge.  However,

5  because we are still taking precautions to prevent the spread of

6  Covid-19, I have instructed the parties not to rise and to

7  otherwise minimize movement.  Please don't take any offense.

8  They are just complying with my instructions.

9          Let me reintroduce you to some of the people who are

10 here in the courtroom.  As I told you last week, my name is

11 Nelson S. Román.  I am a United States District Court Judge for

12 the Southern District of New York.

13         You have already met the defendants, Matityau Moshe

14 Malka, who is representing himself and assisted by standby

15 counsel, Joseph Vita and Howard Tanner; and Mordechay Malka, who

16 is representing himself and assisted by Susan Wolfe and Ezra

17 Spilke.  You have also met the prosecution team:  Assistant

18 United States Attorneys Sam Adelsberg, Jamie Bagliebter, Jim

19 Ligtenberg and Dan Tracer, and they will be assisted by

20 paralegal specialist Shannon Becker.

21         My courtroom deputy is Gina Sicora, and she is the

22 person who you will talk to most during the trial.  If you have

23 questions or difficulties, she is the person to consult.  My law

24 clerk presented today is Pablo Chapablanco.  His job is to

25 assist me in researching any legal issues that may come up

1  during the trial.

2           Today we have Darby, who is the court reporter, and

3  you are going to see different court reporters throughout the

4  trial.  Her job or their job is to take down everything that is

5  said at the trial so there is a record of what happened.  Also

6  here with us today are Steven Zager and Ruth Kohn, who will be

7  assisting at standby Yiddish interpreters.

8           Let me just say something that's not on the document

9  that you have.  From time to time, we may use an interpreter,

10 the Yiddish interpreter.  That's just to ensure that there is no

11 miscommunications.  All right.  You are not to hold that against

12 anyone.

13          As I previously mentioned, the charging instrument or

14 documents is called an indictment.  Mordechay Malka is charged

15 in three counts of the indictment, and Matityau Malka is charged

16 in two counts of the indictment.  Each count is a separate

17 offense or crime.  Each count must therefore be considered

18 separately by you, and you must return a separate verdict on

19 each count.

20          The first count charges that, from on or about

21 December 2018 to on or about March 2021, both Mr. Malkas

22 conspired -- that is agreed -- with each other and others, to

23 commit international parental kidnapping, to unlawfully use a

24 means of identification, and to enter by false pretenses the

25 secure area of an airport.

1          The second and third counts charge that Mordechay

2    Malka committed international parental kidnapping in December of

3    2018 or aided and abetted the same.

4          The fourth count charges Mr. Matityau Moshe Malka

5    attempted to commit international parental kidnapping in March

6    2019 or aided and abetted the same.

7          The defendants, Matityau Moshe Malka and Mordechay

8    Malka, deny all the allegations and have pled not guilty to all

9    of the charges against them.  It is the government that bears

10   the burden of proof in any criminal case and must establish the

11   defendants' guilt beyond a reasonable doubt.  All defendants are

12   presumed to be innocent, and they are not required to prove that

13   they are innocent.  They need not call witnesses and need not

14   take the stand.  If a defendant elects not to present any

15   evidence at trial, the jury cannot draw any adverse or negative

16   inference against the defendant based on that decision.  This is

17   the basic principle of our criminal justice system.

18         In our system of justice, judges and juries have

19   separate roles.  My job is to instruct you on the law that

20   governs the case.  I will give you some instructions now and

21   other instructions from time to time during the trial.  At the

22   end of the trial, I will give you detailed instructions about

23   the law you will need to apply when you deliberate.

24         Your job is to determine the facts based on the

25   evidence presented at trial.  You are the only finders of fact,

1    and your decisions on factual issues will determine the outcome

2    of the case.

3            You must not take anything I say or do as indicative

4    of what my opinion of the facts is on what your verdict should

5    be.  It is not my job to have an opinion regarding the facts.  I

6    don't have an opinion, and even if I did, it should not

7    influence you and must not influence you in any way.

8            You must pay close attention to all the evidence

9    presented.  Evidence consists of testimony of witnesses,

10   documents or other things that are admitted into evidence as

11   exhibits, or stipulations agreed to by the attorneys and/or the

12   parties.  A stipulation is simply an agreement between the

13   parties about facts or testimony.

14           Certain things are not evidence in the case, and you

15   must not consider them as evidence.  For example:  One, nothing

16   I say is evidence.  Two, statements and arguments by the parties

17   are not evidence.  They are simply arguments in which they will

18   tell you what they think the evidence proves and how they think

19   you should analyze the evidence.  You should give these

20   statements and arguments weight only to the extent they appeal

21   to your own common sense, and you should under no circumstances

22   consider them as evidence.

23           Three, questions by the parties are not evidence.

24   Only the answers given by the witness are evidence.  For

25   example, if a witness is asked:  It was raining that day, wasn't

1  it?  And the witness says, no, then based on that question and

2  answer, there is no evidence in the case that it was raining

3  that day.  No matter how convinced lawyer or the *pro se*

4  defendant sounded when asking the question.  Of course, you do

5  not have to accept a witness's answer at face value.  One of the

6  most important things you will do is assess the credibility of

7  witnesses, which I will talk to you about in a moment.

8          Four, objections to questions are not evidence.  The

9  parties are obligated to make an objection when they believe

10 some evidence being offered is improper under the rules of

11 evidence.  You should not be influenced by the objection or by

12 the Court's ruling on it.  If I sustain the objection, ignore

13 question and the answer that may have been given.  If I

14 overruled the objection, treat the answer like any other.

15         Any testimony that I exclude or strike or tell you to

16 disregard is not evidence, and you must not consider it.  Also,

17 if I instruct you that some evidence is only to be considered

18 for a certain purpose or for a limited purpose, you must follow

19 that instruction.

20         Finally, anything you may see or hear outside the

21 courtroom is not evidence, and should be disregarded by you.

22 You are to decide the case only on the evidence presented here

23 in the courtroom.

24         In deciding the facts of the case, you will have to

25 assess the credibility of witnesses -- that is, how truthful and

 1  believable they are.  How do you decide what to believe and what

 2  not to believe?  You are going to listen to the witnesses, watch

 3  them and observe them, and then decide just as you would decide

 4  such questions every day in your life, in your ordinary life.

 5  Did they know what they were talking about?  Did they appear to

 6  be honest, open and truthful?  Did they have any motive to

 7  falsify, exaggerate or distort their testimony?  Is there any

 8  reason to think they might be mistaken about what they are

 9  telling you?  How does their testimony square with the other

10  evidence in this case?  This is how you will determine what

11  testimony to accept and what testimony to reject.

12          In this case, the defendants have decided to represent

13  themselves in this trial.  They have a constitutional right to

14  do that.  Their decisions has no bearing on whether they are

15  guilty or not guilty, and it must not affect your consideration

16  of the case.

17          Because the defendants have decided to act as their

18  own lawyers, you will hear them speak at various times during

19  the trial.  They may make an opening statement and closing

20  argument and may ask questions of witnesses and make objections,

21  argue legal issues to the Court.  I want to remind you that when

22  the defendant speaks in these parts of the trial, they are

23  acting as lawyers in the case, and their words are not evidence.

24  The only evidence in this case comes from the witnesses who

25  testify under oath on the witness stand and from exhibits that

1  are admitted.  The defendants may be assisted by standby

2  counsel, and you may hear from their standby counsel during the

3  course -- during the case as well.  You are not to read anything

4  into whether it is the defendants or their standby counsel who

5  are making opening statements or closing statements, asking

6  questions of witnesses, making objections, arguing legal issues

7  to the Court.

8          As the trial proceeds, you may have impressions of a

9  witness or a subject, but you must not allow these impressions

10 to become fixed or hardened.  If you did that, you might

11 foreclose consideration of the testimony of other witnesses or

12 other evidence that may be presented after the witness you

13 heard.  This would be unfair to one side or other.  A case can

14 only be presented step by step, witness by witness until all the

15 evidence is before you.  Experience teaches that sometimes you

16 can hear a person give his or her version of an event which

17 sounds pretty compelling, and yet when you hear another person's

18 version of the same event, or even the same person who is

19 further questioned about that event, what seemed quite

20 compelling at first may turn out to be entirely weakened.

21         By the same token, if a person tells you something,

22 and it doesn't make much of an impression, but you later get

23 some information that supports what that person said, then what

24 didn't seem particularly compelling when you first heard it may

25 turn out to be considerably stronger.

```
 1              So remember that there may be another side to any
 2    witness's story, and there may be more to come on any subject.
 3    What I am saying is that you must keep an open mind until the
 4    trial is over and not reach any conclusions until you have heard
 5    all the evidence.
 6              To make sure that you decide the case only on the
 7    evidence and that you are not to be influenced in any way by
 8    anything that might occur outside the courtroom, I must give you
 9    a specific set of instructions.
10              First, until you retire to deliberate, you may not
11    discuss this case with anyone, even your fellow jurors.  After
12    you have heard all of the evidence and retired to deliberate,
13    you may begin discussing the case with your fellow jurors, but
14    you cannot discuss this case with anyone else until you have
15    returned a verdict, and the case is over.
16              Therefore, do not discuss this case with anyone while
17    the case is going on.  Refrain from being in the presence of
18    persons who may be discussing the case.  That includes even
19    friends and family members.  You may tell your friends and
20    family that you are a juror in a case, but do not tell them
21    anything else about the case until you have been discharged.
22              This is a public courtroom, and members of the public
23    may attend provided that Covid restrictions, including
24    distancing, are complied with.  If at any time you see a friend
25    or relative come into the courtroom, please let me know by
```

1  immediately giving a note to my courtroom deputy, Ms. Sicora.

2          If at any time during the course of trial any person

3  attempts to talk to you or to communicate with you about this

4  case, either inside or outside the courthouse, you should

5  immediately report such an attempt to me through my deputy, Ms.

6  Sicora.  If you must report such a fact or incident, you are not

7  to discuss it with your fellow jurors.

8          Parties in the case are not supposed to talk to jurors

9  during the trial, not even to offer a friendly greeting.  So if

10 you happen to see any of the attorneys or anyone else affiliated

11 with the government or defense outside this courtroom, they

12 will, and should, ignore you.  Please do not take offense.  They

13 will be acting properly by doing so.

14          I do not expect anything unusual to happen.  However,

15 if anything should happen involving any of you that is of an

16 unusual nature, or what you think is something the Court should

17 be told about, do not discuss it with any other juror.  Simply

18 give the clerk a note, or my courtroom deputy, to the effect

19 that you want to speak to me about it, and I can then hear what

20 it is and what you have to say.

21          Second, do not read anything in the newspapers or

22 online about this case, and do not listen to anything you see or

23 hear on the radio or TV.  I don't know whether there is going to

24 be any media coverage about this case, but if there is, you are

25 not allowed to watch, hear or read it until you are discharged

1   from jury service.

2           In addition, you must not conduct any independent

3   research about this case, the matters in the case, the

4   individuals or corporations involved in the case.

5           In other words, you should not consult dictionaries,

6   reference materials, or search the Internet websites or blogs or

7   use any other electronic tools to obtain information about this

8   case or to help you decide the case.  Please do not try to find

9   out information from any source outside the confines of this

10  courtroom.  You are also not to visit any locations mentioned

11  during the trial, nor are you to Google or otherwise research

12  any aspect of this case, including any of the underlying facts

13  regarding the allegations that are the subject of this trial.

14          Third, I know that many of you use cellphones, smart

15  phones, and the Internet, and other tools of technology.

16  However, I must tell you that you may not use these tools to

17  communicate electronically with anyone about this case.  This

18  includes your family and friends.  You may not communicate with

19  one another about the case on your cellphone, smart phone,

20  BlackBerry, or iPhone, through email, text messaging or Twitter

21  or through any blog or website, including Facebook, Instagram,

22  Snapchat, Reddit, LinkedIn, YouTube, and if there is any other

23  platform, it's prohibited.  You may not use any similar

24  technology or social media to communicate about this case, even

25  if I have not specifically mentioned it here.

1          All right?  You are also instructed not to use any of

2   these tools to learn anything about this case, me, my staff, the

3   defendants, the lawyers, prosecutors, or law enforcement

4   officers involved in the case.

5          Although I expect that you -- that all of you will

6   follow these instructions, I also expect that you will inform me

7   as soon as you know or as you become aware of another juror's

8   violation of these instructions.

9          Ultimately, your verdict must be based solely on the

10  properly admitted evidence you have seen here in the courtroom.

11  As I mentioned last week, because all jurors must base their

12  decision on the same evidence and everything that takes place in

13  the courtroom will be memorialized by our court reporters,

14  jurors may not take their own notes during the trial.  That

15  means that you should not have a writing implement such as a pen

16  or a pencil, notebook or any other note-taking tools in your

17  hands while you are in the courtroom.

18         These instructions probably do not surprise you, but

19  what may be surprising is that you may not discuss the case even

20  amongst yourselves while the trial is ongoing.  You will have

21  the opportunity, indeed the duty, to discuss the case amongst

22  yourselves later on, but that can only happen after all of the

23  evidence is in, and the case is given to you to discuss and

24  decide in the jury room.

25         All right.  This rule is important because experience

1  has shown that when people express an opinion about the case or

2  about a witness, they may become attached to that opinion and

3  their views may harden, and it is important that you keep an

4  open mind until you have heard all the evidence.  So don't talk

5  about the case even with each other until I tell you to do so.

6              This is a hard rule to follow.  I was a juror once,

7  and it was even hard for me to follow, but you have to do so

8  because you have to keep an open mind until all of the evidence

9  is in, and you have heard my instructions on the law.

10             Here is the bottom line -- the parties are entitled to

11  have you render a verdict in the case on the basis of your

12  independent evaluation of the evidence presented in this

13  courtroom.  Speaking to others about this case or exposing

14  yourself to information outside the courtroom would compromise

15  your fairness to the parties.  So that's why you can't talk

16  with, or learn anything about this case from any other source

17  other than what's presented in the courtroom at trial.

18             Finally, I am going to say a few words about trial

19  procedure.

20             First the parties will have the opportunity to make

21  opening statements to you under a set time limit, and they will

22  do that shortly.  As I already told you, these statements are

23  not evidence.  Their purpose is to give you an idea of what the

24  parties expect the evidence will show.  But remember, evidence

25  only comes from the witnesses and exhibits.

1           The government has the burden of proof so it will go

2      first.  The defendants have no burden of proof and do not have

3      to do anything at this trial.  So the defendants are not

4      required to give an opening statement, but if they choose to,

5      the defendants will go next.

6           Second, after opening statements, you will hear the

7      testimony of the witnesses.  The government's witnesses go

8      first.  Each witness will first give direct testimony, and then

9      he or she will be cross-examined by the other side.  Sometimes

10     there is redirect testimony and occasionally recross.  Again,

11     the defendants do not have to question witnesses, but may choose

12     to.  Documents or items will be received in evidence.

13          Following the government's case, the defendants may,

14     but are not required to, present witnesses and other evidence.

15     If they do call witnesses, those witnesses will be examined and

16     cross-examined just as the government's witnesses were.  If the

17     defendants choose to present evidence, it is possible that the

18     government would then present certain evidence in rebuttal.

19          From time to time during the trial it may become

20     necessary for me to talk with lawyers and the *pro se* defendants

21     out of the hearing of the jury, either by having a conference at

22     the bench when the jury is present in the courtroom -- what we

23     call a side bar -- or by calling a recess.  Please understand

24     that while you are waiting, we are working.  The purpose of a

25     conference outside your view is to keep relevant -- is not to

1  keep relevant information from you, but to decide certain

2  procedural issues or how certain evidence is to be treated under

3  the rules of evidence and to avoid confusion and error.

4         Third, after all of the evidence has been received --

5  I am sorry -- after all of the evidence has been received, each

6  side will have an opportunity to make closing arguments.  They

7  will review the evidence and make their arguments to you as to

8  what conclusions they think you should or should not draw from

9  the evidence.  These arguments also are not evidence, but they

10 may be helpful to you in reviewing the evidence during your

11 deliberations.

12        After these arguments, I will give you detailed

13 instructions as to the law that applies in this case, and you

14 must follow those instructions.  All right.  These instructions

15 to the jury are sometimes referred to as the jury charge.  After

16 the jury charge, you will go to the jury room to deliberate and

17 discuss the evidence in order to decide the facts and render a

18 verdict.

19        At the conclusion of the trial, I will tell you in

20 detail what the government must prove beyond a reasonable doubt

21 before you can find the defendants guilty.  For now, however, I

22 will just say that, as to each count charged, reasonable doubt

23 means a doubt based on reason, arising out of the evidence or

24 lack of evidence in the case.  If, after a fair and impartial

25 consideration of all the evidence, you can candidly and honestly

1  say that you do not have an abiding and firm belief of the

2  defendants' guilt, then you have a reasonable doubt, and in that

3  circumstance, it is your duty to find the defendants not guilty.

4  Keep in mind that the burden of proof remains at all times with

5  the prosecution and never shifts to the defendants.  The

6  government must convince you of the defendants' guilt beyond a

7  reasonable doubt.

8           All right.  A few housekeeping matters before we

9  begin.  Each morning you will report to the jury room at

10 9:00 a.m.  All right.  I am not sure if you were aware, but Ms.

11 Sicora is going to request some contact information from you so

12 that we have that in case there is a change in schedule or we

13 have to reach out to you.

14          We plan -- we will plan for our trial days to begin at

15 9:30 a.m., so it's important that you arrive by 9:00 a.m.  Due

16 to the Covid-19 pandemic, we will need time each morning for

17 logistics prior to trial, including ordering lunch -- we are not

18 doing that anymore, right?

19          THE DEPUTY CLERK:  No, we are not.

20          THE COURT:  Okay.  Now, we will take lunch breaks from

21 approximately 12:00 p.m. to 1:00 p.m., and we will be adjourning

22 for the day at 3:30 on Monday through Friday.  All right.  And

23 on occasion, that schedule may have to change based on what's

24 happening in the trial.

25          In other words, we will have trial -- we will expect

```
 1  to have trial Monday through Friday.  If you need a personal
 2  break before or after our lunch break, just raise your hand.
 3  But if you can wait until the lunch break or until the end of
 4  the trial, that would be helpful and grateful.  Please be on
 5  time after breaks and in the morning.  If you are late, you will
 6  be keeping everyone waiting.
 7         As I mentioned before, please keep your cellphones off
 8  during the trial proceedings.  Although you are permitted to
 9  turn your phones on during the meal breaks and lunch breaks,
10  please do not take any photographs while inside the courtroom or
11  courthouse.  Also, when you move between the jury rooms, lunch
12  rooms, and the courthouse, please bring your belongings with
13  you.  Due to the Covid-19 pandemic, jurors will be directed to
14  multiple rooms, and we cannot guarantee the rooms will always be
15  secured.
16         All right.  Those are my preliminary instructions to
17  you.  All right.  We will now begin with opening statements.  As
18  I said, the government bears the burden of proof.  They must
19  give an opening statement.  All right.  Since the defendants
20  have no burden, they don't have to give an opening statement,
21  but may give an opening statement if they choose to do so.  All
22  right.  Let's begin.
23         MS. BAGLIEBTER:  This is a case about a parent's worst
24  nightmare.  About a mother, Sara Helbrans, who in 2018, woke up
25  one morning to discover that two of her children, her
```

1  14-year-old daughter and her 12-year-old son were missing.

2  Gone.  Then three agonizing weeks passed while law enforcement

3  searched for the kids, and Sara waited in fear.

4        Ultimately, the kids, who were taken from New York,

5  were found in a hotel room in Mexico.  Thankfully, they were

6  safely returned to their mother, but Sara's nightmare was not

7  over.  Just three months later, the kidnappers tried again.

8  Again they tried to take Sara's kids from her and flee the

9  country, but this time law enforcement was able to stop them

10 before it was too late; and it was these two men:  Mordechay

11 Malka and Matityau Moshe Malka, along with other men from a sect

12 or group called Lev Tahor, who agreed to take these children

13 from their mother.

14        The kidnappers abducted two children from their

15 mother, hid them in Mexico for weeks, and after they were

16 caught, they brazenly tried to do it again.

17        And that's why we are here today.  And ladies and

18 gentlemen, it won't surprise you to learn that taking children

19 from their parents to another country is a serious federal

20 crime.

21        During this opening statement, I am going to talk

22 about two things:  First, what the government is going to prove;

23 and second, how we are going to prove it.

24        So what will the evidence show?  You will learn that

25 Sara Helbrans and her six children used to be part of a small

1 and insular sect called Lev Tahor.  Members of the group lived
2 together on a compound in Guatemala.  They lived an isolated
3 life-style and practiced a very strict form of ultra-Orthodox
4 Judaism, and Sara was not just any member of Lev Tahor.  Her
5 father founded the group, and when he died, it was her brother
6 who took over as its leader.

7 You will learn that the defendants, Mordechay Malka
8 and Matityau Malka, are also members of Lev Tahor, and that they
9 were loyal to Lev Tahor leaders.  So loyal that they were ready
10 and able foot soldiers willing to carry out the orders of their
11 leaders, even when that meant agreeing to kidnap children.

12 Now, how did this kidnapping come about?  In early
13 2018, while Sara and her children were still living in Guatemala
14 with Lev Tahor, the Lev Tahor leadership arranged for Sara's
15 then 13-year-old daughter to enter into an religious marriage
16 with an adult man.  This so-called marriage was of course not
17 legal since it was with a 13-year-old.  Sara spoke up against
18 the child marriage because she thought her daughter was too
19 young.  While girls got married young in the Lev Tahor
20 community, 13 was younger than was common at that time.

21 Sara's objections were overruled by Lev Tahor
22 leadership.  Following her daughter's wedding, Sara decided to
23 leave Lev Tahor where she had lived her whole life.  She came to
24 New York and managed to get all six of her children to New York
25 with her.

```
 1              After Sara and her children arrived, Sara got a court
 2    order granting her sole custody of all six kids.  As the
 3    recipient of this court order, and also as their biological
 4    mother, Sara had the legal right to have her children with her,
 5    and no one was permitted to take them.
 6              The Lev Tahor leaders were furious about this.  They
 7    knew about the court order, but in their eyes, the children
 8    belonged in Lev Tahor.  So members of Lev Tahor hatched and
 9    executed a brazen plan to kidnap Sara's daughter and one of her
10    sons; to hide them in Mexico and bring them back under the
11    control of the sect.  And you will learn that the defendants
12    were crucial activists in these plans.
13              Mordechay Malka acted as the boots-on-the-ground in
14    the December 2018 kidnapping, and then it was Matityau Malka
15    playing a similar role when they tried to kidnap the kids a
16    second time.
17              You will learn the details of these plans.  For the
18    December 2018 kidnapping, you will learn about meetings where
19    Mordechay Malka and other men devised the plan.  You will learn
20    how Mordechay Malka went to buy disguises for the children to
21    wear after they were abducted, and how he rented a car for the
22    kidnappers to use.  Then you will learn that at about 3:00 in
23    the morning on December 8th, Mordechay drove himself and Lev
24    Tahor leaders to a house in Upstate New York where Sara and her
25    kids were staying, and then Mordechay whisked the kids away in
```

1   the car under the cover of night.

2          Now, you will hear that the kids were not taken by

3   physical force.  Instead, the kidnappers went behind Sara's back

4   and lured the children into coming with them.  They snuck the

5   children cellphones, and using those secret phones, the

6   kidnappers convinced the children to go with them.

7          Once the kidnappers got the children out of the house,

8   they brought the kids to a nearby hotel where they had them

9   change into the disguises.  Then they drove to the airport.

10  Then the kids boarded a flight with Lev Tahor's top leader using

11  tickets with other children's names on them so that they could

12  trick airport security.  Three domestic flights later, the

13  children landed in Texas and then were driven across the border

14  to Mexico.

15         Once they got to Mexico, the kidnapped young girl was

16  delivered to her adult so-called husband.  The group settled

17  into a house in Mexico where they met up with other Lev Tahor

18  members, including the other defendant in the case, Matityau

19  Malka.

20         The kidnappers thought they had gotten away with it,

21  but they were wrong.  Thankfully, after a three-week mission,

22  law enforcement found the kids at a hotel in Mexico.  They were

23  then reunited with their mother and returned to New York.

24         But the nightmare was not over.  The kidnappers were

25  not deterred.  They were still adamant that Sara's young

1 daughter needed to be returned to the sect.  They didn't care
2 that she was a child, that Sara had custody, or that law
3 enforcement had already returned the kids to their mother once.

4         So just three months later, members of Lev Tahor tried
5 to have her kidnapped again, and this time it was Matityau Malka
6 who was executing the plan.  How did they do it this time?  With
7 the same tactics as in the December 2018 kidnapping.  Matityau
8 and other Lev Tahor members snuck the daughter cellphones
9 without Sara knowing, and Lev Tahor members even gave the
10 daughter mood-altering prescription pills.  When Sara learned of
11 the plot to take her children again, she began speaking directly
12 to the kidnappers.  The kidnappers threatened her and made clear
13 their intentions to kidnap Sara's children.

14         Fortunately, Sara notified law enforcement, and this
15 kidnapping attempt, this second effort to take the children from
16 their mother and flee the country, was stopped before it could
17 be completed.

18         That's what the evidence will show; that the
19 defendants participated in an audacious scheme to kidnap
20 children from their mother and bring them back to an isolated
21 sect outside of the country.  And when law enforcement caught
22 them once, they tried to do it again.

23         Now, how will we prove it?  We will prove our case
24 with video and documents and recordings and physical evidence
25 and testimony from witnesses who lived these moments firsthand.

Opening - Bagliebter

```
 1  You will see video of pieces of the kidnapping itself.  You will
 2  see the kids leaving the house in Upstate New York.  You will
 3  see them at a hotel where the kidnappers had them change into
 4  their disguises, and you will see them at the airport being
 5  smuggled out of the country.  You will see documents showing
 6  that Sara had custody of her kids.  You will see the rental car
 7  records showing that Mordechay Malka rented the getaway car, and
 8  you will see flight records showing that the children were
 9  traveling using other children's names.
10          And you will hear recorded calls from around the time
11  of that second kidnapping.  You will hear Lev Tahor leaders
12  threatening Sara and clearly asserting their intention to get
13  her daughter back to Lev Tahor.
14          You will also hear from multiple witnesses.  You will
15  hear from a law enforcement officer who investigated the
16  kidnapping, an airport security officer who was tricked by the
17  fraudulent documents, and a chemist who tested the pills that
18  were given to the daughter, and you will hear from Sara Helbrans
19  herself about this horrifying experience, about what it was like
20  to have her kids abducted in the middle of the night.
21          You will also hear from one witness who is a former
22  member of Lev Tahor and who actually helped carry out the
23  kidnapping.  This witness is a brother of one of the defendants
24  and a cousin to the other.  He will take you behind the scenes
25  and tell you how this kidnapping plot unfolded.
```

1           Now I want to say a word about this witness.  He was
2  part of the kidnapping scheme, but he also came forward shortly
3  after the kids were taken, and he assisted law enforcement in
4  finding the children.  Because of his assistance, he is not
5  being prosecuted for the crime, but because of his unique
6  position, he can give you an inside look into the planning and
7  the execution of this kidnapping.  And you don't have to take
8  his word for it.  His account of the kidnapping is corroborated
9  by all of the other evidence.  You will see the photographs,
10 receipts, videos and more that demonstrate that his testimony is
11 a reliable account of what happened.
12          Finally, you will see some of the defendants' own
13 words.  The defendants have filed legal documents, and they have
14 made statements in court where they admit to their roles in the
15 kidnapping.  For example, Matityau admits to giving Sara's
16 daughter cellphones to be used to communicate with Lev Tahor
17 members.  You will see those statements.
18          So that's some of what you will see and what you will
19 hear during this trial, and all of that evidence put together
20 will clearly show that the defendants and their co-conspirators
21 abducted two children in the middle of the night to remove them
22 from their mother and bring them back to the Lev Tahor
23 community.
24          At the end of this trial, we are going to ask you to
25 return a guilty verdict and to hold the defendants accountable

1  for their crimes.  Between now and then, I am going to ask you

2  to do three things:  First, pay close attention to the evidence.

3  Second, follow Judge Román's instructions on the law; and third,

4  use your common sense, the same common sense that you use every

5  day.  If you do those three things, then you will reach the only

6  verdict that's consistent with the evidence and with the law;

7  that the defendants, Mordechay Malka and Matityau Malka, are

8  guilty.

9            THE COURT:  All right.  Thank you, counselor.

10           All right.  Mr. Mordechay Malka, do you intend to give

11  an opening statement?

12           MR. MORDECHAY MALKA:  Yes, Your Honor, please.

13           THE COURT:  Okay.  Are you going to give it from the

14  podium?  Which podium?  Okay.  You may do so at this time, sir.

15           MR. MORDECHAY MALKA:  Good morning, ladies and

16  gentlemen of the jury.  My name is Mordechay Malka.  I am

17  27 years old.  I am citizen of this country.  I born and raised

18  here in New York.  However, most of my life I live abroad, other

19  countries, lastly in Guatemala where my community is.

20           I am husband to my wife Chaya, and she will be

21  testifying for you in this trial.  I am a father of five young

22  children, and I -- we all would like to welcome you all to our

23  jurors, our just judges and deciders of our life, liberty and

24  justice, and we appreciate you for your service.

25           Now, before I am going to dive in deeply in this

1  matter before you and to give you a fair preview, myself, my
2  family, my community, and this case of course, let me -- and of
3  course, we are -- why we are here today, in short, to give you a
4  fair preview, the true side to the story and my entire case.

5        So before that, let me please begin introducing
6  myself, introducing my presentation a little more to you.  As
7  you already know, I am proceeding *pro se* in this case.  This
8  means that I am representing myself.  And instead of counsel
9  representation, as is more common, I am aware of that.  However,
10 I want you to know that I am not a trained lawyer.  Even though
11 I spent maybe three years studying the law, and I practiced
12 before this Court as *pro se* for over a year now.  Still, I never
13 went to law school, nor have I any experience any ordinary
14 lawyer have.  So please note that I am not a professional.  I am
15 not an expert.  I am not a simple -- I am layman like you are,
16 and therefore, I meeting you, I find it very challengeable
17 sometimes, and some might find it even as a risky action of my
18 self-representation.

19        In addition, if it's not enough trouble to you and to
20 me, of course, my English is not even my first language.
21 English is my fourth language, not good in English.  And this
22 might be very challengeable for me to fairly communicate with
23 you and to present my case.  You might wonder if -- you might
24 wonder why don't -- I don't accept counsel to proceed?  Why take
25 the risk to represent myself only.

```
 1              THE COURT:  All right.  I am sorry.  I am going to
 2   interrupt you.  The purpose of an opening statement is to give
 3   an overview of what it is that you hope to either prove or to
 4   call into question the government's case, but it's not an
 5   opportunity for you to kind of give testimony to the jurors.
 6   All right.  It's supposed to be like a preview of the evidence
 7   of what you anticipate the evidence is going to be or what it is
 8   that you hope to prove, or what you think the government may
 9   have challenges in their case.
10              The issue of whether or not the defendant has chosen
11   to proceed pro se is not one for your consideration.  All right.
12   He has a legal right to do so.
13              The other thing that I am going to tell you is that we
14   have an interpreter present, a Yiddish interpreter present at
15   all times that's available to you.  Each of the defendants can
16   have the option of using an interpreter.
17              So you must restrict your comments to the parameters
18   that I previously spoke to you about what an opening statement
19   is.  It's to give a preview of what the evidence is going to be
20   or what you anticipate it's not going to be.  All right.  It's
21   not for you to give testimony to the jury.  All right.  You have
22   talk about what it is that you hope to prove or disprove or what
23   challenges the government may have.  All right.  You may
24   continue.
25              MR. MORDECHAY MALKA:  Thank you, Your Honor.
```

```
 1              What -- so -- the jurors, I will continue.  The way I
 2   intend to proceed for you is in entire trial is to be very open
 3   with you guys, very honest.  I will myself testify.  You will
 4   see the way I proceed.  I will never hide anything from you.  I
 5   will try to tell you my -- you will see that the way I proceed
 6   that to be truthful, very truthful, to tell you the truth, the
 7   whole truth, and nothing but the truth.
 8              And in fact, I have nothing else to show to you, only
 9   the truth, and I am not going to lie.  No limitations, no
10   misleadings, but entire truth.  Knowing that I truly believe
11   that if you are -- if I am honest and fully truthful, you don't
12   need counsel, and I feel I can proceed in front of you even
13   without the advantage of counsel.  As King Solomon says, as the
14   word -- the mirror of the word of a person is a person's face is
15   the same as a heart to a heart.  Still I will note that even
16   though I understand you might find it a little challengeable, I
17   want to apologize to you regarding the challenges you might face
18   regarding my representation.
19              And I will try my best to ease up this hardship burden
20   from you.  And in fact, my intention is only in this case, it's
21   my goal and all your goal to discover the truth, the real truth
22   and achieve justice.  This might seem by some a very innocent
23   sentence, a very easy mission.  But at least we have now very
24   simple.  Just close your eyes and trust everything, but the
25   members of the service of the jury, as all of you know from your
```

Opening - Mordechay Malka

1  own life experience, this is the one hardest thing to achieve on

2  this planet, it is justice.  If there is one hardest thing to

3  achieve is justice.  If there is two hardest things to achieve

4  in this planet, we can say to discover the truth and to achieve

5  justice.

6          This was always true.  It was -- this is one thing any

7  student of history knows that always this was the number one

8  issue.  So to discover the true justice is a hard work, a

9  challengeable work.  It's not easy.  It's not easy.  You have to

10 focus.  You have to try to understand, especially with my case

11 with not -- with all the challenges about the language and about

12 our personality.  And of course, I truly believe, as I said, I

13 am convinced that this is the only reason why you are here

14 today.  This is one point of the subject that all of you, all of

15 you sharing the same goal.

16         And but, unfortunately, my brothers and sisters of the

17 jury, as you are aware and discover in this trial, this was not

18 the case for the government, for the prosecution.  Those who

19 were supposed to look and investigate and discovered absolute

20 truth failed to fulfill their duty, and even didn't want to know

21 the truth.  They never even tried to look for the full truth.

22 Those who were responsible to serve justice through the past,

23 not only didn't follow it, but forgot for society and for the

24 American people, let alone as is mentioned in the Bible justice,

25 justice for the soul, but instead, sadly, corrupt officials put

```
 1   all their efforts and power and worked and still working --
 2            MS. BAGLIEBTER:  Objection.
 3            MR. MORDECHAY MALKA:  -- to conceal the truth from you
 4   guys.  Dangerous.
 5            MS. BAGLIEBTER:  Objection, Your Honor.
 6            THE COURT:  There is an objection.  All right.
 7            You can't make arguments.  You can't make arguments,
 8   sir.  All right.  Unless you have to -- you have to go, review
 9   the evidence that you anticipate you are going to present, all
10   right, and give a purview -- a preview of what your case is
11   going to be about.  All right.
12            You may also talk about the witnesses in the
13   government's case if you choose to do so.  All right.  But this
14   is not the time to make arguments, sir.
15            MR. MORDECHAY MALKA:  Thank you, Your Honor.
16            Ladies and gentlemen, let's start discussing the
17   details of my case.  Let me ask you before just obviously, what
18   is the case about?  What does this meant that the government put
19   so much drama and manipulation?  Even in their opening, let
20   alone for three years now, trying to push this case to the top,
21   the type of our case, when in fact, the charges are among the
22   lowest charges in federal court.
23            MS. BAGLIEBTER:  Objection.
24            THE COURT:  I am going to allow him to proceed.
25            And I am going to just indicate to you that you
```

Opening - Mordechay Malka

```
 1  proceed at your own peril.  All right?  Continue.
 2          MR. MORDECHAY MALKA:  Dangerous.  The evidence in this
 3  trial will prove you that this is -- evidence in this trial that
 4  will provide -- you will be provided all the facts and even by
 5  the government will prove you that this is not the case of
 6  kidnapping, or similar or the same.  The evidence will prove you
 7  this is not even a case of any offense against any person or
 8  society or any violation of the law, morality or social values.
 9          This is not an ordinary case at all.  This is not a
10  case anyone of you ever dreamed of.  This is not even a case one
11  of you will believe not even happened in modern times, not in
12  the United States and our Constitution.  This is a case of
13  innocent people, caring family members, who devoted and
14  sacrificed themselves to provide help, to help these kids.
15          MS. BAGLIEBTER:  Objection.
16          THE COURT:  I am going to allow him to continue.  The
17  objection is overruled.
18          MR. MORDECHAY MALKA:  This is a case of innocent
19  people, caring family members, who the government are accusing
20  them for allegedly devoting themselves to what?  To provide help
21  to help these kids, the abused hostage children for --
22          MS. BAGLIEBTER:  Objection.
23          THE COURT:  You are to disregard the last statement
24  that was made with respect to the conditions of the children.
25  All right.  I am instructing the jurors to disregard that
```

1    statement, and that is pursuant to my prior rulings.

2            Mr. Mordechay Malka, I must warn you of my prior

3    warnings to you.  Okay?  Continue, but you must abide by my

4    rulings.  Do you understand?

5            MR. MORDECHAY MALKA:  Thank you, Your Honor.

6            THE COURT:  Okay.

7            MR. MORDECHAY MALKA:  The government starts the case,

8    the story, in December 2018.  We will start from the beginning.

9    Let us -- let me start one area, just one area.

10           Those two children, two innocent children, they lived

11   peacefully, happily in their home in Guatemala, in the

12   community, the community Lev Tahor, our community where I am

13   from.  What is Lev Tahor about?  What is my community about?

14   The community of peaceful men, women and children have only one

15   goal in their life:  To practice old-fashioned Judaism.  Only

16   old-fashioned Judaism.  That's the only thing they are doing.

17   Peaceful community.  Very happy community.

18           One day the parents -- one parent decided to leave,

19   and since then, the nightmare start for those children.  Those

20   children were violently removed --

21           MS. BAGLIEBTER:  Objection.

22           THE COURT:  Mr. Malka, I am going to remind of my

23   prior rulings.  You must abide by my prior rulings.  All right?

24           You have to disregard the last statement, the

25   reference to a violent removal.  You must strike that from your

1  minds.

2          MR. MORDECHAY MALKA:  Those children were being

3  brought here to New York, a foreign country.  They never was

4  here.  They was abused here.

5          MS. BAGLIEBTER:  Objection.

6          THE COURT:  I am sorry?

7          MR. MORDECHAY MALKA:  I would like to have a side bar,

8  please.  Or did the Court overruled the objection?  I can

9  continue.  As the Court knows, we already discussed these

10  principles, the principle of affirmative defense.

11          THE COURT:  I am not going to interrupt the opening

12  statements.  I am going to have the jurors excluded from the

13  jury room -- or from the courtroom at this time.  All right.

14          THE DEPUTY CLERK:  Yes, Your Honor.

15          (Jury excused)

16          (In open court; jury not present)

17          THE COURT:  Mr. Mordechay Malka, I am going to ask you

18  to take a seat at the table.  All right.

19          I am going to read back into the record what I

20  previously instructed you because it's apparent to me that you

21  did not hear my instructions.  All right?  This is what I

22  previously read into the record.  All right.

23          Mr. Matityau Moshe Malka and Mr. Mordechay Malka,

24  during our final pretrial conference, you assured me that each

25  of you was willing to abide by the Court 's rulings on the

1  evidence, the rules of procedure, the courtroom protocol.  I

2  reminded you that appropriate courtroom behavior and decorum was

3  essential to the administration of justice, and I have both the

4  obligation and authority to manage the proceedings to ensure

5  fair and disposition of this case.  I warned you that I would

6  not tolerate any disrespectful behavior from you or from anyone

7  else.

8         As I said, the First Amendment does not give you the

9  right to say anything you want at any time or to speak to the

10 jury when you are not testifying, or to testify in matters that

11 I have ruled to be inadmissible in evidence.  That's what I

12 previously told you.

13        All right.  I had previously warned that if you failed

14 to comply with this order or if you engaged in disorderly,

15 disruptive and disrespectful behavior, the Court would -- that I

16 would consider such behavior as a waiver.  I want to emphasize

17 the word because I don't think you understand what it means, but

18 I am going to ask -- I am going to ask the Yiddish interpreter

19 to interpret it.

20        Can you please interpret for me the word "waiver"?

21 Can you say it in Yiddish to both Mr. Mordechay Malka and to

22 Matityau Malka?

23        (Interpreter complies)

24        THE COURT:  All right.  Do you understood what the

25 word "waiver" means, Mr. Mordechay Malka?

```
 1              MR. MORDECHAY MALKA:  Yes, Your Honor.

 2              THE COURT:  All right.  And Matityau Malka, you

 3   understand what the word "waiver" means?

 4              MR. MATITYAU MOSHE MALKA:  Yes, Your Honor.

 5              THE COURT:  All right.  I indicated that there would

 6   be a waiver of your right to represent yourself and possibly

 7   also a waiver of the right to be present in the courtroom.

 8   That's what I said.  Yet despite that, you just argued

 9   factual -- you made factual arguments before this jury, which I

10   told you you were precluded from doing so.  The comments that

11   you made during your opening statement are contrary to my

12   rulings on the motion *in limine*.

13              What I need to know is if you intend to continue to

14   disregard my prior rulings, and continue in this course of

15   making comments and/or making arguments or arguing points of law

16   and/or facts, which I have precluded?

17              MR. MORDECHAY MALKA:  Your Honor, of course I intend

18   to obey, and I did obey the court.  Can the Court point me --

19              THE COURT:  I don't think you understand me.  What I

20   have just said is that you have disobeyed my rulings, sir.  I

21   don't know what other way to say it.  I am making an affirmative

22   determination that you have disobeyed my prior rulings.  Not

23   only did I issue a written opinion, which I assumed that you

24   read, which standby counsel represented to me that they obtained

25   and provided a copy to you; but I also took the opportunity to
```

1   highlight, highlight those portions of my rulings which

2   precluded the government from doing certain things, and also

3   precluded the defendants from doing certain things or saying

4   certain things or arguing -- making certain arguments at this

5   trial.

6          So I want the record to be clear.  You have disobeyed

7   or conducted yourself in a manner that is contrary to my prior

8   rulings.  You have disregarded the Court's prior rulings.  I am

9   going to ask you one more time:  Do you intend to continue to

10  disobey or disregard the Court's prior rulings?

11         MR. MORDECHAY MALKA:  Your Honor, I will obey all of

12  your rulings.  Just point me out what I did today so I know for

13  next time.

14         THE COURT:  I am not -- I am sorry.  I am not holding

15  your hand.  I am not your mother.  I am not your father.  That's

16  not what I am here for.  All right.  I outlined to you in very

17  simple terms that you could not do certain things.  It's

18  apparent to me that you are reluctant to follow those

19  instructions.

20         MR. MORDECHAY MALKA:  Your Honor, my -- with all due

21  respect, my whole opening statement was absolutely clearly

22  consistent with your ruling.  I didn't violate any of your

23  rulings, Your Honor.

24         THE COURT:  I beg to differ.  I think the government

25  will beg to differ, which is why they objected on not one, but

1  on several occasions.

2        MR. MORDECHAY MALKA:  Your Honor, this is -- this is

3  all goes to our intent.  How can I explain to the jury that my

4  intent was not to obstruct parental rights if I am not allowed

5  to tell them what the story was?  How happened to be that I --

6        THE COURT:  I am not ready to hear your strategy, with

7  all due respect.  That's not my job.  I am a neutral arbitrator

8  of this matter.  That's not my job to tell you how to

9  strategize, what arguments to put forward.  I can't do that.  If

10  I was to do that, I can almost assure you that the government

11  would be objecting.  I can't tell you how to try your case, how

12  to defend your case.  That's not my job.  I can't tell you what

13  opening remarks to make because it's not my job.  But my job is

14  make sure that proper procedures are followed.  All right.

15        MR. MORDECHAY MALKA:  Your Honor, but the Court cannot

16  interfere in the defense, method of defense.  I mean, this is --

17        THE COURT:  Sir --

18        MR. MORDECHAY MALKA:  That's the against the law.

19  This is my defense is --

20        THE COURT:  It's clear to me that you fully do not

21  understand the Court's prior rulings, and it's clear to me that

22  you cannot adhere to the Court's prior rulings.

23        MR. MORDECHAY MALKA:  I never say -- I never said.  I

24  only say I will abide your rulings.  I asked you for a

25  clarification, Your Honor.  I will continue to obey all of your

1   rulings, but just --

2          THE COURT:  I am going to ask again.  Do you

3   understand my prior rulings, and will you be able to abide by my

4   prior rulings?

5          MR. MORDECHAY MALKA:  Your Honor, definitely I will,

6   as my understanding is, Your Honor, but --

7          THE COURT:  Okay.  No, not as your understanding, as I

8   explained them to you.  I told you that you were precluded from

9   making certain statements and oral statements.  I said that.  I

10  highlighted them.  It is apparent to me that you have chosen to

11  interpret those rulings differently than that which the Court

12  stated and which the Court outlined.

13         Is there anything that the government would like to

14  say at this time?

15         MS. BAGLIEBTER:  Just a minute, Your Honor.

16         (Pause)

17         MR. TANNER:  Excuse me, Your Honor?  My client just

18  needs some water.  So could we take a --

19         THE COURT:  Hold on a second.  Hold on a second.

20         MR. TANNER:  He could just be excused to find a bottle

21  of water?

22         THE COURT:  Give him a second.  Here.  Mr. Ligtenberg,

23  we have one.  Okay.

24         MR. MATITYAU MOSHE MALKA:  Very nice.  Thank you very

25  much.  Appreciate it.

```
 1              MR. TANNER:  Yes.

 2              THE DEPUTY CLERK:  Sure.

 3              THE COURT:  All right.

 4              MS. BAGLIEBTER:  Your Honor?

 5              THE COURT:  Yes.

 6              MS. BAGLIEBTER:  If I may?

 7              THE COURT:  Yes, you may.

 8              MS. BAGLIEBTER:  We share the Court's concerns about

 9  the defendants' willingness to abide by the Court's order.  It

10  is precisely why we raised this issue this morning was that so

11  the Court could be clear as it was before openings started of

12  what could not be discussed.  And as I mentioned this morning,

13  our concern, our primary concern is about information that the

14  Court has precluded getting to the jury because you can't unring

15  that bell, and the jury has now heard more than once about abuse

16  that Your Honor said should not be before the jury.

17              And so, at a minimum, when the defendant has finished

18  his opening statement, we will be asking for a limiting

19  instruction to the jury before they leave today making clear

20  that that was an improper comment that they were precluded from

21  making and that jury should not consider in any way those

22  references.  And, you know, a limiting instruction feels a

23  little bit like the best we can do right now, but we litigated

24  these exact issues in motions *in limine* to avoid precisely this

25  situation that we are in right now, and we had a lengthy
```

1  discussion about this this morning to avoid precisely the

2  situation we are in right now.  And yet, the defendant did

3  exactly what the Court said he cannot do, and the Court said

4  that in its May 11th opinion, and as the Court has pointed out,

5  reiterated that with precise clarity today, and yet, it's clear

6  that the defendant is saying he interprets the order

7  differently, and therefore, he is going to say what he thinks

8  the order allows him to do.  But Your Honor has made clear that

9  that's a misinterpretation of your opinion, and of course, it's

10  your opinion here that controls.

11        MR. MORDECHAY MALKA:  Your Honor, the Court -- you can

12  ask the reporter to read back the Court -- the entire transcript

13  today the Court never says one time even there is ten times

14  again and again repeatedly the Court never said that I cannot

15  talk about the abuse of children, never.  Not the defense --

16        THE COURT:  I take it that you weren't paying

17  attention.

18        MR. MORDECHAY MALKA:  I am asking you, Your Honor.

19  Did you said I am not allowed to say anything about abuse?  Was

20  that my intent?  To show my intent was not to obstruct, but to

21  stop this abuse of the children?  That's only my intent was.  I

22  mean, is there any way I cannot allowed to say it?  You never

23  said it.  You never said it, right?  Not in your rulings.  Not

24  only today.  Okay.  So I know the words I was talking about.

25  You never said it.

1              And actually, Your Honor, in the last trial also they

2    did were allowed to argue it.  And no one --

3              THE COURT:  You're conflating issues of motive and

4    intent, sir.

5              MR. MORDECHAY MALKA:  What's that?

6              THE COURT:  You're conflating issues of motive and

7    intent.

8              MR. MORDECHAY MALKA:  All right.  So can the Court

9    explain what is intent --

10             THE COURT:  I am not your legal advisor, sir.

11             MR. MORDECHAY MALKA:  All right.  The Court --

12             THE COURT:  You need to stop interrupting me.

13             MR. MORDECHAY MALKA:  Sorry, Your Honor.

14             THE COURT:  I am just going to say that you talk too

15   much.  You are your worst -- worst enemy.  You are your own

16   worst enemy, sir.  I don't know what other way to say it.

17             MS. BAGLIEBTER:  Your Honor, to assist the defendant,

18   the relevant pages of your motion *in limine* are pages 37 to 41

19   at subsection four that discusses the distinction between the

20   issues of motive and intent and makes very clear that -- and I

21   think this has been clear throughout our pretrial proceedings --

22   this trial is very different from the October 21, 2021, trial.

23   That trial included a question as to what the dominant motive

24   was in removing the children.  That question is not at issue in

25   this trial.

Proceedings

```
 1            THE COURT:  All right.
 2            MR. MORDECHAY MALKA:  Your Honor, Your Honor, I will
 3   quote from your opinion.  You said --
 4            THE COURT:  No, you won't.
 5            MR. MORDECHAY MALKA:  What?
 6            THE COURT:  No, you won't.
 7            MR. MORDECHAY MALKA:  All right.
 8            THE COURT:  I am going to go over the rulings that I
 9   made so that it's clear to you.  I am going to ask you once
10   again to pay attention.  Don't write.  Don't do anything.  If
11   you don't understand a word that's said, you need to let me
12   know.  Do you want the Yiddish interpreter next to you, sir?
13            MR. MORDECHAY MALKA:  No, Your Honor.
14            THE COURT:  All right.  I don't want you to come back
15   later on and argue that you don't understand what I said or that
16   it wasn't said clearly enough or in plain English enough.
17            All right.  First, the Court ruled that evidence of
18   the Malkas and their co-conspirators' prior bad acts under
19   Federal Rules of Evidence 404(b), evidence of Lev Tahor's
20   practices of arranged marriages for the purpose of procreation
21   are admissible.
22            However, the Court also precluded the government from
23   presenting any evidence that relates to Lev Tahor's sexual
24   practices, such as, for example, as the government relates in
25   the S3 Superseding Indictment, providing a tutorial before
```

1  marriage instructing them on when and how to have sex with their

2  spouses, among others.

3          Next, the Court ruled that statements from the Malkas'

4  co-conspirators are admissible as long as the government

5  fulfills the necessary prerequisites to present such statements.

6          Are you following this, sir?

7          MR. MORDECHAY MALKA:  Yes, Your Honor.

8          THE COURT:  Is there anything that I have said so far

9  that you don't understand?

10         MR. MORDECHAY MALKA:  The last thing, I'm not sure.

11         THE COURT:  You are not sure?  Okay.  So in that case,

12 I am going to have the Yiddish interpreter sit next to you.  So

13 that you can't later say that you didn't understand what I have

14 said, and I am going to ask the Yiddish interpreter to

15 simultaneously interpret what I said.  Who can assist me?

16         I want to the record that reflect that previously you

17 indicated that you didn't need the Yiddish interpreter and that

18 you fully understood what I said.

19         MR. MORDECHAY MALKA:  The Court knows it's not about

20 the English.  It's about --

21         THE COURT:  Don't assume what I know or don't know,

22 sir.  Do you want me to start at the beginning?

23         MR. MORDECHAY MALKA:  No.  Just the last sentence,

24 please.

25         THE COURT:  The Court ruled that statements from

 1  Malkas' co-conspirators are admissible as long as the government

 2  fulfills the necessary prerequisites to present such statements.

 3          The Court ask that the government seek the admission

 4  of business records through written certifications under Federal

 5  Rules of Evidence 803(6) and 902(11), as long as the government

 6  establishes the relevance of those business records and lays the

 7  proper foundation for them.

 8          You need to pay attention now, sir.  The Court

 9  precluded the Malkas from raising any argument challenging the

10  validity of the family court order granting the mother sole

11  custody over the minors or the propriety of how such order was

12  issued.  This is because this is a legal, not a factual question

13  that the family law court has already ruled on, and which this

14  Court cannot review.

15          Understood so far?

16          MR. MORDECHAY MALKA:  Yes.

17          THE COURT:  The Court also precluded the Malkas from

18  arguing that the mother lacked parental rights over the minors.

19  This is because as a matter of law, one, that the family court

20  order is valid, and two, it is indisputable that the mother is

21  the biological mother.  The biological mother enjoys the right

22  to physical custody of her children unless and until such right

23  is terminated by law.

24          The Court also precluded the Malkas from making any

25  alleged misconduct from the mother and the Kasho community or

Proceedings

```
 1   how they allegedly abducted the minors to bring the United
 2   States -- and to bring them to the United States and
 3   fraudulently procure the family court order.
 4           The Court noted that the Malkas may only raise such
 5   misconduct so long as they can show there is evidence indicating
 6   that they were physically abused; that they physically abused
 7   the minors or some issue which is not otherwise precluded in the
 8   written opinion.
 9           The Court also precluded the Malkas from arguing that
10   they were rescuing the minors because such argument is
11   irrelevant.
12           All right.  I also precluded the Malkas from arguing
13   that they and their co-conspirators were being persecuted for
14   their religious views because they failed to produce any
15   evidence of discriminatory intent or effect.
16           I also precluded the Malkas from arguing that because
17   the marriage between Jacob Rosner and Minor-1 is predicated on
18   religious beliefs that the same constitutes a defense to the
19   charges against them.
20           I also precluded the Malkas from raising any argument
21   challenging the legal validity of the marriage between Jacob
22   Rosner and Minor-1.
23           I precluded you from organizing that the minors
24   consented to travel out of the country excused your offense
25   conduct.
```

```
 1            I allowed the use of the terms "kidnapping" and
 2   "abduction" and "victims" by the government at trial.
 3            Now I want you to turn to page 39 of my decision so
 4   that it's clear.  But here, while the Malkas claim that the
 5   minors were frequently treated with verbal, physical and sexual
 6   assaults, they provide no evidence whatsoever to substantiate
 7   their claims.
 8            MR. MORDECHAY MALKA:  Your Honor, I don't follow.
 9   Which page is it?
10            THE COURT:  39.
11            MR. MORDECHAY MALKA:  This is not --
12            THE COURT:  Hence, insofar as second affirmative
13   defense is somehow applicable to the Malkas -- who were not
14   themselves fleeing an incidence or pattern of domestic violence,
15   but who instead claim to have been aiding the minors to do so --
16   absent any evidence supporting their claims of abuse, they
17   cannot assert that defense or argue it to the jury, which is
18   what you did, sir.
19            MR. MORDECHAY MALKA:  Mine are different page numbers.
20   That's why I can't follow.
21            THE COURT:  I just read it into the record.  Were you
22   paying attention?
23            MR. MORDECHAY MALKA:  My --
24            THE COURT:  Were you paying attention?
25            MR. MORDECHAY MALKA:  Yes.  I following -- I didn't
```

1  follow.

2          THE COURT:  I just read it into the record.  Were you

3  paying attention?

4          MR. MORDECHAY MALKA:  Your Honor, I am trying to find

5  it in the papers, and I didn't have --

6          THE COURT:  You don't have to.  All you have to do is

7  listen.  Now, Mr. Zager, from what I understand, who is a

8  Yiddish interpreter, just interpreted it for you, did he not?

9          MR. MORDECHAY MALKA:  Yes, he did.  But I understand

10  what you say even without him.

11          THE COURT:  I am sorry?

12          MR. MORDECHAY MALKA:  I understand English even

13  without him, Your Honor.  I understand English.  I listen to you

14  directly, not to him because English is easier for me now to

15  understand.

16          THE COURT:  Okay.  So you, in essence, have violated

17  my prior ruling.

18          MR. MORDECHAY MALKA:  Can the Court please make sure I

19  can have a copy of your ruling?  I am trying to get another

20  copy.

21          THE COURT:  I am sorry.  You know, with all due

22  respect, I have given you copies.  And your standby counsel has

23  given you copies.  I have seen -- I have seen standby counsel

24  hand you a copy.

25          MR. MORDECHAY MALKA:  But I don't have the correct

1  page numbers.  That's why I am not able to follow.

2          THE COURT:  But I have read it into the record.  This

3  is not the first time I read it into the record.

4          MR. MORDECHAY MALKA:  Okay.

5          THE COURT:  With all due respect, the decision is

6  written in simple language.  You just indicated you understood

7  what I just said, so I am not quite sure why you choose to

8  violate my prior rulings.

9          I am going to warn you one more time.  If you continue

10 in this path, if you continue to violate my prior rulings, I

11 will have no choice but to revoke your *pro se* status.  Be

12 forewarned.

13         MR. MORDECHAY MALKA:  Your Honor, I think I just got

14 the copy.  I read it.  I read it.

15         THE COURT:  Sir.

16         MR. MORDECHAY MALKA:  Yes.

17         THE COURT:  Be forewarned.  Did you hear my warning?

18         MR. MORDECHAY MALKA:  Yes, I did, Your Honor.

19         THE COURT:  Okay.

20         MR. MORDECHAY MALKA:  But, Your Honor, it says here

21 clearly that if they -- if we have evidence, just absent

22 evidence.

23         THE COURT:  Sir.

24         MR. MORDECHAY MALKA:  We do have evidence.  Evidence

25 will indicate it.

1           THE COURT:  All right.  I precluded you subject to you

2    presenting such evidence.  Nothing has been presented.  I

3    precluded you from arguing that because at the time your motions

4    were presented, you had no such evidence.  All right.

5           MR. MORDECHAY MALKA:  Your Honor, so we have the

6    evidence for this.

7           THE COURT:  Okay.  You should consult with your *pro se*

8    counsel -- your standby counsel.  I don't know what more to tell

9    you except I have made rulings.  You are obligated to abide by

10   them.  You are demonstrating a pattern of not being able to

11   follow my instructions and/or prior rulings.  So you are being

12   warned not once, but twice again.

13          MR. MORDECHAY MALKA:  Your Honor, I want to refer with

14   standby counsel, please.

15          THE COURT:  You should be conferring with standby

16   counsel.  You have been conferring with standby counsel.

17          Okay.  I want to put on the record that Mr. Mordechay

18   Malka's disruptive behavior and inability to follow the Court's

19   instructions has caused tremendous delay in this proceeding.  It

20   is now five after 4:00.  All right.  I have another hearing that

21   I am scheduled to begin.  All right.  I am going to -- I am

22   going to adjourn this trial until Monday morning.

23          MR. MORDECHAY MALKA:  Your Honor, I just finished to

24   consult with counsel.

25          THE COURT:  I am listening.  I am all ears.

1          MS. BAGLIEBTER:  Thank you.  Before -- I understand

2   the time sensitivity given that you have a 4 o'clock hearing,

3   but before we adjourn for the weekend, we do think that the jury

4   needs to here a limiting instruction that they are not -- that

5   the statements with respect to abuse of the children -- right,

6   alleged abuse, that the statements made by the *pro se* defendant

7   about alleged abuse of the children are not to be considered,

8   you know, were the results of a sustained objection and are not

9   to be considered by the jury at all.  And they are not to

10  question why the statements were made at all.  It's very hard to

11  imagine that the jury isn't thinking now exactly what your order

12  precluded them not to think, but I think they do need a limiting

13  instruction making clear that they shouldn't be considering the

14  allegations of abuse that were made; that it's not proper for

15  them to consider it at all, and they should -- it should be as

16  if they never heard it.

17         MR. MORDECHAY MALKA:  Your Honor, is it even regarding

18  intent because in the government's motion *in limine* they said

19  that for intent?

20         THE COURT:  I don't understand what you are saying.

21  All right.  I don't think you are paying attention to what the

22  government attorney just said.  They are asking for a curative

23  instruction because of your failure to abide by the Court's

24  ruling.  That's what they are asking for.  Do you understand

25  that?

```
 1            MR. MORDECHAY MALKA:  Yes.  I understand what you
 2   said, Your Honor.
 3            THE COURT:  Okay.
 4            MR. MORDECHAY MALKA:  I don't agree, but I understand.
 5   Yes.
 6            THE COURT:  Like I said, you have a standing objection
 7   to just about everything I do or say.
 8            Let's bring in the jury.  I am going to -- we are
 9   going to -- I am going to give a curative instruction.
10            THE DEPUTY CLERK:  Jury is entering.
11            (In open court; jury present)
12            THE COURT:  Remain seated, everyone.  It cuts down on
13   movement in the courtroom.  We are still dealing with the
14   Covid-19 pandemic.  We are trying to minimize when in the
15   courtroom.  I appreciate everyone attempting to be respectful of
16   the jurors.
17            All right.  Welcome back, ladies and gentlemen of the
18   jury.  I apologize for the interruption, but I needed to address
19   certain matters.
20            During the course of one of the defendants' opening
21   statements, he made references to alleged abuse of the children.
22   With respect to that comment, you are not to consider that
23   comment.  You are to strike it from your minds.  That was an
24   improper remark that was made to the jury and should not enter
25   into your deliberations at all at this time.  All right?
```

1            Given the hour, we are going to have to recess for the

2    day.  All right.  I think we are going to have some nice

3    weather, so hopefully you will be treated to some sunshine this

4    weekend.  Needless to say, I could use a little bit of sunshine

5    in my life.

6            We are going to recess.  We will continue on Monday

7    morning.  We will go back to the opening statements, all right,

8    and then we will begin with the presentation of evidence.

9            Admonitions that I gave you before apply.  Do not

10   discuss this case among yourselves, nor with anyone else.  If

11   someone attempts to do so, you must report that to me as soon as

12   you can or to my courtroom deputy.  All right.  Should that

13   happen, you are not to discuss that fact with any of your fellow

14   jurors.  You are forbidden from looking at any media attention

15   that this case may be given or any related case.  You can't use

16   the Internet to do any independent research.

17           What else?  If you see anyone related to this case

18   outside of the courtroom, you are not to talk to them, not even

19   to pass the time of day.  Again, they are prohibited from

20   speaking to you.  They are not being rude.  They are merely

21   following my instructions.

22           All right.  I am going to continually ask you to be

23   patient with us.  We are trying to get through this as

24   efficiently and as quickly as possible.  All right.

25           Gina, did I miss anything?

```
 1              THE DEPUTY CLERK:  No, Your Honor.

 2              THE COURT:  All right.  All right.  We will excuse the

 3  jurors.  Enjoy the weekend.  Yes.  Did I say you have to be in

 4  the courtroom at 9:00?

 5              No?  Someone said no.  Someone said yes.  Try to be

 6  here at 9:00, please.  Believe it or not, everyone is here in

 7  the courtroom at 9:00.  It may not seem that way, but they are.

 8  But there is just -- you know, there is usually something that

 9  needs to be argued, and I also have other cases.  And so then

10  sometimes I am pulled from the courtroom to address those

11  things, and it's not that we are ignoring you, and we do value

12  your time, and we are trying to minimize the amount of time that

13  you spend in the courthouse in general.  All right.  And we

14  appreciate it.  So just bear with us.  All right?

15              Let's excuse the jury.

16              (In open court; jury not present)

17              THE COURT:  All right.  Anything further from the

18  government?

19              MS. BAGLIEBTER:  No, Your Honor.

20              THE COURT:  Anything further, Mr. Mordechay Malka?

21  And don't ask me to explain the law to you.  All right?  Don't

22  ask me.  It's not what I am here for.  I am not your lawyer.

23  All right.  That's why you have standby counsel for, so you can

24  ask them for their legal opinion and advice, which I strongly

25  advise you to do.
```

1          As a matter of fact, this is what I would advise you

2   to do as a practical matter.  Show them your opening statement,

3   and let -- get some guidance from them.

4          Mr. Matityau Malka, just a suggestion, you don't have

5   to do this.  What do I know?  I am only the judge.  Give a copy

6   of your -- show a copy of your opening statement to your standby

7   counsel to make sure that you are in compliance with my rulings.

8          If you display a pattern of not being able to follow

9   my rulings and/or the court protocols that are in place -- all

10  right, I don't know, I think I have said it before -- it will be

11  an indication to the Court that you are unable to abide by them,

12  all right, and that perhaps the Court may have to consider

13  revoking your *pro se* status.  All right.

14          There being nothing further --

15          MR. MORDECHAY MALKA:  Your Honor, I would like to -- I

16  want to put on the record, Your Honor, the Court has continued

17  to show extreme bias and prejudice against the defendants.

18          THE COURT:  I know.  You have said that before.  You

19  have said that before.  It's not the first time.  I have tried

20  to be, I think, overly accommodating and respectful of you, but

21  you must abide by my rulings, sir.  I don't know what other way

22  to say it.  I am treating you as an attorney because that's what

23  you asked for.  You have to read my decisions, and you must

24  abide by them.  I don't know what other way to say it.  All

25  right.

```
 1            Just so that the record is clear, there were
 2   objections by the government.  I only interrupted you once when
 3   you made a comment, which I thought you were testifying as
 4   opposed to indicating what the evidence was going to show or not
 5   show.  I indicated that you cannot testify, and the government
 6   objected to your comment, and I ruled on that objection.  All
 7   right.
 8            We are in recess for today.  I will see you.
 9            MR. MATITYAU MOSHE MALKA:  Your Honor, just a short
10   thing.  I want to ask with respect to the Court if it's possible
11   at least to make sure the marshals, and especially with the
12   jail, that we will get there very fast because now it's already
13   after 4:00.  Yesterday it took us over three hours and to come
14   into the Sabbath and --
15            THE COURT:  You brought up to the Court's attention.
16   I sympathize with you.  I will say it again.  I do not run the
17   marshals unit.  I have no control over them.  I cannot tell them
18   when they pick you up, how they will pick you up, when they
19   leave the courthouse, and nor can I tell them how fast to drive.
20   I have no control over them.  All right.
21            I will see everybody on Monday.
22            (Pause)
23            THE COURT:  This is for standby counsel.  As I have
24   done in the past, in the event that I revoke the *pro se* status
25   of the defendants, I remind you again that the expectation is
```

Proceedings

1  that you are going to be asked to continue the representation of

2  the defendants at whatever stage of the proceedings we are in.

3  All right?  Thank you.

4           (Adjourned to May 23, 2022 at 9:30 a.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25